BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
701 University Avenue, Suite 106
Sacramento, CA  95825
Telephone: (916) 447-4900
Facsimile:  (916) 447-4904
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO ANTONIO CARRALERO; GARRISON HAM; MICHAEL SCHWARTZ; ORANGE COUNTY GUN OWNERS PAC; SAN DIEGO COUNTY GUN OWNERS PAC; CALIFORNIA GUN RIGHTS FOUNDATION; and FIREARMS POLICY COALITION, INC., <br><br>     Plaintiffs, <br><br>     v. <br><br> ROB BONTA, in his official capacity as Attorney General of California, <br><br>     Defendant. | Case No.: <br><br> **COMPLAINT FOR DECLARATORY, INJUNCTIVE, OR OTHER RELIEF** |

Marco Antonio Carralero; Plaintiffs Garrison Ham; Michael Schwartz; Orange County Gun Owners PAC; San Diego County Gun Owners PAC; California Gun Rights Foundation; and Firearms Policy Coalition, Inc. complain of Defendant Rob Bonta, in his official capacity as Attorney General of California, and allege:

## INTRODUCTION

1. In *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court held that the law-abiding citizens of this Nation have a general right to carry firearms for protection in public and therefore that states cannot limit eligibility for carry licenses to those with an atypical need for self-defense.

2. After *Bruen*, California's previous may-issue licensing system was plainly unconstitutional. Undeterred, however, California now is attempting another strategy for infringing the Second Amendment rights of its citizens. Rather than strictly limiting *who* can obtain a carry license, California now strictly limits *where* even its citizens with licenses can carry firearms. This approach is no more constitutional than the State's prior approach.

3. Plaintiffs accordingly sue to challenge the constitutionality of several "sensitive place" restrictions in Senate Bill 2 ("SB2"), which drastically limits where law-abiding citizens may carry handguns in public following *Bruen*.

4. The California Legislature enacted SB2 on September 12, 2023, and Governor Gavin Newsom signed SB2 into law on September 26, 2023. SB2 goes into effect on January 1, 2024.

5. SB2 restricts where persons with licenses to carry a concealed weapon may legally exercise their constitutional right to wear, carry, or transport firearms. And it does so in ways that are fundamentally inconsistent with the Second Amendment and the Supreme Court's decision in *Bruen*.

6. The individual Plaintiffs are ordinary, law-abiding citizens. Each of the individual Plaintiffs has an active license to carry a concealed weapon ("CCW")

issued by their county sheriff. The organizational Plaintiffs each have members who likewise possess CCW licenses in counties throughout the State.

7. This lawsuit focuses on the provisions of SB2 that impose particularly egregious restrictions on the Second Amendment right to bear arms. Plaintiffs challenge SB2's restrictions on carrying at health care facilities, public transit and mass transit facilities, places where liquor is sold, public gatherings, public parks and athletic facilities, public property controlled by the State Department of Parks and Recreation or Department of Fish and Wildlife, gambling establishments, stadiums and arenas, public libraries, amusement parks, and zoos and museums. Cal. Penal Code § 26230, subds. (7), (8), (9), (10), (12), (13), (15), (16), (17), (19), (20). Plaintiffs also challenge SB2's no-carry default provision that generally prohibits carry on all private commercial property open to the public, absent express permission from the proprietor. *Id.*, subd. (26).

8. The Second Amendment does not tolerate these restrictions. This Court should enter judgment enjoining their enforcement and declaring them unconstitutional.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 and 28 U.S.C. § 1343, because this Complaint seeks relief afforded by 42 U.S.C. § 1983, for past, continuing, and/or imminent violations of Plaintiffs' rights arising under the United States Constitution.

10. Venue is proper under 28 U.S.C. § 1391(b). Venue is also proper under 28 U.S.C. § 1391 because California's venue rules permit this action to be filed in Orange County, where the Attorney General and California Department of Justice maintain an office. *See* Cal. Code Civ. Pro. § 401(1).

# THE PARTIES

## Individual Plaintiffs

9. Plaintiff Marco Antonio Carralero is a resident of Orange County, California. Carralero is a law-abiding, responsible gun owner who holds an active CCW license issued by the Orange County Sheriff's Department. He is a member of Plaintiffs Orange County Gun Owners PAC ("OCGO"), California Gun Rights Foundation ("CGF"), and Firearms Policy Coalition, Inc. ("FPC"). Carralero carries, and intends to continue carrying, his personal firearm daily, during all his activities. He runs operations for a small family business and either already carries, or plans to carry in the coming weeks, his personal firearm for self-defense to the private businesses he frequents for work including hardware stores, Home Depot, Lowe's, private carriers including UPS and FedEx, and retailers including Target, Walmart, Albertsons-Safeway, Gelson's, CVS, and Ralph's. If SB2's no-carry default in private businesses were to go into effect, Carralero would restrict his carrying practices at private businesses for fear of arrest or prosecution.

10. Plaintiff Carralero also plans to carry his personal firearm for self-defense to a medical office or other place where medical services are currently provided in the coming weeks and months, both for his own routine medical care and to accompany members of his family.

11. Plaintiff Carralero would like to carry his personal firearm for self-defense to establishments licensed to serve alcohol for on-site consumption in the coming days, including Oak Ranch Grill, Morena's Mexican Cuisine, and other local eateries he frequents. When Carralero received his CCW license, however, he was informed that even with a license, he could not carry in bars or any location whose primary purpose is to dispense alcoholic beverages for on-site consumption.

12. Plaintiff Carralero also plans to carry his personal firearm for self-defense to stadiums, including the parking lot of said stadiums, near where he lives in the next few months, such as Championship Soccer Stadium, in the Orange County

1 Great Park of Irvine. He also would regularly carry his personal firearm at museums, especially at Bowers Museum in Santa Ana, where he goes with his family; the Surfing Heritage and Culture Center; and the Dana Point Historical Society.

13. Plaintiff Carralero has every intention and desire to carry his personal firearm in and at all the locations identified above in the future but he will decline to do so because of the credible fear of arrest and prosecution after January 1, 2024, when SB2 takes effect.

14. Plaintiff Carralero also plans to carry his personal firearm for self-defense to parks near where he lives, at least some of which are controlled by the California Department of Parks and Recreation and Department of Fish and Wildlife. These parks include the Orange County Great Park of Irvine, Crystal Cove State Park, Aliso and Wood Canyons Wilderness Park, Salt Creek Beach Park, San Clemente State Beach, Las Ramblas Trailhead, Ronald W. Caspers Wilderness Park, and Thomas F. Riley Wilderness Park.

15. Plaintiff Garrison Ham is a resident of San Diego County, California. He is a law-abiding, responsible gun owner who holds an active CCW license issued by the San Diego County Sheriff's Department. He is a member of Plaintiffs San Diego County Gun Owners PAC ("SDCGO"), CGF, and FPC. With his CCW, Ham regularly carries his personal firearm when he enters stores and other privately owned commercial establishments that are open to the public, including grocery stores; gas stations and convenience stores; and retail establishments, including home improvement and gardening stores, shopping malls, clothing stores, and open-air markets. Ham also regularly attends public gatherings for which a permit is required while carrying his personal firearm, including the weekly Sunset Market in Oceanside, local farmer's markets, and political rallies and events. He has every intention and desire to continue to carry his personal firearm in and at all these locations in the future

but he will decline to do so because of the credible fear of arrest and prosecution after January 1, 2024, when SB2 takes effect.

16. Plaintiff Ham would also regularly carry his personal firearm at and in restaurants, bars, and other establishments that are licensed to sell liquor for on-site consumption, including restaurants, sports bars, and breweries. When Ham received his CCW license, however, he was informed that even with a license, he could not carry in bars or any location whose primary purpose is to dispense alcoholic beverages for on-site consumption.

17. Plaintiff Ham also regularly visits parks near where he lives, (including Guajome Park and Mission Trails), and he has visited parks under the control of the California Department of Parks and Recreation and Department of Fish and Wildlife (including Hollenbeck Nature Preserve). Ham plans to continue visiting these and other parks that are subject to SB2's carry ban, and he plans to carry his personal firearm for self-defense when visiting these parks.

18. Plaintiff Ham also frequently relies on public transportation when he routinely returns to visit family in the Bay Area and would carry his personal firearm for self-defense while doing so if permitted by California law. Ham has also visited amusement parks with family in the past 12 months, and intends to go again. Ham would carry his personal firearm for self-defense at the amusement park, particularly to protect his wife and members of his family who have small children.

19. Plaintiff Ham has every intention and desire to carry his personal firearm in and at all the locations identified above in the future but he will decline to do so because of the credible fear of arrest and prosecution after January 1, 2024, when SB2 takes effect.

20. Plaintiff Michael Schwartz is a resident of San Diego County, California. Schwartz is a law-abiding, responsible gun owner who holds an active CCW license issued by the San Diego County Sheriff's Department. He is a member of Plaintiffs

OCGO, SDCGO, CGF, and FPC. Schwartz carries, and intends to continue carrying, his personal firearm daily, during all his activities.

21. Plaintiff Schwartz regularly carries his personal firearm for self-defense to the restaurants he visits for work meetings multiple times each week, which include everything from taco shops and Carl's Jr. to Ruth's Chris Steak House. Schwartz would also like to carry in locations serving alcohol for on-site consumption, such as bars. When Schwartz received his CCW license, however, he was informed that even with a license, he could not carry in bars or any location whose primary purpose is to dispense alcoholic beverages for on-site consumption.

22. Plaintiff Schwartz carries his personal firearm for self-defense to the private businesses that he frequents for work and personal business, including grocery stores, coffee shops, local and national retail stores, office buildings, medical offices, hardware stores, convenience stores, and more. If SB2's provision about private businesses were to go into effect, he would restrict his carrying practices at private businesses for fear of arrest or prosecution.

23. Plaintiff Schwartz typically carries his personal firearm for self-defense to stadiums, such as Petco Park and Pechanga Arena. When traveling to stadiums or arenas, he takes public transportation and typically carries his personal firearm for self-defense while doing so. If required by the stadium, he secures his firearm in on-site lockers. But if SB2 goes into effect, Schwartz will not be allowed to bring his personal firearm on public transportation, or into the stadium/arena or its parking lot.

24. Plaintiff Schwartz also regularly carries his personal firearm at museums, especially those in Balboa Park (including the San Diego Air & Space Museum and Natural History Museum); as well as zoos, including the San Diego Zoo and San Diego Safari Park. He frequently carries his personal firearm for self-defense to parks, including La Mesa Park, Mast Park in Santee, Presidio Park, Robb Field, and Dog Beach, unless prohibited by county restrictions. And Schwartz carries for self-defense at public assemblies, including street fairs he attends for business, and at other social

assemblies like farmers markets and guacamole festivals. Schwartz also frequently carries his personal firearm for self-defense at public libraries, which he uses as workspaces when traveling for work.

25. Plaintiff Schwartz frequently carries his personal firearm for self-defense at gambling establishments, including Viejas Casino and Resort, Sycuan Casino, Rincon Casino, and the Lucky Lady Card Room. If required by these locations, Schwartz secures his firearm in on-site lockers. But if SB2 goes into effect, he could not even bring his personal firearm into certain of these gambling establishments or their parking lots.

26. Plaintiff Schwartz has every intention and desire to carry his personal firearm in and at all the locations identified above in the future but he will decline to do so because of the credible fear of arrest and prosecution after January 1, 2024, when SB2 takes effect.

### Organizational Plaintiffs[1]

27. Plaintiff Orange County Gun Owners PAC is a political organization based in Orange County, whose purpose is to protect and advance the Second Amendment rights of residents of Orange County, through their efforts to support and elect local and state representatives who support the Second Amendment right to keep and bear arms, education, and advocacy on Second Amendment issues. OCGO's membership and donors consist of Second Amendment supporters, people who own guns for self-defense and sport, firearms dealers, shooting ranges, and elected officials who want to restore and protect the right to keep and bear arms in California. Plaintiffs Carralero and Schwartz are members of OCGO.

28. OCGO has one or more members who live in California and who travel throughout California in the ordinary course of their lives, and who also possess a

---

[1] This complaint refers to Plaintiffs Firearms Policy Coalition, Inc., Orange County Gun Owners PAC, San Diego County Gun Owners PAC, and California Gun Rights Foundation, who bring this action on behalf of their members who have an active CCW, as "Organizational Plaintiffs."

CCW issued by the appropriate licensing authorities. OCGO has at least one member who has a CCW license and regularly carries firearms in and at each of the locations challenged in this Complaint. These members of OCGO with CCW licenses intend to continue to possess and carry firearms at such locations, but reasonably fear prosecution if they do so after January 1, 2024. OCGO brings this action on behalf of its members who have an active CCW, which includes each of the individual plaintiffs.

29. Plaintiff San Diego County Gun Owners PAC is a political organization based in San Diego County, whose purpose is to protect and advance the Second Amendment rights of residents of San Diego County, through their efforts to support and elect local and state representatives who support the Second Amendment right to keep and bear arms, education, and advocacy on Second Amendment issues. SDCGO's membership and donors consist of Second Amendment supporters, people who own guns for self-defense and sport, firearms dealers, shooting ranges, and elected officials who want to restore and protect the right to keep and bear arms in California.

30. SDCGO has one or more members who live in California and who travel throughout California in the ordinary course of their lives, and who also possess a CCW issued by the appropriate licensing authorities. SDCGO has at least one member who has a CCW license and regularly carries firearms in and at each of the locations challenged in this Complaint. These members of SDCGO with CCW licenses intend to continue to possess and carry firearms at such locations, but reasonably fear prosecution if they do so after January 1, 2024. SDCGO brings this action on behalf of its members who have an active CCW, which includes Plaintiffs Ham and Schwartz.

31. Plaintiff California Gun Rights Foundation ("CGF") is a nonprofit foundation incorporated under the laws of California with a place of business in Sacramento, California. CGF serves its members, supporters, and the public through

educational, cultural, and judicial efforts to defend and advance Second Amendment and related rights. CGF has thousands of members throughout California. CGF brings this action on behalf of those members with an active CCW issued by California licensing authorities, including the named plaintiffs herein. CGF's members will be adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein once SB2 takes effect on January 1, 2024. CGF has at least one member who has a CCW license and who carries firearms in and at each of the locations challenged in this Complaint, at which locations CCW licensees will be prohibited from carrying their arms by SB2 as of January 1, 2024. These CGF members would fully intend to continue to carry at the locations challenged in this Complaint after January 1, 2024, but for their reasonable fear prosecution if they do so after January 1, 2024.

32. Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit membership organization incorporated in Delaware with a primary place of business in Clark County, Nevada. FPC works to create a world of maximal human liberty and freedom and to promote and protect individual liberty, private property, and economic freedoms. It seeks to protect, defend, and advance the People's rights, especially but not limited to the inalienable, fundamental, and individual right to keep and bear arms and protect the means by which individuals may exercise the right to carry and use firearms. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC's members reside both within and outside the State of California.

33. FPC brings this action on behalf of those members with an active CCW issued by California licensing authorities, including the named plaintiffs herein. FPC's members will be adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein once SB2 takes effect on January 1, 2024. FPC has at least one member who has a CCW license and who carries firearms in and at each of the locations challenged in this Complaint, at

which locations CCW licensees will be prohibited from carrying their arms by SB2 as of January 1, 2024. These FPC members would fully intend to continue to carry at the locations challenged in this Complaint after January 1, 2024, but for their reasonable fear prosecution if they do so after January 1, 2024. Each of the individual Plaintiffs is a member of FPC.

34. Defendant Rob Bonta is the Attorney General of the State of California. The Attorney General is the chief law enforcement officer of the state, and it is his duty to ensure that California's laws are uniformly and adequately enforced. The Attorney General is the head of the Department of Justice, which, among other things, regulates and enforces state law related to the issuance of licenses to carry firearms in public and restrictions on the carry of firearms, including any laws and regulations impacted by this case. The Attorney General maintains an office in this District.

## GENERAL ALLEGATIONS

**A. California Adopts Sweeping "Sensitive Place" Restrictions That Broadly Prohibit the General Right to Public Carry Arms for Self Defense.**

35. California has prohibited individuals from carrying concealed handguns in public for years. *See* Cal. Penal Code § 25400. State law likewise broadly prohibits the open carry of firearms. *See id.* § 25850 (prohibiting the open carry of a loaded firearm); § 26350 (prohibiting the open carry of an unloaded handgun in public). As a result, to carry a handgun in public in any manner, Californians must secure a CCW license to carry a concealed weapon from their county sheriff. *See id.* § 26150.

36. Until recently, California law restricted the public carry of handguns subject to a "may issue" licensing regime. The state prohibited open carry entirely and allowed concealed carry only when approved by a local licensing official: Californians who wished carry a firearm in public needed to establish "good cause" to the satisfaction of their county sheriff, who established rules for what constituted "good cause" in their jurisdiction. Cal. Penal Code §§ 25850, 26350, 26150, 26155, 26160; *see generally Peruta v. Cnty. Of San Diego*, 742 F.3d 1144, 1147–48, 1168–69 (9th

Cir. 2014) (reviewing California's legislative scheme governing the public carry of firearms), *vacated* 781 F.3d 1106 (9th Circ. 2015); on reh'g en banc, 824 F.3d 919, 925–27 (9th Cir. 2016) (same); *see also Peruta v. California*, 137 S. Ct. 1995, 1996–97 (2017) (Thomas, J., joined by Gorsuch, J., dissenting from the denial of certiorari). In *Peruta*, the en banc Ninth Circuit upheld two counties' "good cause" policies that required applicants to show a particularized need to carry a firearm for self-defense— and in doing so, held that "the Second Amendment does not preserve or protect a right of a member of the general public to carry concealed firearms in public." 824 F.3d at 924.[2]

37. The Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), held the opposite. In *Bruen*, the Supreme Court struck down New York's "good cause" licensing requirement as unconstitutional under the Second Amendment because a State may not condition the right to publicly carry handguns on a citizen's "special need for self-defense." *Id.* at 2135 n.8. Contrary to the presumption against carrying in a may-issue regime like California's before *Bruen*, "the Second Amendment guarantees a general right to public carry," meaning that ordinary, law-abiding citizens may "'bear' arms in public for self-defense." *Bruen*, 142 S. Ct. at 2135; *id.* at 2156 ("We know of no other constitutional right that an individual may exercise only after demonstrating to government officers some special need.").

38. The California Legislature passed SB2 in September 2023 in direct response to *Bruen*. S. Bill No. 2 (2023–2024 Reg. Sess.). The bill takes effect on January 1, 2024. Governor Newsom has not hidden his disdain for the Supreme

---

[2] Five years after *Peruta*, the en banc Ninth Circuit upheld Hawaii's may-issue permitting scheme and held that the state's restrictions on open carry were "not within the scope of the right protected by Second Amendment." *Young v. Hawaii*, 992 F.3d 765, 826 (9th Cir. 2021), petition for writ of certiorari granted; vacated and remanded in light of *Bruen*, 142 S. Ct. 2895 (2022). In doing so, the Ninth Circuit became "the first and only court of appeals to hold that public carry falls *entirely* outside the scope of the Amendment's protections." *Young*, 992 F.3d at 829 (O'Scannlain, J., dissenting).

Court's ruling in *Bruen*. At a press conference announcing the bill, Governor Newsom called *Bruen* a "bad ruling," an "absurdity," and mocked the right to carry firearms outside the home. *See* https://twitter.com/i/broadcasts/1vAxRAXgXRVJl, last accessed Sept. 18, 2023 (timestamps: 41:08 (called *Bruen* an "absurdity"); 41:20 (used air quotes while discussing "right" to carry a firearm outside home); 1:01:44 (called *Bruen* a "bad ruling").

39. SB2 decrees 29 categories off limits for licensed carry. *See* Cal. Penal Code § 26230.[3] The ostensible authority for these bans is that they are "sensitive places" entitled to different treatment under the Supreme Court's Second Amendment cases. *See* SB2, § 1(b).

40. Without conceding that all of SB2's prohibitions are lawful, Plaintiffs seek an injunction against those restrictions most likely to impact their daily lives. These are prohibitions on carry in:

> (7) A building, real property, and parking area under the control of a public or private hospital or hospital affiliate, mental health facility, nursing home, medical office, urgent care facility, or other place at which medical services are customarily provided.
>
> (8) A bus, train, or other form of transportation paid for in whole or in part with public funds, and a building, real property, or parking area under the control of a transportation authority supported in whole or in part with public funds.
>
> (9) A building, real property, and parking area under the control of a vendor or an establishment where intoxicating liquor is sold for consumption on the premises.
>
> (10) A public gathering or special event conducted on property open to the public that requires the issuance of a permit from a federal, state, or local government and sidewalk or street immediately adjacent to the public gathering or special event but is not more than 1,000 feet from the event or gathering, provided this prohibition shall not apply to a licensee who must walk through a public gathering in order to access their residence, place of business, or vehicle.
>
> (12) A park, athletic area, or athletic facility that is open to the public and a street or sidewalk immediately adjacent to those areas, provided this prohibition shall not apply to a licensee who must walk through such a place in order to access their residence, place of business, or vehicle.
>
> (13) Real property under the control of the Department of Parks and Recreation or Department of Fish and Wildlife, except those areas

---

[3] Exhibit 1 to the Complaint sets out Section 26230 in full.

designated for hunting pursuant to Section 5003.1 of the Public Resources Code, Section 4501 of Title 14 of the California Code of Regulations, or any other designated public hunting area, public shooting ground, or building where firearm possession is permitted by applicable law.

(15) A building, real property, or parking area that is or would be used for gambling or gaming of any kind whatsoever, including, but not limited to, casinos, gambling establishments, gaming clubs, bingo operations, facilities licensed by the California Horse Racing Board, or a facility wherein banked or percentage games, any form of gambling device, or lotteries, other than the California State Lottery, are or will be played.

(16) A stadium, arena, or the real property or parking area under the control of a stadium, arena, or a collegiate or professional sporting or eSporting event.

(17) A building, real property, or parking area under the control of a public library.

(19) A building, real property, or parking area under the control of an amusement park.

(20) A building, real property, or parking area under the control of a zoo or museum.

(26) Any other privately owned commercial establishment that is open to the public, unless the operator of the establishment clearly and conspicuously posts a sign at the entrance of the building or on the premises indicating that licenseholders are permitted to carry firearms on the property. Signs shall be of a uniform design as prescribed by the Department of Justice and shall be at least four inches by six inches in size.

41. These "sensitive place" designations are plainly unconstitutional under *Bruen*.

**B.  California's Broad "Sensitive Place" Restrictions Violate The Second Amendment.**

42. The Second Amendment is applicable to the States as incorporated via the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010). "[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008).

43. To determine whether a state's firearm restriction is constitutional, the Court in *Bruen* explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct,

the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. at 2129.

44. *Bruen* has already established that the Second Amendment covers plaintiffs' proposed conduct here—carrying arms publicly for self-defense and other lawful purposes. *Id.* at 2134–35. As such, the Second Amendment "presumptively protects" Plaintiffs' right to carry firearms in public in California. *Id.* at 2129.

45. It is thus the State's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127; *see also id.* at 2150 ("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden.").

46. The *Bruen* Court struck down New York's "proper cause" requirement for issuing a permit to carry a handgun in public. In doing so, it expressly rejected New York's attempt to justify its restriction as analogous to a historical "sensitive place" regulation. *Id.* at 2133–34. The Court explained that a state may not simply ban guns wherever people may "congregate" or assemble: A rule that "expand[ed] the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly." *Id.* at 2134. "Put simply, there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department." *Id.*

47. So if a state seeks to restrict firearms in a particular location as a "sensitive place," it must prove that its current restriction is sufficiently analogous to a "well-established and representative historical analogue." *Id.* at 2133. The Court has identified only three such locations: founding-era "legislative assemblies, polling places, and courthouses." *Id.* at 2133 (citing *Heller*, 554 U.S. at 626). The unifying principle allowing arms to be restricted in these locations at the Founding was

comprehensive government-provided security. *See* Amicus Br. of The Center for Human Liberty 8–17, *Antonyuk v. Nigrelli*, 2d Cir. No 22-2908, ECF No. 313 (Feb. 9, 2023); Amici Br. of Citizens Comm. For the Right to Keep and Bear Arms, et al. 8–17, *Koons v. Platkin*, 3rd Cir. No. 23-1900, ECF No. 91 (Aug. 16, 2023).

48. *Bruen* leaves no doubt that the plain text of the Second Amendment covers Plaintiffs' proposed course of conduct. Accordingly, Plaintiffs' conduct is "presumptively protect[ed]" by the Constitution, *id.* at 2126, and the State bears the burden of "justify[ing]" SB2's sensitive place restrictions "by demonstrating that [they are] consistent with the Nation's historical tradition of firearm regulation," *id.* at 2130. It cannot do so.

## CLAIM FOR RELIEF

## VIOLATION OF 42 U.S.C. § 1983 (SECOND AMENDMENT)

49. Plaintiffs incorporate here by reference paragraphs 1 through 48, *supra*, as if fully set forth herein.

50. The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend II. The Supreme Court has squarely held that the Second Amendment protects an individual right to keep and bear arms, and that all responsible, law-abiding Americans may exercise that right. *See Heller*, 554 U.S. 570. In *Bruen*, the Supreme Court held that the Second Amendment right to keep and bear arms fully extends to general carry of arms in public. *See Bruen*, 142 S. Ct. at 2134.

51. The *Bruen* framework begins with the plain text. If the plaintiffs' proposed course of conduct falls within the Second Amendment's plain text, then "the Constitution presumptively protects that conduct." *Id.* at 2126. Importantly, "[n]othing in the Second Amendment's text draws a home/public distinction," *Bruen*, 142 S. Ct. at 2134—or for that matter, any distinction between locations at all. That makes the Second Amendment unlike other Amendments. *See* U.S. Const. amend. III

("No Soldier shall, in time of peace be quartered in any house, without the consent of the Owner, nor in time of war, but in a manner to be prescribed by law."); U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."). And it means that any locational restrictions on Second Amendment rights must come from history, not from the plain text.

52. There is no "well-established, representative historical analogue" for SB2's bans on firearms in and at health care facilities, public transit and mass transit facilities, places where liquor is sold, public gatherings, public parks and athletic facilities, public property controlled by the State Department of Parks and Recreation or Department of Fish and Wildlife, gambling establishments, stadiums and arenas, public libraries, amusement parks, zoos and museums, and private commercial property open to the public. Section 26230, subds. (7), (8), (9), (10), (12), (13), (15), (16), (17), (19), (20), (26). The bans imposed by Section 26230, as enacted by SB2, are facially unconstitutional under the Second Amendment because they ban the carry of firearms by CCW holders at these locations.

53. Consider the broad reach of these bans. Prohibiting firearms at all health care facilities extends across the board to visitors, employees, contractors, and health care professionals.

54. The transit ban attaches to every "form of transportation" and all property of a transportation authority "paid for in whole or in part with public funds." This ban applies not only to the commuter passing through a bustling train station or riding on a rush-hour metro, but also the service worker waiting to take the last bus home.

55. Locations "where intoxicating liquor is sold for consumption on the premises" includes most restaurants, all wineries and breweries, many private clubs, and locations operated by private associations in California. There are tens of thousands of such locations in California and the bans at these places adversely affect virtually every CCW holder who eats at restaurants or at private clubs. Under SB2,

CCW holders may not carry in such places, even if they do not consume a drop of alcohol or even if they enter such places merely to retrieve a carry-out order. These bans at such locations would also encompass events for which temporary, one-time licenses are granted, including at fundraising events and events conducted outside.

56. There is no "well-established, representative historical analogue" prohibiting carry at public gatherings, gambling and gaming establishments, stadiums and arenas, public libraries, amusement parks, zoos, and museums. There is no state-provided security at these locations of public congregation. Such locations can be targets for mass violence and there is an ever-present risk of acute confrontation in these settings.

57. Likewise, there is no "well-established, representative historical analogue" prohibiting carry at public parks and athletic facilities, public property controlled by the State Department of Parks and Recreation or Department of Fish and Wildlife. These restrictions cover instances of public congregation (for sporting and recreational events, social gatherings, and the like), which carry the risks discussed above. But there is also the particular risk of confrontation when these locations are sparsely populated: People running in parks at odd hours of the day or hiking in remote areas of state parks, where the need for self-defense against a person (or wild animal) can arise without warning.

58. Finally, there is there is no "well-established, representative historical analogue" for the no-carry default provision that bans carry at every "privately owned commercial establishment that is open to the public" unless the owner "clearly and conspicuously posts a sign at the entrance of the building or on the premises indicating that license holders are permitted to carry firearms on the property." This restriction effectively nullifies the "general right" to carry in public as it precludes a CCW holder from carrying into private property that is otherwise open to the public, including stores, shops, hotels, motels, restaurants, retail establishments, theatres, malls, and other places of public accommodation throughout the State of California.

59. Each of the Individual Plaintiffs and Organizational Plaintiffs' members with California CCW licenses who live in California are directly, substantially, and adversely affected by the foregoing violation of the Second Amendment. Plaintiffs and Organizational Plaintiffs' members with CCW licenses have, prior to the enactment of SB2 lawfully carried firearms within the State at and in the locations that the challenged provisions of SB2 ban firearms. But for SB2, and the fear of prosecution for violating the law, Individual Plaintiffs would and have concrete plans to possess, wear, carry or transport firearms in one or more such locations in the future. Organizational Plaintiffs have at least one member with a CCW license, including the Individual Plaintiffs herein, who has visited each of the locations challenged in this Count and each such member intends to wear, carry and transport firearms at such locations in the future. Plaintiffs, including Organizational Plaintiffs' members with California CCW licenses, have a reasonable fear of prosecution under SB2 if they do so.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request:

1. That this Court issue a declaratory judgment that the specified provisions of SB2 are unconstitutional under the Second Amendment insofar as these provisions prohibit a CCW license holder from carrying a firearm at the specified locations challenged above;

2. That this Court issue preliminary and permanent injunctions enjoining enforcement of the specified provisions of SB2 against CCW license holders; and

3. That this Court award costs of suit, including reasonable attorneys' fees under 42 U.S.C. § 1988 and any other applicable law, and all further relief to which Plaintiffs may be justly entitled.

Dated:  September 26, 2023          BENBROOK LAW GROUP, PC


By  s/ Bradley A. Benbrook
      BRADLEY A. BENBROOK
      Attorneys for Plaintiffs