ROB BONTA
Attorney General of California
MATTHEW WISE
MARK R. BECKINGTON
Supervising Deputy Attorneys General
TODD GRABARSKY
JANE REILLEY
LISA PLANK
ROBERT L. MEYERHOFF
Deputy Attorneys General
State Bar No. 298196
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone:  (213) 269-6177
  Fax:  (916) 731-2144
  E-mail:  Robert.Meyerhoff@doj.ca.gov
*Attorneys for Rob Bonta, in his Official Capacity as Attorney General of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RENO MAY, an individual, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ROBERT BONTA, in his official capacity as Attorney General of the State of California, and Does 1-10,**<br><br>Defendants. | Case Nos. 8:23-cv-01696 CJC (ADSx)<br>8:23-cv-01798 CJC (ADSx)<br><br>**DECLARATION OF PATRICK J. CHARLES IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:          December 20, 2023<br>Time:          1:30 p.m.<br>Courtroom:  9B<br>Judge:         Hon. Cormac J. Carney |
| **MARCO ANTONIO CARRALERO, an individual, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ROBERT BONTA, in his official capacity as Attorney General of California,**<br><br>Defendant. | |

# DECLARATION OF PATRICK J. CHARLES

Pursuant to 28 U.S.C. § 1746, I, Patrick J. Charles, declare and state as follows:

1.      I am over the age of eighteen (18) years, competent to testify to the matters contained in this declaration and testify based on my personal knowledge and information.

2.      I have been retained by the Office of the Attorney General for California as a historical and constitutional expert on Second Amendment matters. I also have expertise in legal history and its multiple uses in adjudicating constitutional questions.

3.      California is currently defending multiple lawsuits, including *May v. Bonta*, C.D. Cal. No. 8:23-cv-01696 CJC (ADSx) and *Carralero v. Bonta*, C.D. Cal. No. 8:23-cv-01798 CJC (ADSx), challenging California laws and regulations that govern where individuals may legally wear, carry, and transport firearms.

4.      I have read the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), and California has asked me to expound on the history of the law restricting armed carriage in locations jurisprudentially referred to as "sensitive places."

5.      Most of the information contained in this declaration is from research conducted prior to having been retained by the Office of the Attorney General for California on September 26, 2023.

## BACKGROUND AND QUALIFICATIONS

6.      I am a historian, legal scholar, and author of dozens of articles and books on the Constitution, legal history, and standards of review. I received my L.L.M. in Legal Theory and History with distinction from Queen Mary University of London in 2014, J.D. from Cleveland-Marshall College of Law in 2009, and B.A. in History and International Affairs with honors from George Washington University in 2005. My writings on the history of the law have been cited by the

1  Supreme Court of the United States, federal Circuit Courts of Appeal, federal
2  District Courts, and State supreme courts. A true and correct copy of my curriculum
3  vitae is attached as **Exhibit 1** to this declaration.

4        7.     For the past 13 years I have served as a historian for the United States
5  Air Force (USAF) in several capacities, including deploying several times with
6  Special Operations Forces (SOF) for contingency operations in Afghanistan and the
7  Middle East. I currently serve as the Oral History and Studies Division Chief for
8  the Air Force Historical Research Agency (AFHRA) located at Maxwell Air Force
9  Base, Alabama, where I oversee all Department of Air Force (DAF) oral history
10  interviews and historical studies.

11        8.     This declaration was compiled and completed outside my official
12  duties for the USAF and DAF. Moreover, the contents and opinions expressed in
13  this declaration are solely my own, and not those of the USAF, DAF, AFHRA,
14  Department of Defense, or the federal government.

15
16  **I.    THE HISTORY OF "SENSITIVE PLACES" THROUGH THE NINETEENTH CENTURY**

17        9.     For nearly five centuries in England, from the late thirteenth century
18  through the late eighteenth century, what constituted a "sensitive place" in which
19  arms bearing could be regulated or altogether restricted was rather broad. It
20  encompassed densely populated areas, as well as areas where people regularly
21  congregated for lawful purposes or conducted commerce. The text "fairs" and
22  "markets" language contained within the 1328 Statute of Northampton makes this
23  abundantly clear. 2 Edw. 3, c. 3 (1328) (Eng.). So too do several other English legal
24  sources. For instance, in 1351, Edward III issued a proclamation declaring it was
25  unlawful to "go armed" with dangerous weapons "within the City of London, or
26  within the Suburbs, or any other places between the said city and the Palace of
27  Westminster…except the officers of the King…" *Royal Proclamation as to the*
28  *Wearing of Arms in the City, and at Westminster; and as to Playing at Games in the*

1   *Palace at Westminster*, MEMORIALS OF LONDON AND LIFE 268-69, 273 (H.T. Riley

2   ed., 1868). Similarly, in John Carpenter's 1419 treatise *Liber Albus*, it stipulates

3   that "no one, of whatever condition he be, go armed in the said *city [of London] or*

4   *in the suburbs*, or carry arms, by day or by night, except the va[]lets of the great

5   lords of the land, carrying the swords of their masters in their presence, and the

6   serjeants-at-arms of his lordship the King, of my lady the Queen, the Prince, and the

7   other children of his lordship the King, and the officers of the City, and such

8   persons as shall come in their company in aid of them, at their command, for saving

9   and maintaining the said peace; under the penalty aforesaid, and the loss of their

10  arms and armour." JOHN CARPENTER, LIBER ALBUS: THE WHITE BOOK OF THE CITY

11  OF LONDON (Henry Thomas Riley ed., 1861); *see also id*. at 229, 555, 556, 558,

12  560, 580 (providing other examples denoting that going armed in densely populated

13  public places was unlawful).

14      10.     As it pertains to express restrictions on carrying dangerous weapons

15  into specific locations, English law was relatively silent. This is because English

16  restrictions on going armed in "sensitive places" were worded quite broadly, and

17  therefore there was no need for the law to carve out individual locations. Churches

18  or places of worship are one notable exception. *See* 4 Hen 4, c. 29 (1403) ("no Man

19  be armed nor bear defensible armor to Merchant Towns Churches nor

20  Congregations in the same, nor in the Highways, in affray of the Peace or the

21  King's Liege people").

22      11.     As to whether this broad, English understanding of what constituted a

23  "sensitive place"—that is where arms bearing could be restricted—traveled across

24  the Atlantic, local enforcement records did not survive for historical posterity, and

25  therefore it is impossible for historians or anyone to reconstruct exactly how often,

26  when, and where armed carriage restrictions were enforced. Most instances of legal

27  enforcement were done at the local level, and, as a result, the records of said

28  enforcement have been lost to time. And those records of enforcement that have

Declaration of Patrick J. Charles
(Case Nos. 8:23-cv-01696 and 8-23-cv-01798)

miraculously survived often require time consuming, archival research, not ad hoc, keyword digital searches. *See, e.g.,* Laura Edwards, *Weapons and the Peace*, DUKE CTR. FOR FIREARMS LAW (Jul. 25, 2023), https://firearmslaw.duke.edu/2023/07/weapons-and-the-peace/.

12.     What the historical record does unequivocally inform is that armed carriage restrictions and the English common law against 'going armed' in urban and densely populated locations indeed made their way into the American Colonies and subsequent United States. *See* Patrick J. Charles, *The Faces of the Second Amendment Outside the Home: History Versus Ahistorical Standards of Review*, 60 CLEV. ST. L. REV. 1, 31-32 (2012). Additionally, historians can state with certainty that state and local governments were well within their authority to prohibit armed assemblies circa the late eighteenth century, no matter whether said assemblies were deemed the militia or not. *See* Patrick J. Charles, *The 1792 National Militia Act, the Second Amendment, and Individual Militia Rights: A Legal and Historical Perspective*, 9 GEO. J.L. & PUB. POL'Y 323, 326,-27, 374-90 (2011); AN ACT TO PREVENT ROUTS, RIOTS, AND TUMULTUOUS ASSEMBLIES, AND THE EVIL CONSEQUENCES THEREOF, SEPTEMBER SESSION, CHAPTER VIII (Mass. 1786); AN ACT FOR THE MORE SPEEDY AND EFFECTUAL SUPPRESSION OF TUMULTS AND INSURRECTIONS IN THE COMMONWEALTH, SEPTEMBER SESSION, CHAPTER IX (Mass. 1787); AN ACT TO PREVENT ROUTS, RIOTS, AND TUMULTUOUS ASSEMBLIES (N.J. 1797); AN ACT TO PREVENT HUNTING WITH FIRE-ARMS IN THE CITY OF NEW-YORK, AND THE LIBERTIES THEREOF (NY 1763); AN ACT AGAINST RIOTS AND RIOTERS (Pa. 1705); *see also* WILLIAM RAWLE, A VIEW OF THE CONSTITUTION OF THE UNITED STATES 126 (2d ed., 1829) (noting that the Second Amendment "ought not…in any government…be abused to the disturbance of the public peace," which included the assembling "of persons with arms, for an unlawful purpose"). This is because it had

long been understood that any armed assemblage required the consent of government officials.[1]

13.     The mid-to-late nineteenth century saw state and local governments within the United States enacting express, location specific armed carriage restrictions.[2]  Beginning with state laws, in 1869 Tennessee enacted a law restricting the carrying of dangerous weapons into "any election…fair, race course, or other public assembly of the people." PUBLIC STATUTES OF THE STATE OF TENNESSEE SINCE THE YEAR 1858, at 108 (James H. Shankland ed., 1871), *available at* https://catalog.hathitrust.org/Record/010432413. Not long thereafter, in 1870, Texas enacted a law restricting the carrying of dangerous weapons "into any church or religious assembly, any school-room or other place where persons assembled for educational, literary, or scientific purposes, or into a ball room, social party, or other social gathering, composed of ladies and gentlemen, or to any election precinct on the day or days of any election, where any portion of the people of this state are collected to vote at any election, or to any other place where people may be assembled to muster or to perform any other public duty, or any other public assembly…" 2 GEORGE W. PASCHAL, A DIGEST OF THE LAWS OF TEXAS: CONTAINING THE LAWS IN FORCE, AND THE REPEALED LAWS ON WHICH RIGHTS REST FROM 1864 TO 1872, at 1322 (1873), *available at* https://catalog.hathitrust.org/Record/010448003. That very same year, Georgia enacted a law providing that "no person in said State of Georgia be permitted or allowed to carry about his or her person any . . . pistol or revolver, or any kind of

---

[1] This understanding of the law goes all the way back to the 1328 Statute of Northampton. *See* 2 Edw. 3, c. 3 (1328) (Eng.); *see also* 3 CALENDAR OF CLOSE ROLLS, RICHARD II, 1385-1389, at 399-400 (May 16, 1388, Westminster) (H.C. Maxwell-Lyte ed., 1914); 1 CALENDAR OF CLOSE ROLLS, RICHARD II, 1377-1381, at 34 (December 1, 1377, Westminster) (H.C. Maxwell-Lyte ed., 1914).

[2] There are, of course, a few exceptions, such as two mid-seventeenth century Maryland laws that prohibited dangerous weapons within legislative assemblies. 1647 Md. Laws 216; 1650 Md. Laws 273. But other than these two Maryland laws, the historical record until the mid-to-late nineteenth century provides very little in the way of express "sensitive" locations where armed carriage could be prohibited.

deadly weapon, to any Court of justice, or any election ground, or precinct, or any place of public worship, or any other public gathering in this State…" ACTS AND RESOLUTIONS OF THE GENERAL ASSEMBLY OF THE STATE OF GEORGIA PASSED…AT THE SESSION OF 1870, at 421 (1870), *available at* https://catalog.hathitrust.org/Record/100143502.

14.     In 1874, Missouri followed suit by enacting a restriction on carrying "any kind of fire-arms…or other deadly weapon" into "any place where people may be assembled for educational, literary or social purposes, or to any election precinct on any election day, or into any court-room during the sitting of court, or into any other public assemblage of persons meet for other than militia drill or meetings…" ACTS OF THE…GENERAL ASSEMBLY OF THE STATE OF MISSOURI 43 (1874), *available at* https://catalog.hathitrust.org/Record/000534559; *see also* LAWS OF MISSOURI: GENERAL AND LOCAL LAWS PASSED AT THE REGULAR SESSION OF THE TWENTY-EIGHTH GENERAL ASSEMBLY 50-51 (1875), *available at* https://catalog.hathitrust.org/Record/000534559 (same). In 1883, Missouri amended the law to increase the fine. LAWS OF MISSOURI PASSED AT THE SESSION OF THE THIRTY-SECOND GENERAL ASSEMBLY 76 (1883), *available at* https://catalog.hathitrust.org/Record/000534559.

15.     In 1889, Arizona enacted a law providing that "[i]f any person shall go into any church or religious assembly, any school room, or other place where persons are assembled for amusement or for educational or scientific purposes, or into any circus, show or public exhibition of any kind, or into a ball room, social party or social gathering, or to any election precinct on the day or days of any election, where any portion of the people of this Territory are collected to vote at any election, or to any other place where people may be assembled to minister or to perform any other public duty, or to any other public assembly, and shall have or carry about his person a pistol or other firearm . . . he shall be punished by a fine not less than fifty nor more than five hundred dollars, and shall forfeit to the County

1  the weapon or weapons so found on his person." ACTS, RESOLUTIONS AND

2  MEMORIALS OF THE FIFTEENTH LEGISLATIVE ASSEMBLY OF THE TERRITORY OF

3  ARIZONA 30-31 (1889), *available at*

4  https://catalog.hathitrust.org/Record/010083734. Then there was the state of

5  Oklahoma, which in 1890 restricted the carrying of dangerous weapons "into any

6  church or religious assembly, any school room or other place where persons are

7  assembled for public worship, for amusement, or for educational or scientific

8  purposes, or into any circus, show or public exhibition of any kind, or into any ball

9  room, or to any social party or social gathering, or to any election, or to any place

10  where intoxicating liquors are sold, or to any political convention, or to any other

11  public assembly…" STATUTES OF OKLAHOMA 1890, at 495-96 (Will T. Little, L.G.

12  Pitman, & R.J. Barker eds., 1891), *available at*

13  https://catalog.hathitrust.org/Record/010447936.

14      16.    In addition to the above state laws, there was an abundance of mid-to-

15  late nineteenth century ordinances restricting the carrying of dangerous weapons in

16  so-called "sensitive places."[3] The reason that so many localities enacted these

17  ordinances was the prevalence of the legal concept of "firearms localism"—this

18  concept being a preference among state and local lawmakers to regulate firearms

19  and deadly weapons more strictly at the local rather than the state level. *See* Joseph

20  Blocher, *Firearms Localism*, 123 YALE L.J. 82, 112-16 (2013).[4] One example is

21

22      [3] *See, e.g., An Ordinance*, July 9, 1891, *reprinted in* WACO DAILY NEWS (Tx), July 12, 1891, at 8 (**Exhibit 2**) ("If any person shall go into any church or religious assembly, any schoolroom, or other place where persons are assembled for amusement or for educational or scientific purposes, or into any circus, show or public exhibition of any kind, or into any ball room, or social party or social gathering or to any election precinct on the day or the days of any election, where any portion of the people of the State are collected to vote at any election, or to any other place where people may be assembled to muster, or to perform any public duty, or to any other public assembly, and shall have or carry about [their] person a pistol or other fire-arm…[they] shall be punished by a fine…").

27      [4] Many mid-to-late nineteenth century state laws and local government charters bear this out. *See, e.g.,* ACTS OF THE GENERAL ASSEMBLY OF THE COMMONWEALTH OF KENTUCKY 1066, 1076 (1893), *available at*

(continued…)

that of Columbia, Missouri, which in 1890 passed an ordinance expressly

restricting the carrying of dangerous weapons "into any church, or place where

people have assembled for religious worship; or into any school room, or place

where people are assembled for educational, literary or social purposes; or into any

court room, during the sitting of court, or to any election precinct on any election

day; or into any other public assemblage of persons met for any lawful purpose…"

*Chapter XVII: Carrying Concealed Weapons—Firing Guns, Pistols, Fire Crackers, Etc.*, May 22, 1890, *reprinted in* GENERAL ORDINANCES OF THE TOWN OF COLUMBIA, IN BOONE COUNTY, MISSOURI 34, 35 (Lewis M. Switzler ed., 1890), *available at* https://catalog.hathitrust.org/Record/001754262.[5] The Columbia

---

https://catalog.hathitrust.org/Record/010134273 (providing all Kentucky cities "of the third class" wide latitude to "regulate the sale of fire-arms, and to prevent the carrying of concealed deadly weapons" and make "all police regulations to secure and protect the general health, comfort, convenience, morals and safety of the public"); THE LAWS OF THE STATE OF KANSAS 118, 134 (1871), *available at* https://catalog.hathitrust.org/Record/100836175 (providing all Kansas cities "of the third class" wide latitude to "prohibit and punish the carrying of firearms or other deadly weapons, concealed or otherwise"); LAWS OF THE STATE OF INDIANA PASSED AT THE FIFTY-FIRST REGULAR SESSION OF THE GENERAL ASSEMBLY 201, 202 (1879), *available at* https://catalog.hathitrust.org/Record/008892461 (1879 law providing all Indiana towns the authority "to regulate or prohibit the use of firearms, fireworks, or other things tending to endanger persons and property"); ACTS OF TENNESSEE: EXTRAORDINARY SESSION 48, 55 (1885), *available at* https://catalog.hathitrust.org/Record/100666682 (providing the mayor and alderman of the city of Knoxville the authority to "prevent and suppress the sale of fire-arms and carrying of concealed weapons"); ACTS OF THE ONE HUNDRED AND TWELFTH LEGISLATURE OF THE STATE OF NEW JERSEY AND THE FORTY-FOURTH UNDER THE NEW CONSTITUTION 483, 501 (1888), *available at* https://catalog.hathitrust.org/Record/010134285 (1888 law providing all New Jersey towns the authority "to regulate or prohibit the use of firearms and the carrying of weapons of any kind"); THE COMPLETE CODES AND STATUTES OF THE STATE OF MONTANA IN FORCE JULY 1, 1895, at 424, 427 (1895), *available at* https://catalog.hathitrust.org/Record/010447759 (providing all Montana "city or town council[s]" the authority to "prevent and suppress the sale of firearms and carrying of concealed weapons"); *see also* Patrick J. Charles, *The Fugazi Second Amendment: Bruen's Text, History, and Tradition Problem and How to Fix It*, 71 CLEV. ST. L. REV. 623, 662 n.326, 685 n.406 (2023) (providing more than two dozen examples of firearms localism within state laws and local government charters).

[5] *See* LAWS OF MISSOURI: GENERAL AND LOCAL LAWS PASSED AT THE REGULAR SESSION OF THE TWENTY-NINTH GENERAL ASSEMBLY 158, 166 (1877), *available at* https://catalog.hathitrust.org/Record/000534559 (1877 Missouri state law empowering city and town councils, such as Columbia, with the authority to

(continued…)

ordinance mirrored Missouri state law, and was not the only Missouri locality to do so. The localities of Gainesville (1896),[6] Huntsville (1894),[7] Leonard (1891),[8] Marceline (1892),[9] Ridgeway (1893),[10] Rocheport (1895*),[11] and Warrensburg (1890),[12] all enacted similar ordinances.  Meanwhile, other Missouri localities,

_____

"prohibit and punish the carrying of firearms and other deadly weapons, concealed or otherwise"). Like Columbia, Webb City, Missouri and Huntsville, Missouri enacted similar laws. *See Ordinance No. 577: An Ordinance Defining What Shall constitute Misdemeanors or Offenses Against the City of Webb City, and Providing Penalties Therefor*, May 15, 1905, *reprinted in* REVISED ORDINANCES OF THE CITY OF WEBB CITY, MISSOURI, 1905, at 99, 100 (1905), *available at* https://catalog.hathitrust.org/Record/008604358; *An Ordinance in Relation to Carrying Deadly Weapons*, July 17, 1894, *reprinted in* THE REVISED ORDINANCES OF THE CITY OF HUNTSVILLE, MISSOURI OF 1894, at 58-59 (1894), *available at* https://everytownlaw.org/documents/2022/12/huntsville-mo-1894.pdf/.

   [6] *Ordinances, of the Incorporation of the Town of Gainesville*, May 26, 1896, *reprinted in* OZARK COUNTY NEWS (Gainesville, MO), June 4, 1896, at 1 (**Exhibit 3**) ("It shall be unlawful for any person…to go into any public gathering or place where people are assembled for any lawful purpose, with any kind of fire-arms…or other deadly weapon…").

   [7] *An Ordinance in Relation to Carrying Deadly Weapons*, July 17, 1894, *reprinted in* THE REVISED ORDINANCES OF THE CITY OF HUNTSVILLE, MISSOURI OF 1894, at 58-59 (1894), *available at* https://everytownlaw.org/documents/2022/12/huntsville-mo-1894.pdf/.

   [8] *Ordinance No. 23: Ordinance Concerning the Carrying of Deadly Weapons*, July 6, 1891, *reprinted in* SHELBY COUNTY HERALD (Shelbyville, MO), July 29, 1891, at 4 (**Exhibit 4**).

   [9] *Ordinance No. 9*, September 12, 1892, *reprinted in* MARCELINE JOURNAL-MIRROR (MO), October 28, 1892, at 8 (**Exhibit 5**).

   [10] *Town Ordinance No, XXVIII: An Ordinance in Relation to Misdemeanors*, April 3, 1893, *reprinted in* RIDGEWAY JOURNAL (MO), April 6, 1893, at 4 (**Exhibit 6**).

   [11] *An Ordinance: Misdemeanors*, undated, *reprinted in* ROCHEPORT COMMERCIAL (MO), September 20, 1895, at 8 (**Exhibit 7**) ("If any person shall carry concealed upon or about his person any deadly or dangerous weapon, or shall go into any court, or into any public assemblage of persons met for a lawful purpose, having upon or about his person any kind of fire arms…or other deadly weapon…shall be deemed guilty of a misdemeanor…"). The asterisks next to Exhibits 7, 10, and 20 indicate that the actual date that the respective ordinances were enacted is unknown, but because those ordinances appeared in print for those respective years, it is assumed those are the years of enactment (or at least no later than that year).

   [12] *Concealed or Deadly Weapons*, June 5, 1890, *reprinted in* JOHNSON COUNTY STAR (Warrensburg, MO), June 7, 1890, at 4 (**Exhibit 8**).

Declaration of Patrick J. Charles
(Case Nos. 8:23-cv-01696 and 8-23-cv-01798)

including Collins (1887),[13] Craig (1880*),[14] Cuba (1881),[15] Granby (1873)[16] just to name a few, enacted ordinances restricting the carrying of dangerous weapons within their "corporate" or "incorporate" limits, whether such carrying was open, concealed, or both. This meant that the carrying of dangerous weapons within these localities' commercial and public epicenters was legally deemed off limits.

17.    Localities throughout the state of Kansas enacted similar ordinances. Indeed, in the case of Stockton, Kansas, persons were prohibited from carrying dangerous weapons "into any church or place where the people have assembled for public worship, or into any school room or place where people have assembled for educational, literary or social purposes, or to any election on any election day, or into any court room during the sitting of court, or into any other public assemblage of persons …or shall go upon the public streets or public places of the city…" *Ordinance No. 76: An Ordinance Prohibiting Deadly Weapons*, July 1, 1887, *reprinted in* STOCKTON REVIEW AND ROOKS COUNTY RECORD (KS), July 1, 1887, at 1 (**Exhibit 13**). However, most Kansas localities that enacted restrictions on the

---

[13] *Town Ordinances: Adopted by the Board of Trustees of the Town of Collins, Mo.: Ordinance No. 4*, May 2, 1887, *reprinted in* OSCEOLA ADVANCE (Osceola, MO), July 7, 1887, at 4 (**Exhibit 9**) ("Any person who shall carry any concealed weapon or any revolver, pistol, knife or dirk which may not be concealed within the corporate limits of the town of Collins, shall…be fined…except however, that upon good cause shown, the board may grant a permit to any citizen of good reputation to carry weapons for self defense.").

[14] *Ordinances of Craig, Mo.: Ordinance No. 8—Carrying Concealed Weapons*, undated, *reprinted in* CRAIG WEEKLY GAZETTE (MO), October 13, 1880, at 4 (**Exhibit 10**) ("Any person who shall within the corporate limits of said city of Craig, carry of have upon his person, any concealed weapon or weapons, shall be adjudged guilty of a misdemeanor…").

[15] *Revised Ordinances: Ordained and Established May 24, 1881: Chapter VIII: Misdemeanors*, May 24, 1882, *reprinted in* CRAWFORD MIRROR (Steelville, MO), July 27, 1882, at 1 (**Exhibit 11**) ("If any person be found carrying concealed about his person in the corporate limits, any kind of fire arms…or other deadly weapon, within the limits of said town he shall be fined….").

[16] *Ordinances of the Town of Granby: No. 8: An Ordinance Concerning the Carrying of Weapons*, October 30, 1873, *reprinted in* GRANBY MINER (Granby, MO), November 1, 1873, at 2 (**Exhibit 12**) ("That any person within the corporate limits of the town of Granby who shall be found carrying, either openly or concealed, any pistol…or any other offensive weapon…shall be fined…").

Declaration of Patrick J. Charles
(Case Nos. 8:23-cv-01696 and 8-23-cv-01798)

carrying of dangerous weapons in "sensitive places" did so by making their entire "corporate" or "incorporate" area off limits, whether such carrying was open, concealed, or both. Abilene (1870),[17] Arkansas City (1885),[18] Beloit (1872),[19] Caldwell (1885),[20] Coolidge (1886),[21] Elk City (1898),[22] Harper (1887*),[23] Howard

---

[17] *An Ordinance Relating to the Carrying of Fire Arms and Other Deadly Weapons*, to take effect on May 20, 1870, *reprinted in* ABILENE WEEKLY CHRONICLE (KS), May 12, 1870, at 1 (**Exhibit 14**) ("That any person who shall carry, within the limits of the town of Abilene, or commons, a pistol, revolver….or other dangerous weapon…either openly or concealed, except to bring the same and forthwith to deposit it  or them at their house, boarding house, store room or residence, shall be fined…").

[18] *Ordinance No. 1*, May 11, 1885, *reprinted in* ARKANSAS CITY WEEKLY TRAVELER (KS), May 20, 1885, at 4 (**Exhibit 15**) ("That any person carrying any deadly or dangerous weapons, such as loaded fire-arms…or any other weapons which when used are liable to produce death or great bodily harm, unconcealed, within the corporate limits of the city" shall pay a fine of $1 to $10, and the carrying of said weapons "concealed" will pay a fine of $5 to $25).

[19] *An Ordinance in Relation to the Carrying of Fire-Arms or Other Weapons*, September 9, 1872, *reprinted in* BELOIT GAZETTE (KS), September 19, 1872, at 4 (**Exhibit 16**) ("That any person who shall be found within the corporate limits of this city with any revolver, pistol…or any other dangerous or deadly weapon concealed or otherwise shall be deemed guilty of a misdemeanor…").

[20] *Revised Ordinances of the City of Caldwell*, undated, *reprinted in* CALDWELL ADVANCE (KS), May 4, 1885, at 2 (**Exhibit 17**) ("Any person carrying any deadly or dangerous weapon, such as firearms…or any other weapon which when used is liable to produce death or great bodily harm, unconcealed, within the corporate limits of the city" shall pay a fine of $10 to $100, and carrying of said weapons "concealed" will pay a fine of $15 to $100).

[21] *An Ordinance Concerning Offenses in the Nature of Misdemeanors*, April 26, 1886, *reprinted in* BORDER RUFFIAN (Coolidge, KS), May 1, 1886, at 1 (**Exhibit 18**) ("It shall be unlawful for any person or persons to display or make any improper use of any deadly weapon withing the corporate limits of this city…Any person or persons, other than the duly appointed and commissioned officers of this city, or officers of this county or State, carrying concealed deadly weapons…within the corporate limits of the city, shall, upon conviction, be deemed guilty of a misdemeanor.").

[22] *Ordinance No. 165*, March 7, 1898, *reprinted in* ELK CITY ENTERPRISE (KS), March 11, 1898, at 2 (**Exhibit 19**) ("That any person within the corporate limits of said city of Elk City who…shall carry or have on his or her person in a concealed manner, or otherwise any pistol…or any deadly weapon…shall be deemed guilty of a misdemeanor…").

[23] *Ordinance No. 180*, undated, *reprinted in* HARPER DAILY SENTINEL (KS), August 23, 1887, at 2 (**Exhibit 20**) ("That it shall be unlawful for any person to carry any deadly or dangerous weapon, such as fire arms…within the incorporate limits of said city.").

(1889),[24] Kendall (1887),[25] Meade Center (1885),[26] Mount Hope (1887),[27] and Scandia (1893)[28] are just a few examples in this regard.

18.     Ordinances restricting the carrying of dangerous weapons in localities' entire "corporate" or "incorporate" areas were not limited to the states of Missouri and Kansas. Much like armed carriage licensing laws, Charles, *The Fugazi Second Amendment*, *supra*, at 569-65, ordinances restricting the carrying of dangerous weapons in "corporate" or "incorporate" areas proliferated across the United States during the mid-to-late nineteenth century, *id.* at 709-10. For instance, Asheville, North Carolina enacted an ordinance prohibiting the carrying of "pistols, bowie-knives, sling-shots, billeys, [and] other deadly weapons (officers excepted) within the corporate limits…" *Ordinances of the Town of Asheville*, in force as of June 1, 1882, *reprinted in* ASHEVILLE WEEKLY CITIZEN (NC), June 3, 1882, at 1 (**Exhibit 26**). Similarly, in 1874, Lake Charles, Louisiana passed an ordinance prohibiting

---

[24] *Ordinance No. 72: An Ordinance to Prevent Carrying Concealed Weapons and the Discharge of Firearms*, May 16, 1889, *reprinted in* CITIZEN (Howard, KS), May 22, 1889, at 3 (**Exhibit 21**).

[25] *Ordinances: Of the City of Kendall, in the County of Hamilton, State of Kansas*, undated, *reprinted in* KENDALL FREE PRESS (KS), March 23, 1887, at 1 (**Exhibit 22**) ("It shall be unlawful for any person or persons to display or make any improper use of any deadly weapon within the corporate limits of this city…Any person or persons, other than the duly appointed and commissioned officers of this city, or officers of this county or State, carrying concealed deadly weapons…within the corporate limits of the city, shall, upon conviction, be deemed guilty of a misdemeanor.").

[26] *City Ordinances*, November 23, 1885, *reprinted in* MEADE GLOBE (Meade Center, KS), November 28, 1885, at 2 (**Exhibit 23**) (prohibiting all persons "not authorized by the laws of the United States or the state of Kansas" from carrying a "pistol…or other deadly weapons" within the "incorporate limits").

[27] *Ordinance No. Twelve: Peace, Good Government and Welfare*, May 4, 1887, *reprinted in* MOUNT HOPE CLARION (KS), May 5, 1887, at 3 (**Exhibit 24**) (prohibiting all except officers and travelers from carrying "firearms…or other deadly weapons, concealed, within the corporate limits," and "any person under the age of twenty one years of age" from "carrying any deadly weapon, concealed or otherwise").

[28] *Ordinance No. 79*, December 27, 1893, *reprinted in* SCANDIA JOURNAL (KS), January 5, 1894, at 8 (**Exhibit 25**) (prohibiting the concealed carry of any "pistol…or other deadly weapon" within the "corporate limits" except for persons "engaged in a lawful occupation and of good moral character" who are "granted a permit to carry such concealed weapons").

Declaration of Patrick J. Charles
(Case Nos. 8:23-cv-01696 and 8-23-cv-01798)

the carrying of any "weapon or weapons…within the corporate limits…such as Bowie knives, pistols, revolvers, dirks…or any other dangerous weapon…" *The Town Council*, June 20, 1874, *reprinted in* LAKE CHARLES ECHO (Lake Charles, LA), July 18, 1894, at 4 (**Exhibit 27**). The same was true for the Pennsylvania capital city of Harrisburg, which in 1873 enacted an ordinance prohibiting the carrying of "any pistol, dirk-knife, slung-shot or deadly weapon, within the city limits…except police officers…" LOUIS RICHARDS & JAMES M. LAMBERTON, A DIGEST OF LAWS AND ORDINANCES FOR THE GOVERNMENT OF THE CITY OF HARRISBURG, PENNSYLVANIA IN FORCE AUGUST 1, A.D. 1906, at 557-58 (1906), *available at* https://catalog.hathitrust.org/Record/100565572.

19.     There are other local ordinance examples.[29] Historically speaking, however, it is impossible to state with specificity just how many localities

---

[29] *See, e.g., Ordinance No. 20*, February 6, 1900, *reprinted in* WELLSTON NEWS (OK), February 9, 1900, at 4 (**Exhibit 28**) (prohibiting "within the town" of Wellston, Oklahoma the carrying of "any pistol, dirk or bowie knife or other deadly weapon" whether done in a "concealed or unconcealed manner"); *Misdemeanors: Chapter 12, By Laws and Ordinances*, undated, *reprinted in* LAWRENCE DEMOCRAT (Lawrenceburg, TN), July 26, 1895, at 4 (**Exhibit 29**) ("That is shall not be lawful for any person to carry about their person any pistol…or other deadly weapon within this Corporation…"); *An Ordinance Prohibiting the Carrying of Concealed Weapon and Fixing the Punishment Therefor*, January 23, 1895, *reprinted in* PERRY DAILY TIMES (OK), February 2, 1895, at 2 (**Exhibit 30**) (prohibiting the concealed carry of dangerous weapons across the city of Perry, Oklahoma, and all carrying of dangerous weapons within the "corporate limits"); *Will Be Enforced*, STATE RIGHTS DEMOCRAT (Albany, OR), March 9, 1894, at 3 (**Exhibit 31**) (reprint of Albany, Oregon Ordinance No. 152 prohibiting "any person or persons [from carrying] any deadly or dangerous weapons of any kind whatever in a concealed manner within the corporate limits…"); THE REVISED ORDINANCES OF PROVO CITY, UTAH 96 (1893), *available at* https://catalog.hathitrust.org/Record/009037720 ("Every person who shall wear, or carry upon his person any pistol, or other fire arm, slungshot, false-knuckles, bowieknife, dagger or any other dangerous or deadly weapon within the city limits of this city is guilty of an offence, and upon conviction thereof shall be liable to a fine in any sum not exceeding twenty-five dollars, or to be imprisoned in the city jail not exceeding twenty-five days, or to both fine and imprisonment."); *Ordinances: Chapter VIII: Deadly Weapons*, August 11, 1891, *reprinted in* SANTA FE WEEKLY SUN (NM), August 15, 1891, at 4 (**Exhibit 32**) ("That it shall be unlawful for any person to carry a deadly weapon, either concealed or unconcealed, within the limits of the city of Sante Fe, unless the same be carried in lawful defense of himself, his family or his property, the same being at the time threatened with danger, or unless by order of legal authority..."); *Ordinance—Continued: Chapter VII: Deadly Weapons*, undated 1891, *reprinted in* THE RUSTLER (Cerrillos, NM), September 11, 1891, at 5 (**Exhibit 33**) ("That it shall (continued…)

1   maintained "sensitive places" ordinances by the close of the nineteenth century.

2   Like most local government records up to the close of the nineteenth century, many

3   local ordinances have been lost to time. Indeed, often localities published their

4   ordinances in local newspapers, and, in fact, it is from local newspapers that I was

5   able to locate many "sensitive places" ordinances. But as any professional historian

6   or archivist can attest, the records of local ordinances that have survived for

7   historical posterity are only a fragment of the whole.

8

9   be unlawful for any person to carry a deadly weapon, either concealed or
10  unconcealed, within the limits of the Town of Cerrillos, unless the same be carried
    in lawful defense of himself, his family or his property, the same being at the time
    threatened with danger, or unless by order of legal authority..."); *Ordinance No.
11  *2133*, July 23, 1889, *reprinted in* OMAHA WORLD-HERALD (NE), August 4, 1889, at
    12 (**Exhibit 34**) ("It shall be unlawful for any person to wear under his clothes, or
12  concealed about his person, any pistol or revolver, colt, billy, slug-shot, brass
    knuckles or knuckles of lead, dirk, dagger, or any knife resembling a bowie knife,
13  or any other dangerous or deadly weapon within the corporate limits of Omaha.");
    *Ordinance No. 11*, December 4, 1882, *reprinted in* BLACK HILLS WEEKLY JOURNAL
14  (SD), December 8, 1882, at 1 (**Exhibit 35**) ("That is shall be, and it is hereby
    declared to be unlawful for any person to carry, openly or concealed, any musket,
15  rifle, shot gun, pistol…or any other dangerous or deadly weapon within the
    corporate limits of the town of Rapid City, Dakota
16  territory…me[re]…transportation from one place to another" excluded); *Ordinance
    No. 44*, May 8, 1883, *reprinted in* ARIZONA DAILY STAR (Tucson, AZ), May 19,
17  1883, at 3 (**Exhibit 36**) ("If any person within the corporate limits if the city of
    Tucson carry concealed upon his person any gun, pistol, bowie-knife, dagger, or
18  other deadly weapon, he shall be deemed guilty of…a misdemeanor"); *An
    Ordinance (No. 18): Regulating the Keeping and Bearing of Deadly Weapons*,
19  August 19, 1873, *reprinted in* GALVESTON DAILY NEWS (TX), August 28, 1873, at
    4 (**Exhibit 37**) ("That any person carrying on or about his person, saddle or vehicle,
20  within the corporate limits of the city of Galveston, any pistol [or other dangerous
    weapons]…for the purposes of offense or defense….unless he has reasonable
21  grounds for fearing an unlawful attack on his person, and that such attack shall be
    immediate and pressing" will be a pay between $25 and $100); *An Ordinance to
22  Prevent the Carrying of Arms*, April 9, 1873, *reprinted in* DAILY TIMES
    (Chattanooga, TN), April 24, 1873, at 1 (**Exhibit 38**) ("That if any person shall,
23  within the corporate limits of the City of Chattanooga, either publicly or privately
    carry any dirk, sword-cane, Spanish stiletto, belt or pocket pistol, Bowie knife or
24  any large knife of like form or size to a Bowie knife, brass knuckles or slung shot,
    [they] shall be deemed guilty of a misdemeanor and…shall be fined not less than
25  fifty dollars and confined in the city jail not less than thirty days."); *An Ordinance
    Prohibiting the Carrying of Fire Arms and Concealed Weapons*, undated, *reprinted
26  in* NEBRASKA CITY NEWS (NE), July 7, 1869, at 3 (**Exhibit 39**) ("That it shall be,
    and it is hereby declared to be unlawful for any person to carry openly or
27  concealed, any musket, rifle, shot gun, pistol…or any other dangerous or deadly
    weapons, within the corporate limits of Nebraska City,
28  Nebraska…mere…transportation from one place to another" excluded).

20.     Despite being unable to fully reconstruct the exact number "sensitive places" laws, what is known upon examining all the state and local "sensitive places" laws from a macro level is that come the mid-to-late nineteenth century state and local governments maintained the authority to restrict the carrying of dangerous weapons in a variety of "sensitive places" where people were known to congregate. Such "sensitive places" categories included 1) churches and places of worship; 2) places where large public assemblies generally took place, *i.e.*, parks,[30] town squares, and the like; 3) polling places and other buildings where political activity generally took place; 4) schools and institutions of higher learning; 5) places where events of amusement took place, *i.e.*, places where people congregate for large planned events; and 6) bars, clubs, social venues, or anywhere in which alcohol or psychoactive or mood altering drugs were purchased or consumed.

21.     What historically buttresses that each of these categories were generally understood to be "sensitive places" is the fact that there is no historical evidence that informs otherwise. As far as I am aware, not one nineteenth century court of law found any of these "sensitive places" categories to be unconstitutional.[31] The same is true for nineteenth century legal commentary—not one said commentary calls these "sensitive places" categories into constitutional

---

[30] For some "park" examples, see Charles, *The Fugazi Second Amendment*, *supra*, at 710-12 and accompanying notes.

[31] In fact, the opposite is true. *See State v. Shelby*, 90 Mo. 302, 468–69 (Mo. 1886); *State v. Wilforth*, 74 Mo. 528, 530–31 (Mo. 1881); *Owens v. State*, 3 Tex. App. 404 (Tex. App. 1878), *reprinted in* CASES ARGUED AND ADJUDGED IN THE COURT OF APPEALS OF THE STATE OF TEXAS 404–8 (Vol. 3, 1878); Hill v. State, 53 Ga. 472, 473–75 (Ga. 1874); *English v. State*, 35 Tex. 473, 473–74, 476 (Tex. 1873); *Andrews v. State*, 50 Tenn. 165, 168 (Tenn. 1871). *See also The Supreme Court: On Carrying Concealed Weapons*, STATE JOURNAL (Jefferson City, MO), April 12, 1878, at 2 (**Exhibit 40**) (copy of 1878 Missouri Supreme Court decision *State v. Reando*, upholding a constitutional challenge to the state's "sensitive places" law). The case cannot be found in the Missouri Supreme Court Historical Database but was briefly reported in a contemporaneous issue of *The Central Law Journal*. *See Abstract of Decisions of the Supreme Court of Missouri: October Term, 1877*, 6 CENTRAL L. J. 16, 16 (1878) ("The act of the legislature prohibiting the conveying of fire-arms into courts, churches, etc….is constitutional. It is a police regulation not in conflict with the provisions of the organic law…*State v. Reando*.").

Declaration of Patrick J. Charles
(Case Nos. 8:23-cv-01696 and 8-23-cv-01798)

question. This is rather important because *Bruen* denotes that when it comes to the "sensitive places" doctrine a *lack* of historical evidence disputing their lawfulness *presumes* their constitutionality. 142 S. Ct. at 2133.

## II.    THE HISTORY OF RESTRICTIONS ON LIQUOR AND ARMS BEARING

22.    All the while armed carriage licensing laws and "sensitive places" laws were spreading across the country, so too were laws regulating liquor and arms bearing. It is difficult to state with specificity when the first law restricting arms bearing and liquor came into existence in the American Colonies. *See, e.g.*, *General Court for Elections, Boston*, May 28, 1679, reprinted in 2 MILITARY OBLIGATION: THE AMERICAN TRADITION: PART 6. MASSACHUSETTS ENACTMENTS 125 (1947), *available at* https://catalog.hathitrust.org/Record/100721030 (prohibiting the bringing to any militia muster or training "any wine, strong liquor, cider, or any other inebriating" drinks). What is known is that by the mid-eighteenth century, many colonial lawmakers viewed liquor and arms bearing as a potentially dangerous combination. For instance, in 1746, New Jersey made it unlawful "to sell any strong Liquor" to any militiaman during the "Days or Times that they are obliged to appear in Arms at the Place of Mustering or Training, or within a Mile thereof, until after they are dismissed for that day"—militiamen on leave from their commanding officers excluded. *An Act for Better Settling and Regulating the Militia of the Colony of New-Jersey, for the Repelling of Invasion, and Suppressing Insurrections and Rebellions*, May 8, 1746, *reprinted in* ACTS OF THE GENERAL ASSEMBLY OF THE PROVINCE OF JERSEY 139, 146 (1776), *available at* https://catalog.hathitrust.org/Record/010448351. Similarly, in 1756, Delaware made it unlawful to "expose to sale at or Bring on any Pretence whatsoever any strong Liquor" to any militia muster or meeting. *An Act for the Establishing a Militia in this Government*, March 24, 1756, *reprinted in* 2 MILITARY OBLIGATION: THE AMERICAN TRADITION: PART 3. DELAWARE ENACTMENTS 10, 12 (1947),

available at https://catalog.hathitrust.org/Record/100721030; *see also An Act for Regulating the Militia of the Province of Maryland*, May 22, 1756, *reprinted in* 2 MILITARY OBLIGATION: THE AMERICAN TRADITION: PART 5. MARYLAND ENACTMENTS 83, 93 (1947), *available at* https://catalog.hathitrust.org/Record/100721030 (prohibiting the selling, disposing, or vending of "Strong Liquor" at "any place of training or at any other Place within Five Miles of any Place of training").

23.     After the ratification of the Constitution, many lawmakers continued to view liquor and arms bearing as a potentially dangerous combination. *See, e.g., An Act for the Regulation of the Militia of New-Jersey*, June 13, 1799, *reprinted in* LAWS OF THE STATE OF NEW JERSEY 436, 444 (William Patterson ed., 1800), *available at* https://catalog.hathitrust.org/Record/010448353 ("Any person, who shall bring any kind of spiritous liquors to the place of exercise, shall forfeit such liquors…"); *New Militia Law: An Act for the Regulation of the Militia of the Commonwealth of Pennsylvania*, April 11, 1793, *reprinted in* INDEPENDENT GAZETTEER (Philadelphia, PA), April 20, 1793, at 1, 4 (**Exhibit 41**) ("No company or regiment shall meet at a tavern on any of the days of exercise, nor shall march to any tavern before they are discharged, and any person who shall bring any kind of spiritous liquors to such place of training, shall forfeit such liquors so brought…"); AN ACT FOR THE BETTER REGULATION OF THE MILITIA, IF THE CITY OF BALTIMORE, PASSED BY THE LEGISLATURE OF MARYLAND, DECEMBER SESSION, 1817, at 15 (1818), *available at* https://archive.org/details/gpl_1337206/page/n9/mode/2up (law prohibiting militia members from "appear[ing] drunk"). Of course, not every state enacted liquor-related arms bearing restrictions, nor did every locality effectively enforce them. But this is in part why the state militias fell into such disrepute by the mid-nineteenth century. *See, e.g., Lena London, The Militia Fine 1830-1860*, 15 MILITARY AFFAIRS 133, 136 (1951) ("The excessive consumption of liquor at militia musters resulted in more than just inebriation. Disorderly conduct and riots

were often the outcome."); Patrick J. Charles, Armed in America: A History of Gun Rights from Colonial Militias to Concealed Carry 79, 130 (2018) (containing historical images of the militia drinking alcohol during musters).

24. As for non-militia based restrictions on liquor and arms bearing, the territory of New Mexico appears to have been the forefront. Therein, in 1852, it was made unlawful for "any person" to carry "fire arms or other deadly weapons" into any "ball where Liquors are sold…" Laws of the Territory of New Mexico, Passed by the Second Legislative Assembly in the City of Santa Fe 69 (1853), *available at* https://catalog.hathitrust.org/Record/010476920. However, it was not until after the Civil War—after lawmakers and public officials began to increasingly witness the negative consequences of alcohol on war veterans[32]—that broad, general restrictions on liquor and arms bearing began to spread across the country. On the state level, Kansas (1867),[33] Mississippi (1878),[34] Missouri (1879),[35] Oklahoma (1890),[36] and Wisconsin (1883)[37] all enacted liquor-related arms bearing restrictions.

---

[32] *"Half the Time Unfit for Duty": Alcoholism in the Civil War*, National Museum of Civil War Medicine, September 2, 2021, *available at* https://www.civilwarmed.org/alcoholism/.

[33] *An Act to Prevent the Carrying of Deadly Weapons*, February 23, 1867, *reprinted in* Laws of The State Of Kansas 25 (1867), *available at* https://catalog.hathitrust.org/Record/100836175 (prohibiting any "person under the influence of intoxicating drink" from carrying dangerous weapons).

[34] *Laws of the State of Mississippi: An Act to Prevent the Carrying of Concealed Weapons, and For Other Purposes*, February 28, 1878, *reprinted in* Clarion-Ledger (Jackson, MS), March 13, 1878, at 3 (**Exhibit 42**) ("That it shall not be lawful for any person to sell to…any person intoxicated, knowing him to be…in a state of intoxication, any" dangerous weapons).

[35] Revised Statutes of the State of Missouri, 1879 at 224 (1879), *available at* https://catalog.hathitrust.org/Record/002030306 (law prohibiting any person from carrying any dangerous weapons "upon his person when intoxicated or under the influence of intoxicating drinks").

[36] Statutes of Oklahoma 1890, *supra*, at 496 (prohibiting the carrying of dangerous weapons "to any place where intoxicating liquors are sold").

[37] *An Act to Prohibit the Use and Sale of Pistols and Revolvers*, April 7, 1883, *reprinted in* Laws of Wisconsin 290 (1883), *available at* https://catalog.hathitrust.org/Record/005877100 ("It shall be unlawful for any person in a state of intoxication, to go armed with any pistol or revolver.").

25.     And given the prevalence of firearms localism during the mid-to-late nineteenth century, *see supra* pp. 9-10, so too did many localities. Much like "sensitive places" and armed carriage licensing laws during this period, it is impossible to historically pinpoint just how many localities enacted ordinances governing liquor and arms bearing. Many localities made intoxication and unlawful arms bearing separate offenses, each with their own penalty or fine. Other localities, however, combined the two offenses into one. Such was the case for Grand Junction, Colorado circa 1899, which made it unlawful to not only "carry any...weapon or weapons when drunk or in a state of intoxication," and to "sell, barter, loan or deliver any such weapon or weapons to any drunk or intoxicated person." *Ordinance No. 83: Article VIII: Offensives Affecting the Public Safety*, June 30, 1899, *reprinted in* GRAND JUNCTION NEWS (CO), July 8, 1899, at 4, 7 (Exhibit 37). In 1895, Rocheport, Missouri enacted an ordinance, prohibiting the carrying of "any...weapon upon or about [their] person when intoxicated or under the influence of intoxicating drinks..." *An Ordinance: Misdemeanors*, undated, *reprinted in* ROCHEPORT COMMERCIAL (MO), September 20, 1895, at 8 (**Exhibit 7**). Meanwhile, in 1891, Lyons, Kansas enacted an ordinance prohibiting the carrying of any "pistol, bowie knife, dirk or other deadly weapon" with the city limits by anyone "not engaged in any legitimate business" or "under the influence of intoxicating drink..." *Ordinance No. 179*, September 7, 1891, *reprinted in* LYONS REPUBLICAN (KS), September 10, 1891, at 4 (**Exhibit 43**). There are indeed other examples to point to,[38] but none as broad as the prohibition adopted by two of the

---

[38] *Town Ordinance No. 21*, August 7, 1894, *reprinted in* K COUNTY DEMOCRAT (Blackwell, OK), August 23, 1894, at 8 (**Exhibit 44**) (prohibiting the general carrying of dangerous weapons within the "corporate limits," but also prohibiting all "public officers" from carrying if "under the influence of intoxicating drinks"); *An Ordinance—To Prohibit Intoxication Breach of the Peace, Carrying of Deadly Weapons...and to Repeal Certain Ordinances in Said City*, December 22, 1887, *reprinted in* WALLACE COUNTY REGISTER (KS), December 24, 1887, at 7 (**Exhibit 45**) ("Any person who shall, while intoxicated be found carrying on his person, a pistol...or other deadly weapon, shall upon conviction be fined in a sum not exceeding $100, or by imprisonment in the city jail not

(continued…)

Declaration of Patrick J. Charles
(Case Nos. 8:23-cv-01696 and 8-23-cv-01798)

1  country's three most populous cities—New York and Brooklyn respectively. Both

2  enacted prohibitions on the selling, loaning, or giving of any dangerous weapon to a

3  person that posed "any danger to [the] life" of others, which naturally would have

4  precluded the selling, loaning, or giving of any dangerous weapons to any

5  intoxicated persons. *See* METROPOLITAN BOARD OF HEALTH: CODE OF HEALTH

6  ORDINANCES, AND RULES AND SANITARY REGULATIONS 52 (1866), *available at*

7  https://catalog.hathitrust.org/Record/008905639; *Sanitary Code*, July 15, 1873,

8  *reprinted in* BROOKLYN UNION (NY), August 21, 1873, at 1 (**Exhibit 47**).

9        26.    As far as I am aware, not one nineteenth century legal commentator or

10  nineteenth century court of law found any liquor-related arms bearing restriction

11  unconstitutional.  In fact, the opposite is true. *See Shelby*, 90 Mo. at 468-69; *see*

12  *also Tipler v. State*, 57 M. 365 (1880), *reprinted in* 57 REPORTS OF CASES IN THE

13  SUPREME COURT FOR THE STATE OF MISSISSIPPI (1880) (noting that the

14  reasonableness exception to the state's armed carriage law could not apply to

15  instances of "idle threats" or "'the offspring of intoxication"); *Concealed Weapons:*

16  *Judge Brannon's Decision on This Subject*, WHEELING REGISTER (WV), October

17  15, 1883, at 1 (**Exhibit 48**) (noting that the principal purpose of most armed

18  carriage restrictions are to prevent an "armed riot or affray," particularly during

19  "dangerous moments of anger or intoxication").

### III.   PLAINTIFFS' RELIANCE ON "BRING ARMS TO CHURCH" LAWS IS HISTORICALLY MISPLACED

22        27.    From the mid-seventeenth through the late eighteenth century, it is

23  indeed true, as the *May* Plaintiffs point out, that several American Colonies enacted

24  laws requiring church parishioners to bring their arms to church. *See May* MPA

---

26  exceeding 3 months."); *Ordinance No. 39*, January 4, 1886, *reprinted in* DADE

27  COUNTY ADVOCATE (Greenfield, MO), January 21, 1886, at 4 (**Exhibit 46**)

   (prohibiting the carrying of dangerous weapons by those "intoxicated, or under the influence of intoxicating drinks").

Declaration of Patrick J. Charles
(Case Nos. 8:23-cv-01696 and 8-23-cv-01798)

(Dkt. No. 13-1), at 22. However, in proffering this historical evidence to the court, the *May* Plaintiffs do not present it in proper historical context.

28.    First and foremost, it must be noted that many "bring your arms to church" laws are antecedents of slavery and were principally intended to quell potential slave revolt. *See, e.g.*, 7 THE STATUTES OF LARGE OF SOUTH CAROLINA 417-19 (1840) (reprint of a 1743 South Carolina law requiring white persons to bring arms to church for the "better ordering and government negroes and other slaves"); *see also* SALLY E. HADDEN, SLAVE PATROLS: LAW AND VIOLENCE IN VIRGINIA AND THE CAROLINAS 140-41 (2001). To be clear, these laws are inherently racist. For example, a 1770 Georgia law required white persons to bring arms to church for the purpose of quelling "internal dangers and insurrections." 19 THE COLONIAL RECORDS OF THE STATE OF GEORGIA (pt. 1) 137-38 (1911). The law was an updated version of a 1757 Georgia law of a similar name that also required white persons to bring arms to church to quell "domestick insurrections." 1 THE EARLIEST PRINTED LAWS OF THE PROVINCE OF GEORGIA, 1755-1770, at 15 (1978).

29.    Secondly, all other 'bring your gun to church' laws—that is laws that were not intended to quell slave revolts or subjugate people of color—were enacted with the express purpose of training government sponsored "well regulated" militias. *See, e.g.*, 6 WILLIAM WALLER HENING, THE STATUTES AT LARGE; BEING A COLLECTION OF ALL THE LAWS OF VIRGINIA FROM THE FIRST SESSION OF THE LEGISLATURE, IN THE YEAR 1619, at 534 (1819) (1755 Virginia law declaring it will be lawful for militia officers to require all militiamen "to go armed to their respective parish churches" for training). To be clear, 'bring your gun to church' militia laws were not 'right to carry to church' laws. Rather, they were compulsory laws enacted within the constitutional confines of state plenary power to call forth and muster the militia for training or internal security. *See* Charles, *1792 National Militia Act*, *supra*, at 344-46, 374-90 (outlining the history of this state plenary power over the militia); *see also Presser v. Illinois*, 116 U.S. 252 (1886) (affirming

Declaration of Patrick J. Charles
(Case Nos. 8:23-cv-01696 and 8-23-cv-01798)

state plenary power to muster, assemble, and train the militia); *District of Columbia v. Heller*, 554 U.S. 570, 620-21 (2008) (noting that nothing in *Heller* seeks to upend *Presser*'s holding of forbidding bodies of men from marching or assembling with arms). The point is that the historical evidence, when placed in context suggests that colonial and later state governments had sufficient leeway to enact time, place, and manner restrictions when it came to public arms-bearing and armed assemblage. To interpret these 'bring your guns to church' militia laws as Plaintiffs suggest is to break the bounds of historical elasticity. It would ultimately mean that any eighteenth century law that legally compelled persons to do a particular act could make said act forever a constitutional right, and any modern law that restricts or prohibits said act is ipso facto unconstitutional. Such a utilization of history for law would create a dangerous precedent that would ultimately upend many state police powers.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October  30 , 2023, at Auburn, Alabama   .

_____
PATRICK J. CHARLES

# Exhibit 1

Exhibit 1
Page 024

# PATRICK J. CHARLES
www.patrickjcharles.com

## EDUCATION

**Queen Mary-University of London School of Law**, LLM Legal Theory and History with Distinction, Dec 2014.
   Legal Theory and History Full Scholarship Recipient
   Peer Review Editor, Queen Mary Law Journal

**Cleveland-Marshall School of Law**, Juris Doctor, May 2009.
   2008 Judge John R. Brown Award for Legal Writing ($10,000 award given annually to best student article, note, comment or paper in the United States)

**George Washington University**, B.A. History with Honors, International Affairs Conflict & Security, International Affairs European Affairs, Jun 2005.

## EXPERIENCE

**Air Force Historical Research Agency, USAF**, Maxwell AFB, AL     *Oral History and Studies Div Chief* 07/23 – Pres

**Air Force Historical Research Agency, USAF**, Maxwell AFB, AL     *Lead Research Team Archivist* 04/22 – 9/23

**U.S. Special Operations Command, Legislative Affairs, USAF**, Washington, DC *Legislative Liaison* 01/21 – 4/22

**U.S. Senate, Office of U.S. Senator Martin Heinrich**, Washington, DC     *Legislative Fellow*  01/20 – 01/21

**Dept of State, Office of U.S. Foreign Assistance Resources**, Washington, DC *Legislative Analyst* 07/19 - 01/20

**U.S. Special Operations Command, USAF**, MacDill AFB, FL     *Senior Historian* 07/16 - 07/19

**Journal of Immigration, Asylum, and Nationality Law**, London, UK     *Peer Review Editor* 09/15 - 09/18

**24th Special Operations Wing, USAF**, Hurlburt Field, FL     *Historian*  08-14 - 07/16

**352nd Special Operations Group, USAF**, Mildenhall, UK     *Historian* 12/10 - 08/14

**Immigration Reform Law Institute**, Washington, DC     *Legal Analyst/Legal Historian* 5/09 - 12/10

**United States Marine Corps**, Shanghai, China     *Sergeant/Assistant Detachment Commander*  8/97 - 8/02

## FELLOWSHIPS AND GRANTS

United States Air Force, Air Force Legislative Fellows Program, July 2019-April 2022.

Eisenhower Foundation Research Travel Grant 2019, Dwight D. Eisenhower Presidential Library, Abilene, KS.

Carl Albert Congressional Research Center Visiting Scholars Grant 2018, University of Oklahoma, Norman, OK.

Bordin-Gillette Research Fellowship 2018, University of Michigan Bentley Historical Library, Ann Arbor, MI.

Clark-Yudkin Research Fellowship 2013-14, United States Air Force Academy Library, Colorado Springs, CO.

## BOOK PUBLICATIONS AND BOOK CHAPTERS

*Vote Gun: How Gun Rights Became Politicized in the United States* (Columbia University Press, 2023).

Exhibit 1
Page 025

"The 'Reasonable Regulation' Right to Arms: The Gun Rights Second Amendment Before the Standard Model," *A Right to Bear Arms?: The Contested Role of History in Contemporary Debates on the Second Amendment*, Jennifer Tucker, Barton C. Hacker, and Margaret Vining eds. (Smithsonian Institution Press, 2019).

*Armed in America: A History of Gun Rights from Colonial Militias to Concealed Carry* (Prometheus Books, 2019) (paperback edition with new foreword).

*Armed in America: A History of Gun Rights from Colonial Militias to Concealed Carry* (Prometheus Books, 2018).

*United States Special Operations History, 1987-2017* (7th edition, USSOCOM History and Research Office, 2017) (contributor).

*Historicism, Originalism and the Constitution: The Use and Abuse of History in American Jurisprudence* (McFarland, 2014).

*The Second Amendment: The Intent and its Interpretation by the States and the Supreme Court* (McFarland, 2009).

*Irreconcilable Grievances: The Events that Shaped the Declaration of Independence* (Heritage Books, 2008).

## ARTICLES AND OTHER PRINT PUBLICATIONS

"The Fugazi Second Amendment: *Bruen*'s Test, History, and Tradition Problem and How to Fix It," 71 *Cleveland State Law Review* 623 (2023).

"Racist History and the Second Amendment: A Critical Commentary," 43 *Cardozo Law Review* 1343 (2022).

"The Invention of the Right to 'Peaceable Carry' in Modern Second Amendment Scholarship," 2021 *Illinois Law Review Online* 195 (2021).

"The Faces of the Second Amendment Outside the Home, Take Three: Critiquing the Circuit Courts Use of History-in-Law," 67 *Cleveland State Law Review* 197 (2019).

"The Second Amendment and the Basic Right to Transport Firearms for Lawful Purposes, 13 *Charleston Law Review* 125 (2018) (invited).

"The Forgotten Emblems of the World War II Air Commandos," 6 *Air Commando Journal*, Issue 3, 2018: 42-47.

"The Difficulties in Changing an Air Force Emblem," 6 *Air Commando Journal*, Issue 3, 2018: 48.

"Dissecting the Origins of Air-Centric Special Operations Theory," 81 *Journal of Military History*, Issue 3, July 2017: 803-28.

"The Call to Embrace Immigration Federalism in the United States," 30 *Journal of Immigration, Asylum, and Nationality Law* 353 (2016).

"The Faces of the Second Amendment Outside the Home, Take Two: How We Got Here and Why it Matters," 64 *Cleveland State Law Review* 373 (2016) (lead article).

"The Sudden Embrace of Executive Discretion in Immigration Law," 55 *Washburn Law Journal* 59 (2015) (invited).

"The Second Amendment in the Twenty-First Century: What Hath *Heller* Wrought?" 23 *William & Mary Bill of Rights Journal* 1143 (2015).

Exhibit 1
Page 026

"The 'Originalism is Not History' Disclaimer: A Historian's Rebuttal," 63 *Cleveland State Law Review Et Cetera* 1 (2015).

"Finding History: How Captain Cortez Enloe's Journal Sheds New Light on the History of the World War II Air Commandos and Operation THURSDAY," 3 *Air Commando Journal*, Issue 4, 2015: 11-17.

"Weighing the Constitutionality of State Immigration Verification Laws in the Wake of *Arizona v. United States*," 27 *Journal of Civil Rights & Economic Development* 441 (2014) (invited) (lead article).

"History in Law, Mythmaking, and Constitutional Legitimacy," 63 *Cleveland State Law Review* 23 (2014) (invited).

"The Statute of Northampton by the Late Eighteenth Century: Clarifying the Intellectual Legacy," 40 *Fordham Urban Law Journal City Square* 10 (2013).

"The Second Amendment and Militia Rights: Distinguishing Standard Model Legal Theory from the Historical Record," 40 *Fordham Urban Law Journal City Square* 1 (2013).

"Historical Reflections on the Beginnings of an Air Commando Theory," 2 *Air Commando Journal*, Issue 3, 2013: 9-13.

"The Second Amendment in Historiographical Crisis: Why the Supreme Court Must Reevaluate the Embarrassing 'Standard Model' Moving Forward," 39 *Fordham Urban Law Journal* 1727 (2012) (invited).

"Saving the Press Clause from Ruin: The Customary Origins of a 'Free Press' as Interface to the Present and Future," 2012 *Utah Law Review* 1691 (2012).

"Recentering Foreign Affairs Preemption in *Arizona v. United States*," 60 *Cleveland State Law Review* 133 (2012).

"The Faces of the Second Amendment Outside the Home: History Versus Ahistorical Standards of Review," 60 *Cleveland State Law Review* 1 (2012) (lead article).

"Decoding the Fourteenth Amendment's Citizenship Clause: Unlawful Immigrants, Allegiance, Personal Subjection, and the Law," 51 *Washburn Law Journal* 211 (2012) (invited and lead article).

"Scribble Scrabble, the Second Amendment, and Historical Guideposts: A Reply to Lawrence Rosenthal and Joyce Lee Malcolm," 105 *Northwestern University Law Review* 1821 (2011) (selected for print from Colloquy).

"Restoring 'Life, Liberty, and the Pursuit of Happiness' in Our Constitutional Jurisprudence: An Exercise in Legal History," 20 *William & Mary Bill of Rights Journal* 457 (2011).

"The 1792 National Militia Act, the Second Amendment, and Individual Militia Rights: A Legal and Historical Perspective," 9 *Georgetown Journal of Law & Public Policy* 323 (2011).

"The Second Amendment Standard of Review After *McDonald*: Historical Guideposts and the Missing Arguments in *McDonald v. City of Chicago*," 2 *Akron Law Journal of Constitutional Law & Policy* 7 (2011) (invited).

"The Constitutional Significance of a 'Well-Regulated' Militia Asserted and Proven with Commentary on the Future of Second Amendment Jurisprudence," 3 *Northeastern Law Journal* 1 (2011) (invited and lead article).

"Scribble Scrabble, the Second Amendment, and Historical Guideposts: A Reply to Lawrence Rosenthal and Joyce Lee Malcolm," 105 *Northwestern University Law Review Colloquy* 227 (2011).

"Representation Without Documentation?: Unlawfully Present Aliens, Apportionment, the Doctrine of Allegiance, and the Law," 25 *BYU Journal of Public Law* 35 (2011).

Exhibit 1
Page 027

"Originalism, John Marshall, and the Necessary and Proper Clause: Resurrecting the Jurisprudence of Alexander Addison," 58 *Cleveland State Law Review* 529 (2010) (lead article).

"The Plenary Power Doctrine and the Constitutionality of Ideological Exclusions: A Historical Perspective," 15 *Texas Review of Law & Politics* 61 (2010).

"The Right of Self-Preservation and Resistance: A True Legal and Historical Understanding of the Anglo-American Right to Arms," 2010 *Cardozo Law Review De Novo* 18 (2010) (invited).

"'Arms for Their Defence'?: A Historical, Legal and Textual Analysis of the English Right to Have Arms and Whether the Second Amendment Should Be Incorporated in *McDonald v. City of Chicago*," 57 *Cleveland State Law Review* 351 (2009) (lead article).

## NEWSPAPER AND ONLINE MEDIA PUBLICATIONS

"The Long Fight to Achieving Military Integration," *Air Force Historical Research Agency* (Feb. 2023).

"The History of the Air Force Song," *Air Force Historical Research Agency* (Sep. 2022).

"NRA Convention Protests Highlight US Gun Reform Divide," *Deutsche Welle*, May 30, 2022.

Q&A with Frank Wilkinson, "America's Long History of Gun Regulation," *Bloomberg News* and *Washington Post*, November 3, 2021.

"A Historian's Assessment of the Anti-Immigrant Narrative in *NYSRPA v. Bruen*," Second Thoughts: A Blog from the Center for Firearms Law at Duke University, August 4, 2021.

"Judging the Ninth Circuits Use of History in *Young v. Hawaii*," Second Thoughts: A Blog from the Center for Firearms Law at Duke University, April 16, 2021.

"The Black Panthers, NRA, Ronald Reagan, Armed Extremists, and the Second Amendment," *Second Thoughts: A Blog from the Center for Firearms Law at Duke University*, April 8, 2019.

"The 90th Anniversary of NRA's First Guiding Legislative Policies and the Implications for NYSRPA v. City of New York," *Second Thoughts: A Blog from the Center for Firearms Law at Duke University*, December 1, 2019.

"The Untold, Somewhat Embarrassing Story Behind the NRA's Laudatory Messages from Presidents Roosevelt, Truman, and Eisenhower," *Second Thoughts: A Blog from the Center for Firearms Law at Duke University*, September 23, 2019.

"The NRA is Blaming Journalists for Gun Violence," *Slate*, May 25, 2018.

"Why Does the NRA Almost Always Win?" *Buzzfeed News*, March 23, 2018.

"Conceal-Carrying the Day: We Debated Arming More People in the 1920s as a Solution to Gun Violence. The Idea Lost then, But It's Winning Now," *Slate*, March 6, 2018.

"Propaganda Machinery: How the NRA Pioneered the Right-Wing Art of Demonizing the Media," *Slate*, February 28, 2018.

"How the Gun Lobby Came to Be So Powerful," *Newsweek*, February 16, 2018.

Exhibit 1
Page 028

"Justice Thomas Needs a History Lesson in the History of the 2nd Amendment," *History News Network*, December 11, 2015.

"The Hollow Impact of *Moore v. Madigan* on Gun Control?" *Huffington Post*, December 12, 2012.

"The Tale of Two Second Amendments," *Huffington Post*, September 7, 2012.

"Placing the Declaration of Independence in Historical Context: Thoughts on Educating Current and Future Generations About America's Founding Document," *ConSource Blog*, August 4, 2012.

Encyclopedia Entries "Second Amendment" and "Gun Control," *Encyclopedia Britannica*, December 2010.

## PUBLISHED BOOK REVIEWS

"Governing Immigration Through Crime: A Reader," 28 *Journal of Immigration, Asylum, and Nationality Law* 409 (2014).

"The Latino Threat: Constructing Immigrants, Citizens, and the Nation," 28 *Journal of Immigration, Asylum, and Nationality Law* 193 (2014).

## PRESENTATIONS, PANELS, AND DEBATES

"5th Annual Firearms Research Works in Progress Workshop," Texas A&M University School of Law, June 7-8, 2023.

"Debate with Stephen P. Halbrook: What Rights Does the Second Amendment Guarantee Outside the Home," Federalist Society, November 17, 2021 (available online).

"Militias Challenge Gun Laws in Virginia: 'It's About Shooting Tyrants in the Face'," *CBS News*, November 12, 2020 (available online).

"NRA Origins and 1930s Politics," C-SPAN 3 American History TV, Washington, DC, January 3, 2020 (available online).

"A Right to Bear Arms? The Contested Role of History in Contemporary Debates on the Second Amendment," 2020 American Historical Association Meeting, January 3, 2020.

"Jim Bohannon Show: *Armed in America* Book Talk," *Westwood One Affiliates*, April 19, 2019 (available online).

"Law and Society Series: The Second Amendment 228 Years Later," Riley Institute and Charleston Law Review, Charleston, SC, February 2019.

"Book Talk: History of Gun Rights in America," National Constitution Center, Philadelphia, PA, February 2018 (available online).

"Guns in American Society," Wesleyan University, Middletown, CT, October 2017.

"Firearms and the Common Law Tradition," Aspen Institute, Washington, DC, September 2016.

"Fifty Years of 7th Special Operations Squadron History," Duxford Imperial War Museum, Cambridge, UK, May 2014.

"History and the Meaning of the Constitution," Cleveland-Marshall School of Law, Cleveland, Ohio, April 2014.

Exhibit 1
Page 029

"How Much Do We Really Know About Our Gun Laws?" *NPR WBEZ 91.5 Afternoon Shift*, Chicago, IL, January 14, 2013 (available online).

"The Second Amendment is First on Our Minds," *NPR WBEZ 91.5 Morning Shift*, Chicago, IL, January 14, 2013 (available online).

"The Second Amendment Steps Outside," *Huffington Post Live*, New York, NY, December 12, 2012 (available online).

"The Objective Dilemma Facing State Immigration Enforcement," Indiana University School of Law—Indianapolis Junior Faculty Workshop, Indianapolis, Indiana, March 2012.

"Does the Second Amendment Extend Outside the Home?" Cleveland-Marshall School of Law, Cleveland, Ohio, March 2012.

"Foreign Affairs Preemption and the Federal-State Spheres of Government," St. John's University School of Law Immigration Symposium, New York, New York, March 2012.

"The History and Evolving Conceptions of the Right to Bear Arms," Fordham School of Law Second Amendment Symposium, New York, New York, March 2012 (available online).

"State Policy Potpourri: Some Comparative Assessments," and "Curtailing Birthright Citizenship," Washburn School of Law Breaching Borders Symposium, Topeka, Kansas, October 2011 (available online).

"Law Enforcement Authority to Verify Immigration Status: *Estrada v. Rhode Island*," Law Enforcement and Public Safety Channel, Washington, District of Columbia, April 2010.

"*McDonald v. City of Chicago*: An Anglo-American Right to Arms?" Cleveland-Marshall School of Law, Cleveland, Ohio, April 2010.

"Debate with Clark M. Neilly on *McDonald v. City of Chicago*," Akron University School of Law Federalist Society, Akron, Ohio, April 2010.

"Keynote Speaker for 'Chamber to Chambers: Second Amendment Symposium'," and "Panelist for 'Who's Right to Bear Arms?'" Northeastern University School of Law, Boston, Massachusetts, March 2010.

"Bearing Arms in the Ohio Constitution," Cleveland-Marshall School of Law, Cleveland, Ohio, April 2008.

"Washington's Decision: George Washington's Decision to Reaccept Black Enlistments," Trenton Chamber of Commerce Patriot Week, Trenton, New Jersey, December 2006.

## AWARDS

Joint Civilian Service Commendation Award, July 2019.

Allan S. Major Award for Air Force History Program Excellence, July 2016 (Air Force Level Award).

24th Special Operations Wing Supervisory Civilian of the Quarter, Civilian Category IV, July 2015.

Allan S. Major Award for Air Force History Program Excellence, July 2014 (Air Force Level Award).

352d Special Operations Group Supervisory Civilian of the Quarter, Civilian Category II, March 2013.

352d Special Operations Group Supervisory Civilian of the Quarter, Civilian Category II, March 2012.

Exhibit 1
Page 030

Air Force Special Operations Command Excellence in Periodic History Award, February 2012.

Judge John R. Brown Award for Excellence in Legal Writing, August 2008 (National Award).

Certificate of Commendation, Commanding Officer, Marine Security Guard Battalion, May 2002.

Meritorious Mast, United States Marine Corps, April 2000.

Meritorious Mast, United States Marine Corps, August 1999.

Navy and Marine Corps Achievement Medal, United States Marine Corps, July 1999.

Certificate of Commendation, Commanding Officer, Marine Aviation Support Group, April 1998.

Exhibit 1
Page 031

# Exhibit 2

Exhibit 2
Page 032

8

WACO DAILY NEWS JULY 12, 1891.

# Unprecedented Bargains.

:IN:

# Ladies Muslin Underwear.



Corner Eighth and Austin Streets.

# WACO FURNITURE CO.
UNDERTAKING
:AND:
EMBALMING

## COFFINS, CASKETS, SHROUDS, ETC

Exhibit 2
Page 033

# Exhibit 3

Exhibit 3
Page 034

Case 8:23-cv-01798-CJC-ADS    Document 20-2    Filed 11/03/23    Page 35 of 157    Page ID #:271

The Ozark County News (Gainesville, Missouri) · Thu, Jun 4, 1896 · Page 1

https://www.newspapers.com/image/492594128

Printed on Jun 25, 2023





Copyright © 2023 Newspapers.com. All Rights Reserved.

Exhibit 3
Page 035

# Exhibit 4

Exhibit 4
Page 036

Newspapers
by ancestry.com

https://www.newspapers.com/image/208831791

Shelby County Herald (Shelbyville, Missouri) · Wed, Jul 29, 1891 · Page 4

Printed on Jun 25, 2023



T. P. MANUEL, Chairman Board of Trustees.
I. N. WATSON, Village Clerk.

## ORDINANCE NO. 23.

AN ORDINANCE CONCERNING THE CARRYING OF DEADLY WEAPONS.

Be it ordained by the Board of Trustees of the inhabitants of the Village of Leonard, Mo., as follows:

SECTION 1. If any person shall carry concealed upon or about his person any deadly or dangerous weapon, or shall go into any church or place where people have assembled for religious worship, or into any school-room or place where people are assembled for educational, literary or social purposes, or to any election precinct on any election day, or into any court room during the sitting of court, or into any other public assemblage of persons met for any lawful purpose other than for militia drill or meetings called under the militia law of this state, having upon or about his person any kind of fire-arms, bowie-knife, dirk, dagger, slung-shot or other deadly weapon, or shall in the presence of one or more persons, exhibit any such weapons in a rude, angry or threatening manner, or shall have or carry any such weapon upon or about his person when intoxicated or under the influence of intoxicating drinks, or shall directly or indirectly sell or deliver, loan or barter to any minor any such weapon, without the consent of the parent or guardian of such minor, he shall upon conviction be punished by a fine of not less than fifty nor more than two hundred dollars.

SECTION 2. This ordinance shall be in force from and after its passage and publication.

Passed and approved July 6th, 1891.

T. P. MANUEL, Chairman Board of Trustees.
I. N. WATSON, Village Clerk.

## TRUSTEE'S SALE

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers.com POWERED BY

Exhibit 4
Page 037

# Exhibit 5

Exhibit 5
Page 038

Case 8:23-cv-01798-CJC-ADS   Document 20-2   Filed 11/03/23   Page 39 of 157   Page ID #:275

Newspapers
by ancestry
https://www.newspapers.com/image/953638676

The Marceline Mirror (Marceline, Missouri) · Fri, Oct 28, 1892 · Page 8

Printed on Jun 25, 2023

## ORDINANCE NO. 9.

1. Penalty for violations of this ordinance.
2. Assault and battery.
3. Failing to assist in making arrests, etc.
4. Resisting arrest, etc.
5. Permitting games of chance.
6. Betting.
7. Disturbing religious meetings, etc.
8. Carrying concealed weapons into assemblies, etc.
9. Section 8 not to apply to police, etc.
10. Conflicting ordinances repealed.
11. Ordinance to take effect, when.

### In Relation to Miscellaneous Offenses and Their Penalties.

Be it ordained by the Board of Aldermen of the City of Marceline, as follows:

Section 1. It shall be unlawful for any person to commit any of the acts hereinafter mentioned or enumerated within the corporate limits of the City of Marceline, and any person so offending shall be deemed guilty of a misdemeanor against the ordinances of the city, and for each offense shall be punished as hereinafter provided.

Sec. 2. Every person who shall commit an assault and battery or a common assault upon another, or indecently expose his person, shall, upon conviction, be punished by a fine of not less than one, nor more than one hundred, dollars.

Sec. 3. Every person who, without reasonable cause, shall fail to assist in making an arrest or committing any person to the city jail when required to do so by any police officer of the city in the performance of his official duty, shall be punished by a fine of not less than five, nor more than twenty, dollars, for every such offense.

Sec. 4. Every person who shall resist or attempt to hinder any officer of the city in the performance of his official duty, shall be punished by a fine of not less than ten, nor more than one hundred, dollars.

Sec. 5. Every person who shall suffer or permit any game of chance, upon the result of which any money or property or valuable thing whatever is bet, to be played in any building or room or upon any premises of which such person is the owner or has possession or control, shall be punished by a fine of not less than ten, nor more than one hundred, dollars.

Sec. 6. Every person who shall bet any money or property or valuable thing whatever upon the result of any game of chance shall be punished by a fine of not less than five, nor more than twenty-five, dollars.

Sec. 7. Every person who shall willfully or contemptuously disquiet or disturb any congregation or assembly of persons met for religious worship, or for social or literary purposes, by making a noise or by rude or indecent behavior, or profane discourse within the place of assembly, or so near the same as to interrupt or disturb the order or solemnity thereof, or who shall willfully menace, threaten or assault any person there being, shall be punished by a fine of not less than one, nor more than one hundred, dollars.

Sec. 8. Every person who shall carry concealed upon or about his person any deadly or dangerous weapon, or shall go into any church or place where people have assembled for religious worship, or into any school room or place where people have assembled for educational, literary or social purposes, or to any election precinct on any election day, or into any court room during the sitting of court, or into any other public assemblage of persons met for any lawful purpose other than for militia drill or meetings called under the militia law of this state, having upon or about his person any kind of fire arms, bowie-knife, dagger, slung-shot, or other deadly weapon, or shall in the presence of one or more persons exhibit any such weapon in a rude or threatening manner, or shall have or carry any such weapon upon or about his person when intoxicated or under the influence of intoxicating drink, or shall directly or indirectly sell or deliver, loan or barter, to any minor any such weapon without the consent of the parent or guardian of such minor, shall, upon conviction, be punished by a fine of not less than fifty, nor more than one hundred, dollars.

Sec. 9. The next preceding section shall not apply to any police officer, nor to any officer or person whose duty it is to execute process or warrants, or to suppress breaches of the peace or make arrests, nor to persons moving or traveling peaceably through this state, and it shall be a good defense to the charge of carrying such weapon if the defendant shall show that he has been threatened with great bodily harm, or has good reason to carry the same in the necessary defense of his person, home or property.

Sec. 10. All ordinances and parts of ordinances in conflict with this ordinance are hereby repealed.

Sec. 11. This ordinance shall take effect and be in force from and after its passage.

Read three times and passed and approved this 12th day of March, 1892.                    W. A. Cater, Mayor.
  [SEAL.]                              Aaron Roots, President of Board.
Attest: J. Hemmings, City Clerk.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers POWERED BY

Exhibit 5
Page 039

# Exhibit 6

Exhibit 6
Page 040

The Ridgeway Journal (Ridgeway, Missouri) · Thu, Apr 6, 1893 · Page 4

https://www.newspapers.com/image/858847805

Printed on Jun 25, 2023

## TOWN ORDINANCE NO. XXVIII.

### Harness, Saddles, Bridles, Halters, Robes, Pads,

Examine and Price our Pocket and Table Cutlery and Harness and Harness Goods and most complete assortment of Sweat Pads ever shown in the place, which will be the best Sweat Pad made, if not we will refund the money. We have the largest Saddles ever brought to the town. Some fine Saddles will arrive in a few days. We car load of Nails and Baker Barb Wire that will be sold at astonishingly low prices.

## NEW GOODS.

## S. H. Coleman w about them.   Watch.

## SEE NEXT ISSU

Copyright © 2023 Newspapers.com. All Rights Reserved.

POWERED BY Newspapers.com™

Exhibit 6
Page 041

Case 8:23-cv-01798-CJC-ADS   Document 20-2   Filed 11/03/23   Page 42 of 157   Page ID #:278

deadly or dangerous weapon, or shall go into any church or place where people have assembled for religious worship, or into any school room or place where people have assembled for educational, literary or social purposes, or to any election precinct on any election day in said village, or into any court room during the sitting of court, or into any public assemblage of persons met for any lawful purpose, other than military drill or meetings called under the military law of the state, having on or about his person any kind of fire arms, bowie knife, dirk, dagger, slung shot or other deadly weapon, or shall, in the presence of one or more persons, exhibit any such weapon in a rude, angry or threatening manner, or shall have or carry any such weapon on or about his person when intoxicated or under the influence of intoxicating drinks, or shall directly or indirectly sell or deliver, loan or barter to any minor any such weapon, without the consent of his parent or guardian, he shall, upon conviction, be adjudged guilty of a misdemeanor, and fined in a sum not less than twenty-five nor more than one hundred dollars. Provided that this section shall not apply to officers or persons whose duty it is to execute warrants or suppress breaches of the peace, nor to persons traveling peaceably through said village, not a resident of said county.

SEC. 13. Every person who shall play at any game of any kind whatsoever for money or property, with dice, cards or any other devise which may be used in playing any game of chance, or in which chance is an element, or shall bet or wager on the hands, or cards or sides of such as do play in said village, shall be deemed guilty of a misdemeanor and punished by a fine of not less than ten nor more than one hundred dollars.

SEC. 14. Every person who shall either labor himself or compel or permit his apprentice or

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers
POWERED BY

Exhibit 6
Page 042

# Exhibit 7

Exhibit 7
Page 043

Newspapers
by ancestry
https://www.newspapers.com/image/953556139

Rocheport Commercial (Rocheport, Missouri) · Fri, Sep 20, 1895 · Page 8

Printed on Jun 25, 2023

# An Ordinance.

## MISDEMEANORS.

Be it enacted by the Board of Trustees of the Town of Rocheport as follows:

SECTION 1. DISTURBING THE PEACE. Every person who shall willfully disturb the peace of any other person or persons, by loud and unusual noise, loud and offensive or indecent conversation, or by using any profane or offensive language calculated to provoke a disturbance of the peace, or by threatening, quarreling, challenging, or fighting, shall be deemed guilty of a misdemeanor and, upon conviction, fined not less than five dollars.

Sec. 2. CONCEALED WEAPONS. If any person shall carry concealed upon or about his person any deadly or dangerous weapon, or shall go into any court room during the sitting of the court, or into any public assemblage of persons met for a lawful purpose, having upon or about his person any kind of fire arms, bowie knife, dirk, dagger, slunkshot, or other deadly weapon, or shall, in the presence of one or more persons, exhibit any such weapon in a rude, angry and threatening manner, or shall have or carry any such weapon upon or

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers
POWERED BY

Exhibit 7
Page 044

Newspapers
by ancestry
https://www.newspapers.com/image/953556139

Rocheport Commercial (Rocheport, Missouri) · Fri, Sep 20, 1895 · Page 8

Printed on Jun 25, 2023

about his person when intoxicated or under the influence of intoxicating drinks; or shall, directly or indirectly, sell or deliver, loan or barter, to any minor any such weapon without the consent of the parent or guardian of such minor, he shall be deemed guilty of a misdemeanor and punished by a fine not less than ten dollars nor more than twenty-five dollars.

Sec. 3. BETTING PROHIBITED. Any person who shall play at any game for money or property with cards, dice, or any other device, which may be adapted to or used in playing any game of chance, or shall, bet or wager on the hands, or cards, or sides of such as do play as aforesaid, shall be deemed guilty of a misdemeanor and, on conviction, be fined not less than five dollars.

Sec. 4. RECKLESS RIDING AND DRIVING. If any person shall unnecessarily ride or drive any horse or other animal upon or through any street or alley at a greater speed than a moderate gait, or shall so negligently ride or drive any such animal as to cause such animal, or the vehicle thereto attached, to come in contact with, or strike and injury any person or property; or shall, leave any such animal standing in any street, ally, or open lot, without being fastened or so guarded as to prevent its running away, or shall turn any such animal loose upon any street or alley, he shall be deemed guilty of a misdemeanor and, on conviction, be fined not less than five dollars for every such offense.

Sec. 5. OBSTRUCTING PASSAGE ON STREETS. Whoever shall, upon or near a street or alley, fly a kite or engage in any sport or exercise likely to scare horses, injure persons passing upon such street, or embarrass the passage of vehicle, shall be deemed guilty of a misdemeanor, and, upon conviction, be fined not less than one dollar nor more than ten dollars for every such offense.

Sec. 6. HITCH RACKS  Any person who shall hitch any horse, mule, or other animal to any tree, post, block, fence, or other thing on Central street, between Third and Water streets, shall be deemed guilty of a misdemeanor, and fined not less than one dollar for every such offense. Provided, that this section shall not apply to doctors, nor to merchants, or butchers running a delivery wagon in connection with their business, and who shall be allowed to hitch such animals, so used in their business, to a post firmly set in the ground, at the edge of the sidewalk, immediately in front of their respective business houses. It shall be the duty of the Marshal to immediately remove or cause to be removed, all posts, rings, or other contrivances heretofore used for hitching purposes, except such as are herein provided for.

Sec. 7. PRISONERS REFUSING TO WORK. If any person adjudged to labor shall fail or refuse to obey any reasonable requirement of the Marshal, or to labor as directed, he shall be deemed guilty of a misdemeanor, and fined not less than ten dollars, for every such offense, to be enforced as other fines.

Sec. 8. MARSHAL POSSE. If any person, over the age of eighteen years, who, when called upon by the Marshal or assistant Marshal, to act as a posse to aid him, in arresting and taking prisoner any offender, shall refuse or neglect to do so, he shall be guilty of a misdemeanor, and fined three dollars.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers
POWERED BY

Exhibit 7
Page 045

# Exhibit 8

Exhibit 8
Page 046

Newspapers
by ancestry
https://www.newspapers.com/image/694571590

Johnson County Star (Warrensburg, Missouri) · Sat, Jun 7, 1890 · Page 4

Printed on Jun 25, 2023

Secretary.

**Concealed or Deadly Weapons.**

The following ordinance in relation to the carrying of concealed or deadly weapons was passed by the council at the regular meeting Tuesday night:

Be it ordained by the Council of the city of Warrensburg as follows:

Sec. 1. If any person shall within this city carry concealed upon or about his person any deadly or dangerous weapon or shall go into any church or place where people have assembled for religious worship, or into any school room, or place where people are assembled for educational, literary or social purposes, or to any election precinct on any election day, or into any Court room during the sitting of court or into any other public assemblage of persons met for any lawful purpose than for Militia drill or meetings called under the militia law of this state, having upon or about his person any kind of fire arms, bowie knife, dirk, dagger, slung shot or other deadly weapons, or shall in the presence of one or more persons, exhibit any such weapons in a rude, angry, or threatening manner or shall have or carry any such weapon upon or about his person when intoxicated or under the influence of intoxicating drinks or shall directly or indirectly sell or deliver, loan or barter, to any minor without the consent of the parents or guardian of such minor he shall upon conviction be punished by a fine of not less than fifty or more than two hundred dollars or by imprisonment not less than five days or more than six months or by both such fine and imprisonment.

Sec. 2. This ordinance shall take effect and be in force from and after its passage and approval by the Mayor.

Passed June 3, 1890.

Approved June 5, 1890.

A. H. Gilkeson Dry Goods Co. are

Copyright © 2023 Newspapers.com. All Rights Reserved.

POWERED BY
Newspapers.com

Exhibit 8
Page 047

# Exhibit 9

Exhibit 9
Page 048

Case 8:23-cv-01798-CJC-ADS   Document 20-2   Filed 11/03/23   Page 49 of 157   Page ID #:285

Osceola Advance (Osceola, Missouri) · Thu, Jul 7, 1887 · Page 4

https://www.newspapers.com/image/863087542

Printed on Jun 25, 2023



Copyright © 2023 Newspapers.com. All Rights Reserved.



Exhibit 9
Page 049

Osceola Advance (Osceola, Missouri) · Thu, Jul 7, 1887 · Page 4

https://www.newspapers.com/image/863087542

Printed on Jun 25, 2023

Copyright © 2023 Newspapers.com. All Rights Reserved.

Exhibit 9
Page 050

# Exhibit 10

Exhibit 10
Page 051

Newspapers
by ancestry
https://www.newspapers.com/image/859684459

The Craig Weekly Gazette (Craig, Missouri) · Wed, Oct 13, 1880 · Page 4

Printed on Jun 25, 2023

# City Ordinances of Craig, Mo.

Copyright © 2023 Newspapers.com. All Rights Reserved.

POWERED BY
Newspapers™

Exhibit 10
Page 052

The Craig Weekly Gazette (Craig, Missouri) · Wed, Oct 13, 1880 · Page 4

https://www.newspapers.com/image/859684459

Printed on Jun 25, 2023

ORDINANCE No. 8—Carrying Concealed Weapons.

Be it Ordained by the Board of Aldermen of the city of Craig, Missouri, as follows :

Any person who shall within the corporate limits of said city of Craig, carry or have upon his person, any concealed weapon or weapons, shall be adjudged guilty of a misdemeanor, and shall upon conviction be fined in any sum not less than one dollar, nor more than ten dollars.

C. H. Thayer, Mayor.

P. B. Cook, President.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Exhibit 10
Page 053

# Exhibit 11

Exhibit 11
Page 054

Case 8:23-cv-01798-CJC-ADS   Document 20-2   Filed 11/03/23   Page 55 of 157   Page ID #:291

https://www.newspapers.com/image/491577103

Printed on Jun 25, 2023



Copyright © 2023 Newspapers.com. All Rights Reserved.

Exhibit 11
Page 055

Approved May 25, 1882.
Attest: Jas. A. Green, Cir'n.
M. H. Helton, Clerk.

## CHAPTER VII.

### License.

*Be it ordained by the Board of Trustees of the Town of Cuba:*

Sec. 1. There shall be levied on all dram shops duly licensed by the county court of Crawford county, Missouri, within the corporate limits of this town, or within one-half mile of said limits, a tax of fifty dollars per annum to be collected semi-annually...

## CHAPTER VIII.

### Misdemeanors.

*Be it ordained by the Board of Trustees of the Town of Cuba:*

Continued on Eighth page.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers™ POWERED BY .com

Exhibit 11
Page 056

Crawford Mirror (Steelville, Missouri) · Thu, Jul 27, 1882 · Page 8

https://www.newspapers.com/image/491577327

Printed on Jun 25, 2023

## Cuba Town Ordinance.

*[Continued from first page.]*

SEC. 17. Whoever shall in the town of Cuba either directly or indirectly expose to sale or sell intoxicating liquors or keep the doors of his house open for the purpose of selling or exposing liquor for sale on Sunday shall be deemed guilty of a misdemeanor and upen conviction thereof be fined not less than five nor more than one hundred dollars.

SEC. 18. Every person being the owner of a slut who shall permit the same to run at large while in heat or proud shall be deemed guilty of a misdemeanor and upon conviction be fined not less than one nor more than five dollars.

SEC. 19. This ordinance shall be in force and effect from and after its approval.

Approved May 24, 1882.

Attest: JAS. A. GREEN, Chm'n.

M. H. HELLYER, Clerk.

CHAPTER IV

Copyright © 2023 Newspapers.com. All Rights Reserved.

Exhibit 11

Page 057

# Exhibit 12

Exhibit 12
Page 058

https://www.newspapers.com/image/862701906

Printed on Jun 25, 2023



Copyright © 2023 Newspapers.com. All Rights Reserved.



Exhibit 12
Page 059

Case 8:23-cv-01798-CJC-ADS   Document 20-2   Filed 11/03/23   Page 60 of 157   Page ID
#:296

Newspapers
by ancestry
https://www.newspapers.com/image/862701906

The Granby Miner (Granby, Missouri) · Sat, Nov 1, 1873 · Page 2

Printed on Jun 25, 2023

W. S. MESPLAY, Clerk.

## NO. 8.

AN ORDINANCE concerning the carry-
ing of weapons.

Be it ordained by the Board of Trustees
of the Town of Granby, as follows :

Sec. 1. That any person within the cor-
porate limits of the town of Granby who
shall be found carrying, either openly or
concealed, any pistol, metalic knuckles,
slingshot, large knife, or any other offensive
weapon (except an official in the lawful
discharge of his duty, or a person having
such weapon for the purpose of some im-
mediate lawful purpose) shall be fined not
less than five nor more than fifteen dol-
lars.

Passed and adopted October 30, 1873.

M. I. WILLIAMS, Chm'n.

W. S. MESPLAY, Clerk.

Copyright © 2023 Newspapers.com. All Rights Reserved.

POWERED BY
Newspapers.com™

Exhibit 12
Page 060

# Exhibit 13

Exhibit 13
Page 061

Newspapers
by ancestry

The Stockton Review and Rooks County Record (Stockton, Kansas) · Fri, Jul 1, 1887 · Page 1

https://www.newspapers.com/image/379709602

Downloaded on Oct 11, 2022



Copyright © 2022 Newspapers.com. All Rights Reserved.


POWERED BY
Newspapers.com ™

Exhibit 13
Page 062

Case 8:23-cv-01798-CJC-ADS  Document 20-2  Filed 11/03/23  Page 63 of 157  Page ID #:299

Newspapers
by ancestry

https://www.newspapers.com/image/379709602

The Stockton Review and Rooks County Record (Stockton, Kansas) · Fri, Jul 1, 1887 · Page 1

Downloaded on Oct 11, 2022

[SEAL] F. A. CHIPMAN, C. W. SMITH,
City Clerk.          Mayor.

Published July 1, 1887.

## ORDINANCE NO. 76.

### AN ORDINANCE PROHIBITING CARRYING DEADLY WEAPONS.

*Be it ordained by the Mayor and Councilmen of the City of Stockton, Kansas.*

SEC. 1.—If any person shall carry upon or about his person any deadly or dangerous weapons, or shall go into any church or place where people have assembled for public worship, or into any school room or place where people have assembled for educational, literary or social purposes, or to any election on any election day, or into any court room during the sitting of court, or into any other public assemblage of persons not met for any unlawful purpose, or shall go upon the public streets or public places of the city having upon or about his person any kind of fire arms, bowie knife, dirk, dagger, sling shot or other deadly weapon, or shall in any of the places above named exhibit such weapon in a rude, angry or threatening manner, or shall directly or indirectly, sell or deliver, loan or barter to any minor, any such weapon without the consent of the parent or guardian of said minor, he shall upon conviction be punished by a fine of not less than ten nor more than fifty dollars. Provided, this ordinance shall not apply to peace officers of the city or state.

SEC 2.—This ordinance shall take effect from and after its publication in The Rooks County RECORD.

Approved, C. W. SMITH, Mayor.
Attest, F. A. CHIPMAN,
City Clerk.

Copyright © 2022 Newspapers.com. All Rights Reserved.

Newspapers
POWERED BY

Exhibit 13
Page 063

# Exhibit 14

Exhibit 14
Page 064

Case 8:23-cv-01798-CJC-ADS   Document 20-2   Filed 11/03/23   Page 65 of 157   Page ID #:301

Newspapers
by ancestry
https://www.newspapers.com/image/384017570

The Abilene Weekly Chronicle (Abilene, Kansas) · Thu, May 12, 1870 · Page 1

Printed on Jun 25, 2023



AN ORDINANCE

## Relating to the Carrying of Fire Arms and other Deadly Weapons.

*Be it ordained by the Trustees of the town of Abilene,*

Sec. 1. That any person who shall carry, within the limits of the town of Abilene, or commons, a pistol, revolver, gun, musket, dirk, bowie-knife, or other dangerous weapon upon his or their person or persons, either openly or concealed, except to bring the same and forthwith deposit it or them at their house, boarding house, store room or residence, shall be fined in a sum not less than ten dollars nor more than fifty dollars; and it shall be the duty of any town constable, or policeman of this town, to arrest and disarm any person violating this ordinance, and to deposit the arms so taken with the captain of the town police, to be by him kept until he is, by the magistrate taking cognizance of the offense of carrying arms as aforesaid, authorized to deliver the same to the person or persons from whom the same shall have been taken.

Sec. 2. Any and every person who shall be in violation of this ordinance, within the town of Abilene, or commons, and who shall refuse to deposit his or their arms with the constable or policeman as aforesaid, or shall resist any officer who may attempt to disarm him or them according to the provisions of section one of this ordinance, shall be imprisoned in the common gaol of the town not less than twenty-four hours nor more than ten days, and fined not less than $10 nor more than one hundred dollars: Provided, that the provisions of this ordinance shall not apply to the constable or any officer of the town of Abilene, while in the discharge of their duties as such constable or policeman.

Sec. 3. That any person who shall intentionally discharge any pistol, revolver or gun, within the town of Abilene, in any street, alley, highway, lot, house or other place where the life or limb of any person could be endangered, shall be punished by a fine not less than ten dollars nor more than one hundred dollars.

Sec. 4. This ordinance shall take effect and be in force from the 20th of May 1870.

T. C. HENRY, Chairman.

Attest: G. L. BRINKMAN, Clerk.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers
POWERED BY
.com

Exhibit 14
Page 065

# Exhibit 15

Exhibit 15
Page 066

Newspapers
by ancestry

https://www.newspapers.com/image/53607957



Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers
POWERED BY

Exhibit 15

Page 067

# Exhibit 16

Exhibit 16
Page 068

Newspapers
by ancestry

https://www.newspapers.com/image/418858064

The Beloit Gazette (Beloit, Kansas) · Thu, Sep 19, 1872 · Page 4

Printed on Jun 25, 2023

## Ordinance No. 5.

An ordinance in relation to the carrying of fire-arms or other weapons.

*Be it ordained by the Mayor and Councilmen of the City of Beloit.*

Section 1. That any person who shall be found within the corporate limits of this city with any revolver, pistol, gun, sword, dagger, dirk or any other dangerous or deadly weapon concealed or otherwise shall be deemed guilty of a misdemeanor; Provided, that this act shall not be construed in such a manner as to prevent any person or persons from carrying a gun or rifle through the street for the known and avowed purpose of hunting in the country.

Approved Sep. 9th, 1872.

T. F. HERSEY,
Mayor.

L. J. BEST,
City Clerk.

Copyright © 2023 Newspapers.com. All Rights Reserved.

POWERED BY
Newspapers.com™

Exhibit 16
Page 069

# Exhibit 17

Exhibit 17
Page 070

Newspapers by Ancestry

https://www.newspapers.com/image/365795786

The Caldwell Advance (Caldwell, Kansas) · Thu, May 4, 1882 · Page 2

Printed on Jun 25, 2023



Copyright © 2023 Newspapers.com. All Rights Reserved.



Exhibit 17
Page 071

The Caldwell Advance (Caldwell, Kansas) · Thu, May 4, 1882 · Page 2

https://www.newspapers.com/image/365795786

Printed on Jun 25, 2023

one hundred dollars.

Sec. 10. Any person carrying any deadly or dangerous weapon, such as firearms, slung shot, sheath or dirk knife or any other weapon which when used is liable to produce death or great bodily harm, unconcealed, within the corporate limits of the city, shall upon conviction, be fined in a sum not less than ten nor more than one hundred dollars.

Sec. 11. Any person or persons carrying any deadly or dangerous weapons concealed about their person, such as firearms, slung shot, sheath or dirk knife, brass knuckles or any other weapon, which when used are liable to produce death or great bodily harm and injury, shall, upon conviction be fined in a sum not less than fifteen nor more than one hundred dollars for each and every offense.

Sec. 12. Any person who shall within the limits of the city, discharge or shoot off any gun, pistol, or other firearms, shall upon conviction thereof, be fined not less than one nor more than twenty-five dollars.

Sec. 13. Any person who shall

Copyright © 2023 Newspapers.com. All Rights Reserved.

Exhibit 17

Page 073

# Exhibit 18

Exhibit 18
Page 074

Border Ruffian (Coolidge, Kansas) · Sat, May 1, 1886 · Page 1

Newspapers by ancestry
https://www.newspapers.com/image/274137116
Printed on Jun 25, 2023

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers POWERED BY .com™

Exhibit 18
Page 075

Border Ruffian (Coolidge, Kansas) · Sat, May 1, 1886 · Page 1

https://www.newspapers.com/image/274137116

Printed on Jun 25, 2023

violating this section shall be deemed guilty of a misdemeanor.

### CONCEALED DEADLY WEAPON.

Sec. 8. Any person or persons, other than the duly appointed and commissioned officers of this city, or officers of this county or State, carrying concealed deadly weapons, such as pistols, revolvers, sling-shots, dirks or bowie-knives, within the corporate limits of the city, shall, upon conviction, be deemed guilty of a misdemeanor.

### OPEN LEWDNESS AND DISORDERLY HOUSES.

Sec. 9. If any person shall be guilty of open lewdness or other notorious act of public indecency tending to debauch the public morals, or shall maintain or keep a lewd house or place of fornication, or shall keep a common, ill-governed and disorderly house, to the encouragement of idleness, gaming, drinking, fornication or other misbehavior, or who shall keep and maintain a common bawdy house, or house of ill-fame, shall, on conviction, be deemed guilty of a misdemeanor.

### DRUNKENNESS.

Sec. 10. If any person shall be drunk in any highway, street, or in any public place or building, or if any person shall be drunk in his own house, or in any private building or place, disturbing his family or others, he shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not exceeding twenty-five dollars, or by imprisonment in the calaboose or county jail for a period not exceeding thirty days. Prosecutions under this section must be commenced within thirty days after the said misdemeanor is alleged to have been committed.

### WEAPONS TO MINORS.

Sec. 11. Any person who shall sell trade, give, loan or otherwise furnish any pistol, revolver or toy pistol, by which cartridges or caps may be exploded, or any dirk, bowie-knife, brass knuckles, sling-shot, or other dangerous weapon to any minor, or to any person of notoriously unsound mind, shall be deemed guilty of a misdemeanor, and shall, upon conviction before the Police magistrate, or any Justice of the Peace acting in such capacity, be fined not less than five nor more than one hundred dollars.

### POSSESSION OF A MINOR

Sec. 12. Any minor who shall have in

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers.com

Exhibit 18
Page 076

# Exhibit 19

Exhibit 19
Page 077

Newspapers
by ancestry
https://www.newspapers.com/image/367253373

The Elk City Enterprise (Elk City, Kansas) · Fri, Mar 11, 1898 · Page 2

Printed on Jun 25, 2023



[Published March 11th, 1898.]

## Ordinance No. 165.

**An Ordinance Prohibiting the Use and the Carrying of Fire Arms and Other Deadly Weapons.**

*Be it Ordained by the Mayor and Councilmen of the City of Elk City, Montgomery County, Kansas.*

SECTION 1.  That any person within the corporate limits of said city of Elk City, who shall draw any pistol or other weapon in a hostile manner, or shall make any demonstration or threat at using such weapon on or against any person, or any person who shall carry or have on his or her person in a concealed manner, or otherwise any pistol, dirk, bowie-knife, revolver, slung-shot, billy, brass, lead or iron knuckles, or any deadly weapon of any kind within the corporate limits of said city, shall be deemed guilty of a misdemeanor and on conviction thereof shall be fined in any sum of not less than five dollars nor more than one hundred dollars.  Provided, that this ordinance shall not be so construed as to prohibit officers of the law from being armed.

SEC. 2.  Be it further ordained that all ordinances or parts of ordinances in any manner conflicting with this ordinance, be, and the same are, hereby repealed.

SEC. 3.  Be it further ordained that this ordinance shall be in full force and effect on and after its publication in the Elk City ENTERPRISE, the duly designated official paper of said city published and of general circulation therein.  Passed and approved this 7th day of March, A. D. 1898.

[SEAL.]        J. A. BROWN, Mayor.
Attest: JOHN A. LOGAN, City Clerk.

STATE OF KANSAS,
   MONTGOMERY COUNTY,  } ss
      CITY OF ELK CITY.

I, J. A. Logan, City Clerk of Elk City, do hereby certify that the above and foregoing ordinance was read and considered by sections at a public meeting of the City Council of said city, held on the seventh day of March, A. D. 1898.  And was duly passed section by section and then as a whole by said Council.  In witness whereof I have hereunto subscribed my name and caused the seal of said city to be affixed thereto.

[Seal.]        J. A. LOGAN, City Clerk.

Copyright © 2023 Newspapers.com. All Rights Reserved.

POWERED BY
Newspapers.com

Exhibit 19
Page 078

# Exhibit 20

Exhibit 20
Page 079

Newspapers
by ancestry
https://www.newspapers.com/image/419606234

The Harper Daily Sentinel (Harper, Kansas) · Tue, Aug 23, 1887 · Page 2

Printed on Jun 25, 2023
Copyright © 2023 Newspapers.com. All Rights Reserved.


Exhibit 20
Page 080

The Harper Daily Sentinel (Harper, Kansas) · Tue, Aug 23, 1887 · Page 2

Newspapers
by ancestry
https://www.newspapers.com/image/419606234

Printed on Jun 25, 2023

son therewith.

SEC. 11.   That it shall be unlawful for any person to be found drunk, or in a state of intoxication in any street, alley, public parks or other public place within the incorporate limits of the city of Harper.

SEC. 12.   That it shall be unlawful for any person to carry any deadly or dangerous weapon, such as fire arms, slung shots, sheath or dirk knife, billies, brass or metal knuckles or any other dangerous implement, which, when used, are liable to produce death or great bodily harm, within the incorporate limits of said city.

SEC. 13.   That it shall be unlawful for

Copyright © 2023 Newspapers.com. All Rights Reserved.

POWERED BY
Newspapers.com ™

Exhibit 20
Page 081

# Exhibit 21

Exhibit 21
Page 082

Newspapers™
by ancestry
https://www.newspapers.com/image/419099948

The Citizen (Howard, Kansas) · Wed, May 22, 1889 · Page 3

Printed on Jun 25, 2023



[Published May 22, 1889.]

## ORDINANCE NO. 72

An ordinance to prevent carrying concealed weapons and the discharge of firearms.

*Be it ordained by the Mayor and Councilmen of the City of Howard:*

Section 1.   Any person who shall, within the corporate limits of the city of Howard have or carry concealed or partially concealed upon his or her person any revolver, pistol bowieknife dagger, slungshot or other deadly weapon, shall, on conviction thereof, be fined in any sum not less than one dollar nor more than fifty dollars and costs. Provided, this section shall not apply to peace-officers of the city or state.   The carrying of a weapon in a holster exposed to full view shall not be deemed a concealed or partially concealed weapon under this section.

Section 2.   Any person who shall, within the corporate limits of the city of Howard, discharge any firearms, except by permission of the Mayor, or when mustered for drill or review, or otherwise acting under the command, or by permission of some commissioned officer, or where done in self-defense, or for the protection of gardens and yards from destructive animals, shall, upon conviction thereof, be fined in any sum not less than One nor more than Fifty Dollars and costs.

Section 3.   This ordinance shall take effect and be in force from and after its publication once in the Howard DEMOCRAT.

Passed May 16, 1889.

Approved by me this 16th day of May, 1889.
R. F. GLENN,
Mayor of the city of Howard.

Attest:   W. D. BURNS, City Clerk,

Copyright © 2023 Newspapers.com. All Rights Reserved.

POWERED BY
Newspapers™
.com

Exhibit 21
Page 083

# Exhibit 22

Exhibit 22
Page 084

Newspapers
by ancestry

https://www.newspapers.com/image/379760351

The Kendall Free Press (Kendall, Kansas) · Wed, Mar 23, 1887 · Page 1

Printed on Jun 25, 2023

Clerk.

Be it ordained by the Mayor and Councilmen of the City of Kendall, Hamilton County, Kansas:

### SECTION I.
#### DISCHARGING FIREARMS.

If any person shall within the corporate limits of the City of Kendall, fire or discharge any gun, fowling-piece, pistol, revolver, or firearm of any kind or description, or any other thing containing powder or combustibles, or anything made of nitro-glicerine, without first having obtained permission from the Mayor in writing, every such person shall be deemed guilty of a misdemeanor.

### SECTION II.
#### INDECENT DRESS AND LEWD CONDUCT.

Any person who shall appear in any public place within the corporate limits of the city in a state of nudity, or a dress or garb not belonging to his or her sex, or an indecent or lewd dress or shall make an indecent exposure of his or her person, or be guilty of any lewd or indecent behavior, shall be deemed guilty of a misdemeanor.

### SECTION III.
#### OBSCENE BOOKS, &C.—INDECENT PLAYS.

Any person who shall exhibit, sell or offer to sell, or give away, any indecent, lewd or obscene book, picture or other thing or shall exhibit or perform any indecent play or other representation, every such person shall be deemed guilty of a misdemeanor.

### SECTION IV.
#### PLYING THE VOCATION OF A PROSTITUTE.

Any prostitute or lewd woman who shall within the corporate limits of this city, by word, sign, letter, picture, action, or the distribution of cards or other thing, ply her vocation upon the streets, at any door, or window of any house of this city, or at any other place within the limits of the same, shall be deemed guilty of a misdemeanor.

### SECTION V.
#### CRUELTY TO ANIMALS.

Any person who shall inhumanly and unnecessarily beat, injure, or maltreat any dumb animal or animals within the corporate limits of this city, shall be deemed guilty of a misdemeanor.

### SECTION VI.
#### DISPLAY OF DEADLY WEAPONS.

It shall be unlawful for any person or persons to display or make any improper use of any deadly weapon within the corporate limits of this city. Any person violating this section shall be deemed guilty of a misdemeanor, and it shall be the duty of the City Marshall and all police officers of said city to arrest any and all persons found violating this section, with or without process.

### SECTION VII.
#### FIRE CRACKERS, &C.

The explosion of fire crackers, torpedoes,

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers
POWERED BY
.com

Exhibit 22
Page 085

The Kendall Free Press (Kendall, Kansas) · Wed, Mar 23, 1887 · Page 1
https://www.newspapers.com/image/379760351
Printed on Jun 25, 2023



Copyright © 2023 Newspapers.com. All Rights Reserved.

Exhibit 22
Page 086

Newspapers by ancestry

The Kendall Free Press (Kendall, Kansas) · Wed, Mar 23, 1887 · Page 1

https://www.newspapers.com/image/379760351

Printed on Jun 25, 2023

## OBSCENE BOOKS, &C.—INDECENT PLAYS.

Any person who shall exhibit, sell or offer to sell, or give away, any indecent, lewd or obscene book, picture or other thing or shall exhibit or perform any indecent play or other representation, every such person shall be deemed guilty of a misdemeanor.

### SECTION IV.
#### PLYING THE VOCATION OF A PROSTITUTE.

Any prostitute or lewd woman who shall within the corporate limits of this city, by word, sign, letter, picture, action, or the distribution of cards or other thing, ply her vocation upon the streets, at any door, or window of any house of this city, or at any other place within the limits of the same, shall be deemed guilty of a misdemeanor.

### SECTION V.
#### CRUELTY TO ANIMALS.

Any person who shall inhumanly and unnecessarily beat, injure or maltreat any dumb animal or animals within the corporate limits of this city, shall be deemed guilty of a misdemeanor.

### SECTION VI.
#### DISPLAY OF DEADLY WEAPONS.

It shall be unlawful for any person or persons to display or make any improper use of any deadly weapon within the corporate limits of this city. Any person violating this section shall be deemed guilty of a misdemeanor, and it shall be the duty of the City Marshall and all police officers of said city to arrest any and all persons found violating this section, with or without process.

### SECTION VII.
#### FIRE CRACKERS, &C.

The explosion of fire crackers, torpedoes, street, alley or other public place within the corporate limits of said city, such person or persons shall be deemed guilty of a misdemeanor and fined not less than one nor more than ten dollars, in default of payment of said fine he or they shall be confined in the calaboose not less than ten or more than twenty days.

### SECTION XXII.
#### CONCERNING THE CITY CLERK, CITY TREASURER, MARSHAL, AND STREET COMMISSIONER.

ART. 1—There are hereby created the offices of City Clerk, City Treasurer, City Marshal and Street Commissioner. The City Clerk shall keep a record faithfully of all proceedings of the Mayor and Council in books provided for that purpose.

ART. 2—The Treasurer shall safely keep all monies, notes, bonds and credits coming into his possession by virtue of his office and shall give a bond of five thousand dollars to the City of Kendall with at least two securities, conditional that he will faithfully account for all monies, notes, bonds and other credits coming into his possession by virtue of his office, said bond to be approved by the Mayor and Council. He shall pay out money only on the order of the Mayor attested by the City Clerk, which order shall also bear the seal of the city.

ART. 3—The City Marshall shall be the Chief of Police, and shall be charged with the preservation of the peace and good order of the city under the ordinances thereof and under the instructions of the Mayor and Council. Approved March 18th, A. D., 1887.

[Attest]     H. B. BELL,
                     Mayor.
T. A. JOHNSON,
    Clerk.

Copyright © 2023 Newspapers.com. All Rights Reserved.


POWERED BY Newspapers.com

Exhibit 22
Page 087

# Exhibit 23

Exhibit 23
Page 088

Newspapers by Ancestry

https://www.newspapers.com/image/420675083

Meade Globe (Meade, Kansas) · Sat, Nov 28, 1885 · Page 2

Printed on Jun 25, 2023



Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers.com

Exhibit 23
Page 089

Meade Globe (Meade, Kansas) · Sat, Nov 28, 1885 · Page 2

https://www.newspapers.com/image/420675083

Printed on Jun 25, 2023

costs are paid or replevied.

**[Published Nov., 28th 1885.]**

### ART. VI. SEC. I.

#### WEAPONS.

*Sec. 11.* Be it ordained by the mayor and councilmen of Meade Center in the state of Kansas, that it shall be unlawful for any person or persons who are not authorized by the laws of the United States or of the state of Kansas or of the said city of Meade Center, who shall be found within the incorporate limits of said city of Meade Center, carrying on his person a pistol, bowie knife, dirk, or other deadly weapons, shall be subject to arrest upon charge of misdemeanor and upon conviction shall be fined in any sum not exceeding $25, and stand committed until paid or replevied.

[Publishen Nov., 28th 1885.]

ART. VII SEC. I.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Exhibit 23
Page 090

# Exhibit 24

Exhibit 24
Page 091

Newspapers
by ancestry

https://www.newspapers.com/image/478384879

The Mount Hope Clarion (Mount Hope, Kansas) · Thu, May 5, 1887 · Page 3

Printed on Jun 25, 2023

d ubt.

## ORDINANCE NO. TWELVE,

### Peace, Good Government and General Welfare.

Be it ordained by the Mayor and Councilmen of the city of Mt. Hope Kansas.

SEC. 1. That any person who shall beat, wound or assault another, or obstruct, oppose or resist any city officer in the discharge of his duty, shall upon conviction be fined in any sum not less than three dollars nor more than twenty-five dollars and costs of suit.

SEC. 2. That any person, not an officer or traveler, who shall carry any knives, (except pocket knives) firearms, brass knucks, slung shots or other deadly weapons, concealed, within the corporate limits of the city of Mt. Hope, shall be deemed guilty of an offense, and upon conviction thereof shall be fined for each and every offense, the sum of ten dollars and costs of suit.

SEC. 3. That any person under the age of twenty one years of age, who shall be found carrying any deadly weapon, concealed or otherwise, shall be deemed guilty of an offense, and upon conviction thereof, shall be fined in any sum not more than ten dollars and costs of suit. PROVIDED, this does not apply to any one leaving the city on a hunting expedition, or returning therefrom.

SEC. 4. That whoever disturbs any assembly of people met for a lawful purpose, or shall disturb the peace and quiet of the city, or any neighborhood, family or person, within the corporate limits of the city of Mt. Hope, by any improper conduct, or by loud or unusual noises, vulgar or offensive language, quarreling, fighting or challenging to fight or display any firearms or other deadly weapons, shall be deemed guilty of an offense, and upon conviction thereof be fined in any sum not less than three dollars, nor more than twenty-five dollars and costs of suit.

SEC. 5. That whoever discharges any firearms, or throws any stones or missiles by the hand or by the means of any device, or shall break, mar, deface, injure or destroy, any property, public or private, real or personal, not his own, within the corporate limits of the city of Mt. Hope, shall be deemed guilty of an offense and upon conviction thereof be fined in any sum not less than three dollars, nor more than twenty-five dollars and costs of suit.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers™

Exhibit 24
Page 092

The Mount Hope Clarion (Mount Hope, Kansas) · Thu, May 5, 1887 · Page 3

https://www.newspapers.com/image/478384879

Printed on Jun 25, 2023

SEC. 6. That any tramp or any person found wandering, tramping, loafing or begging about, within the corporate limits of the city of Mt. Hope, without any visible means of support or honestly endeavoring to seek employment shall be deemed guilty of an offense and upon conviction thereof shall be fined in any sum not more than ten dollars and costs of suit.

SEC. 7. That any person who shall be found drunk or intoxicated or who shall be guilty of any disorderly conduct on any public street or alley or in any public place, within the corporate limits of the city of Mt. Hope shall be deemed guilty of an offense, and upon conviction thereof be fined in any sum not less than three dollars nor more than twenty dollars and costs of suit.

SEC. 8. That any person who shall be found gambling, owning directing or conducting any game of chance or gambling device, or playing thereat, and any person who shall let, rent or permit his property to be used as a gaming house club room or place where any game of chance or gambling device is kept, conducted or allowed to be carried on, shall be deemed guilty of an offense and upon conviction thereof shall be fined in any sum not xceeding one hundred dollars and costs of suit. PROVIDED this shall not apply to any game for social amusement, where no bets or charges are made and no stakes are played for.

SEC. 6. That this ordinance shall be in full force and effect after its publication in the Mt. Hope Mentor one issue.

Passed by the city council May 4th, 1887.

E. J. LENHART, City Clerk.

APPROVED.

S. M. JOHNS, Mayor

[*Published in the Mt. Hope Mentor May 5th, 1887.*]

Copyright © 2023 Newspapers.com. All Rights Reserved.

Exhibit 24

Page 093

# Exhibit 25

Exhibit 25
Page 094

Newspapers by ancestry.com

Scandia Journal (Scandia, Kansas) · Fri, Jan 5, 1894 · Page 8

https://www.newspapers.com/image/369072508

Printed on Jun 25, 2023

[Published January 5, 1894.]

## ORDINANCE No. 29.

An ordinance relating to crimes and punishments.

Be it ordained by the mayor and council of the City of Scandia.

SECTION 1. Every person who shall, within the corporate limits of the city of Scandia, disturb the peace of the city, or of any religious, political or other lawful meeting, or who shall disturb the peace of any neighborhood, family or person, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not less than Three ($3.00) Dollars, nor more than Fifty ($50.00) Dollars.

*(remaining ordinance text illegible)*

---

GEORGE F. PAGE.
Attorney at Law, & Notary Public.
Scandia, Kansas.

Important Notice.
All Persons Indebted to J. W. Pinney & Co. Will Please Call and Settle at Once.
We need our Money.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers.com

Exhibit 25
Page 095

Scandia Journal (Scandia, Kansas) · Fri, Jan 5, 1894 · Page 8

https://www.newspapers.com/image/369072508

Printed on Jun 25, 2023

return, they shall be deemed guilty of vagrancy, and the city marshal shall forthwith arrest such person and upon conviction they shall be fined in any sum not exceeding Fifty ($50.00) Dollars.

SECTION 6. Every person who shall, within the corporate limits of the city of Scandia, carry or have upon their person any concealed pistol, revolver, bowie-knife, dirk, sling-shot, billy, knuckles or other deadly weapon, shall upon conviction be fined in any sum not less than Two ($2.00) Dollars, nor more than Fifty ($50.00) Dollars. Provided:—That any person engaged in a lawful occupation and of good moral character, may, by the mayor, be granted a permit to carry such concealed weapons.

SECTION 7. Every person who shall, within the corporate limits of the city of Scandia, com-

Copyright © 2023 Newspapers.com. All Rights Reserved.

POWERED BY
Newspapers.com ™

Exhibit 25
Page 096

# Exhibit 26

Exhibit 26
Page 097

Newspapers
by ancestry

The Asheville Weekly Citizen (Asheville, North Carolina) · Sat, Jun 3, 1882 · Page 1

https://www.newspapers.com/image/61589420

Printed on Jun 25, 2023



Copyright © 2023 Newspapers.com. All Rights Reserved.



Exhibit 26
Page 098

The Asheville Weekly Citizen (Asheville, North Carolina) · Sat, Jun 3, 1882 · Page 1

Newspapers
by ancestry

https://www.newspapers.com/image/61589420

Printed on Jun 25, 2023

placed under the Street Commissioner and compelled to work upon the public streets for a period not to exceed five days for each offense.

Sec. 61. That if any person or persons are found carrying pistols, bowie-knives, sling-shots, billeys, or other deadly weapons (officers excepted) within the corporate limits of the town of Asheville, every person so offending shall for every such offense forfeit and pay a sum of ten dollars—one-half to the informer.

Sec. 62. Persons conducting gift enterprises, or persons establishing or controling any game of chance, within the corporate

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers
POWERED BY

Exhibit 26
Page 099

The Asheville Weekly Citizen (Asheville, North Carolina) · Sat, Jun 3, 1882 · Page 4

https://www.newspapers.com/image/61589427

Printed on Jun 25, 2023



Copyright © 2023 Newspapers.com. All Rights Reserved.



Exhibit 26

Page 100

# Exhibit 27

Exhibit 27
Page 101

Newspapers
by ancestry

https://www.newspapers.com/image/348612058

The Lake Charles Echo (Lake Charles, Louisiana) · Sat, Jul 18, 1874 · Page 4

Printed on Jun 25, 2023



Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers

Exhibit 27
Page 102

The Lake Charles Echo (Lake Charles, Louisiana) · Sat, Jul 18, 1874 · Page 4

https://www.newspapers.com/image/348612058

Printed on Jun 25, 2023



On motion, an ordinance to pre-
vent the carrying weapons within
the corporate limits of the town
of Lake Charles, was read twice
and adopted, as follows :

Section 1st. Be it ordained by
the board of Aldermen of the town
of Lake Charles, that whoever
shall carry a weapon or weapons
upon his person, within the corpo-
rate limits of said town, such as
Bowie knives, pistols, revolvers,
dirks, brass-knuckles, slung-shots,
or any other dangerous weapon or
weapons, shall be fined not less
than five dollars, and in default of
payment of fine with all costs, he
shall be imprisoned, in the parish
jail, not less than twenty-four
hours, and for a second offence the
fine shall be double.

Copyright © 2023 Newspapers.com. All Rights Reserved.



Exhibit 27
Page 103

# Exhibit 28

Exhibit 28
Page 104

# THE WELLSTON NEWS.

**BEEMAN BROS., Proprietors.**

Entered at the Post office at Wellston, Oklahoma, as Second-class Mail matter.

## PUBLISHED EVERY FRIDAY EVENING

### SUBSCRIPTION RATES.

| One Year in Advance | $1.00 |
| Six Months | .50 |
| Three Months | .25 |

## ADVERTISING RATES

10 cents a-n inch, single column per month. $1.00 an inch for 12 months. All advertising charged for until ordered out. All transient ads in advance.

**FRANK E. BEEMAN, EDITOR.**

**BEEMAN BRO'S PROPRIETORS.**

### Wellston Markets.

Corrected every Friday.

| | |
| --- | --- |
| Butter | 15 |
| Eggs | 12½ |
| Bacon | 7½ |
| Dry salt meat | 7½ |
| Potatoes | 75 |
| Onions | 75 |
| Flour | 170–180 |
| Corn | 20 |
| Castor Beans | 85 |
| Seed Cotton | 2.25 |
| Cotton lint | 7.00 |
| Hogs | 4.00 |

---

### Resolution No. 1.

INTRODUCED BY ORDINANCE COMMITTEE.

Be it resolved by the President and Board of Trustees of the Town of Wellston, that the Clerk of said Town of Wellston be, and he is hereby authorized, directed and required to publish and print in pamphlet form, all of the resolutions, by-laws and ordinances of said Town of Wellston that have heretofore, or are at this time duly enacted and published by the Board of Trustees of said Town of Wellston; and to such pamphlet said Clerk shall attach his certificate, showing that the said pamphlet contains all of the resolutions, by-laws, and ordinances which have here been passed and published, and not repealed by the Board of Trustees of the Town of Wellston on or before the 6th day of February, 1900; and said Clerk shall further certify that the said resolutions, by-laws and ordinances as published are full, true and correct copies of the originals of which they purport to be, and when so published, the same shall be evidence in all courts.

Passed, enacted and established at a regular meeting of the Board of Trustees of the Town of Wellston, this 6th day of February, 1900.      W. H. BROWN,

Pres. Board of Trustees.

FRANK E. BEEMAN,

{SEAL.}        Town Clerk.

---

### Ordinance No. 1.

An ordinance declaring certain acts to be an offence, and prescribing a penalty therefore.

Be it enacted by the President and Board of Trustees of the Town of Wellston.

Section No. 1. That the several offences specified in this ordinance are hereby prohibited in this town, and any person found guilty of any or either of them, shall be adjudged guilty of disturbing the peace and quiet of the town, and shall be subject to the penalties herein provided for those, respectively.

Section No. 2. That any person who shall in this town, disturb the peace of another by assaulting, striking or beating such others, or who shall use insulting language, calculated to provoke a disturbance of the peace, or who shall be guilty of violent, turbulent or tumultuous conduct offensive to others, or who shall use any profane, obscene or indecent language in any public place in this town, or any person who shall make or permit any offensive noise or disturbance about the premises under his or her control, shall be deemed guilty of an offence and shall be fined in any sum not less than one dollar nor more than ten dollars.

Section No. 3. That any person who shall in this town disturb or disquiet any congregation or assembly met for religious worship, by making noise, or by rude or indecent behavior, or profane or obscene discourses within their place of worship or so near any worshiping assembly or congregation as to disturb the solemnity of the meeting, shall be deemed guilty of an offence and shall be fined in any sum not less than one dollar nor more than ten dollars.

Section No. 4. That any person who shall in this town, purposely disturb any lawful assemblage of people by rude, noisy or indecent behavior, or otherwise, shall be deemed guilty of an offence and shall be fined in any sum not exceeding ten dollars.

Section No. 5. That any person who shall in this town, intentionally ride or drive any mule, horse or other beast faster than an ordinary traveling gait, or who shall so ride or drive as to be likely to cause other horses or teams to become frightened or run away, or any person who shall leave any of the above mentioned animals or any team, on any of the public streets or public places of said town, without being secured, fastened or hitched, shall be deemed guilty of an offence and shall be fined in any sum not exceeding ten dollars.

Section No. 6. That any person, who shall in this town, discharge any fire arms, in any public place, or in the direction of any public place, or in the direction of any horse or building in this town, or who shall discharge any fire crackers, rockets or other kinds of fire works in any public place in this town, shall be deemed guilty of an offence; provided, that the President of the Board of Trustees shall have power to grant proper persons the right to discharge fire works on special occasions, which permit shall be in writing, signed by the President, granting the same, and shall specify the time, when and the place where such fire works are to be exhibited, and any person violating the provisions of this section shall be fined in any sum not exceeding ten dollars.

Section No. 7. That any person who shall in this town show any pistol or other weapon in a hostile manner, or shall make any threats or demonstrations of using any such weapons on or against any person, or any person who shall carry or have on his or her person in a concealed or unconcealed manner within this town, any pistol, dirk or bowie knife or other deadly weapon, or any person who shall within the town while in a state of intoxication, have or his or her possession any pistol, bowie knife or other deadly weapon, shall be deemed guilty of an offence and fined in any sum not less than one dollar nor more than ten dollars, provided; that this section shall not be so construed as to prevent officers of the law from being armed while on duty and not in a state of intoxication.

Section No. 8. That any person who shall in this town throw any ball, stone, brick, pieces of wood or other hard substances in or across any street or alley, and at or against any house, building or vehicle with intent to injure any person, or with intent to injure any such house, building or vehicle, and furthermore it shall be unlawful to pitch or catch any ball on any of the public streets of the town of Wellston, and any such person shall be deemed guilty of an offence and shall be fined in any sum not exceeding ten dollars.

Section No. 9. That any person who shall wantonly or intentionally deface, injure, destroy or besmear within this town any public property of this town, or any fence, awning, building, wall, railing or goods or chattels, the property of another, or any property or thing whatever in this town, shall be deemed guilty of an offence and shall be fined in any sum not exceeding ten dollars.

Section No. 10. That any person who shall knowingly bring into this town, any pauper, lunatic or person of unsound mind, and leave such person without being properly cared for, shall be deemed guilty of an offence and shall be fined in any sum not exceeding ten dollars.

Section No. 11. That every person who shall within this town appear in any public place, in a state of nudity, or in any dress not belonging to his or her sex, or in any indecent or lewd dress, or who shall make any indecent or any public exposure of his or her person, or be guilty of any indecent or lewd act or behavior, or shall exhibit, sell or offer for sale any indecent or lewd book, picture or other thing, shall be deemed guilty of an offence and shall be fined in any sum not less than one dollar nor more than ten dollars.

Section No. 12. That any person who shall be found in any public place in this town so drunk as to not be fully competent to take care of himself, or in such a state of intoxication as to make it unsafe for himself or others, to allow him to go at large, shall be arrested by the Marshal and put in the town prison and kept until sober, when he shall be brought before the Justice of the Peace and be fined in any sum not exceeding ten dollars.

Section No. 13. Any person who shall in this town wilfully resist, oppose or obstruct the Marshal or any of his deputies, or any other officer of said town in the discharge or an official duty, or shall by threats or otherwise seek to intimidate any such officer from the discharge of an official duty shall be deemed guilty of an offence, and shall be fined for each and every offence in any sum not exceeding ten dollars.

Section No. 14. Any person who shall in this town assault, beat or wound any such officer mentioned in the preceding section of this ordinance while such officer is in the discharge of any official duty of this town, shall be fined in any sum not exceeding ten dollars.

Section No. 15. If any person or persons shall set at liberty or rescue, or attempt to set at liberty or rescue from any town officer or his deputy having the legal custody or charge of the same, or from the custody of the police court, while in said court, or from the custody or confinement of which they may be held for the violation of any ordinance of this town, any prisoner or prisoners, either before or after conviction, he or they shall be deemed guilty of an offence and fined in any sum not less than one dollar nor more than ten dollars.

Section No. 16. Every person who shall entice or persuade, or by threats, or by any other means, directly or indirectly induce or cause any person summoned as a witness in any case in which said town or any of its officers are interested before the Justice of the Peace to absent himself from the trial of such case, or who shall induce or cause by persuasion, threats or any other means, any person to secrete or absent himself for the purpose of avoiding the service of process of any kind issued by the said Justice of the peace in such case shall be deemed guilty of an offence and shall be fined in any sum not less than one dollar nor more than ten dollars.

Section No. 17. If any person confined in any place used as a prison by the town of Wellston, or held in the custody of any officer of said town for the violation of any ordinance of said town, or upon charge of violating any ordinance of the town, shall forcibly break such prison and escape therefrom, or who shall attempt by force and violence to any person to break from such prison, or custody, although no escape be effected, shall be deemed guilty of an offence and shall be fined in any sum not less than one dollar nor more than ten dollars.

Section No. 18. It shall be unlawful to keep for the purpose of service as a seed animal, any stallion, jack, bull or other seed animal within the corporate limits of the town of Wellston, or so near the corporate limits of said town, as to disturb the inhabitants of said town, or any one or more of such inhabitants, or parade such animal through the public street or streets of said town for the purpose of exhibition, or to allow any such animal to remain standing upon any of the public streets of said town longer than five minutes at one time, provided; that such animal may be kept within the limits of said town, when not less than one hundred feet from any public street, and in an enclosure consisting of good tight lumber, built tight from the ground, up to a distance of not less than eight feet high, and provided further; that wherever any resident of the block in which said animal is kept, or a block adjacent makes complaint to the town Marshal that such animal is a nuisance, or is disturbing the people in their neighborhood, the Marshal shall notify the owner of said animal, whose duty it shall be to immediately remove said animal from that part of the town, to some more secluded part of said town, and where the people living near to where said animal is kept do not object to its being kept.

Section No. 19. Every person who, either as owner or keeper, of any such animal as mentioned in the foregoing section shall violate the provisions of this section shall be fined in any sum not less than five dollars nor more than ten dollars for each offence.

Section No. 20. That all persons who shall conceal, assist or abbet in the commission of any of the offences described in this ordinance shall be fined in any sum not less than one dollar nor more than ten dollars.

---

### Partnership Statement.

Territory of Oklahoma, }

Lincoln County, } ss.

This is to certify that Henry J. Cullen, residing at Wellston, Oklahoma, and Walter P. King, residing at Wellston, Oklahoma, have formed a partnership and are now conducting business as such partnership at Wellston, said Territory.

That the place of business of such partnership is at Wellston, Lincoln county, Oklahoma Territory.

That the style and firm name of such partnership is "Cullen & King."

https://www.newspapers.com/image/659023288

Printed on Oct 19, 2023

Copyright © 2023 Newspapers.com. All Rights Reserved.

Exhibit 28
Page 105

The Wellston News (Wellston, Oklahoma)  ·  Fri, Feb 9, 1900  ·  Page 4

https://www.newspapers.com/image/659023288

Printed on Oct 19, 2023

sum not exceeding ten dollars.

Section No. 7. That any person who shall in this town draw any pistol or other weapon in a hostile manner, or shall make any threats or demonstrations of using any such weapons on or against any person, or any person who shall carry or have on his or her person in a concealed or unconcealed manner within this town, any pistol, dirk or bowie knife or other deadly weapon, or any person who shall within the town while in a state of intoxication, have in his or her posession any pistol, bowie knife or other deadly weapon, shall be deemed guilty of an offence and fined in any sum not less than one dollar nor more than ten dollars, provided; that this section shall not be so construed as to prevent officers of the law from being armed while on duty and not in a state of intoxication.

Section No. 8. That any person who shall in this town throw any ball, stone,

Copyright © 2023 Newspapers.com. All Rights Reserved.



Exhibit 28
Page 106

# Exhibit 29

Exhibit 29
Page 107

Case 8:23-cv-01798-CJC-ADS   Document 20-2   Filed 11/03/23   Page 108 of 157   Page ID #:344

https://www.newspapers.com/image/174660388

Printed on Jun 25, 2023



Copyright © 2023 Newspapers.com. All Rights Reserved.



Exhibit 29
Page 108

Case 8:23-cv-01798-CJC-ADS   Document 20-2   Filed 11/03/23   Page 109 of 157   Page ID #:345

rmit in
nement
control
or bois-
nuoyance
e deem-
d upon
ss than
rs with
d. That

more than twenty-five dollars with all cost.]

Sec. 18. Be it further ordained. That it shall be unlawful for any person to carry about their person any pistol, bouie knife, sling shot, brass knucks, dirk, sword, loaded cane, stilletto, razor or other deadly wapon in this Corporation, and it is hereby made the duty of the City Marshal or other officer who

Corpora
city or
have the
upon th
lanes, al
such bu
terial ne
ing fini
Provide
or mate
pede th

Copyright © 2023 Newspapers.com. All Rights Reserved.



Exhibit 29
Page 109

Lawrence Democrat (Lawrenceburg, Tennessee) · Fri, Jul 26, 1895 · Page 4

https://www.newspapers.com/image/174660388

Printed on Jun 25, 2023

sees or knows of any person carrying such deadly weapons to immediately arrest every such person that they may be dealt with according to the provisions of this act, and any person found guilty of carrying any of the aboved named weapons or any other deadly weapon shall be fined not less than ten nor more than fifty dollars with all cost. Provided that this Section shall not apply to Marshals Sheriffs or other officer while on duty.

Copyright © 2023 Newspapers.com. All Rights Reserved.

POWERED BY Newspapers.com™

Exhibit 29

Page 110

# Exhibit 30

Exhibit 30
Page 111

The Perry Daily Times (Perry, Oklahoma) · Sat, Feb 2, 1895 · Page 2

https://www.newspapers.com/image/662973702

Printed on Jun 25, 2023

An Ordinance prohibiting the carrying of concealed weapon and fixing the punishment therefor.

Be it ordained by the mayor and councilmen of the city of Perry.

SECTION 1. It shall be unlawful for any person in the city of Perry to carry concealed on or about his person, saddle or saddlebags, any pistol, revolver, bowie knife, dirk, dagger, razor, slingshot, sword, cane, spear, metal knuckles or any other kind of knife or instrument manufactured or sold for the purpose of defense except in this ordinance provided.

SEC. 2. It shall be unlawful for any person in the corporate limits of the city of Perry to carry upon or about his person any pistol, revolver, bowie knife, dirk knife, loaded cane, billy, metal knuckles or any other offensive or defensive weapon, except as in this article provided.

SEC. 3. It shall be unlawful for any person within the corporate limits of the city of Perry, to sell or give to any minor, any of the arms or weapons designated in sections one and two of this article.

SEC. 4. Public officers while in the discharge of their official duties or while going from their homes to their place of duty or returning therefrom shall be permitted to carry arms, but at no other time and under no other circumstances, provided, however, that if any public officer be found carrying such arms while under the influence of intoxicating drinks, he shall be deemed guilty of a violation of this ordinance as though he were a private person.

SEC. 5. Persons shall be permitted to carry shot guns or rifles for the purpose of hunting, having them repaired, or for killing animals, or for the purpose of using them in public muster or military drills or while traveling or removing from one place to another, and not otherwise.

SEC. 6. It shall be unlawful for any person to point any pistol or any other deadly weapon, whether loaded or not at any other person or persons either in anger or otherwise.

SEC. 7. Any person violating the provisions of any one of the foregoing sections, shall, upon conviction be fined in not less than Twenty Five Dollars and not more than Fifty Dollars, or imprisonment not more than 90 days or both.

SEC. 8. All ordinances or parts of ordinances in conflict with the provisions of this ordinance are hereby repealed.

SEC. 9. This ordinance shall take effect and be in force from and after its passage approved and publication.

Approved this 23 day of Jan. 1895.

(ATTEST)          W. A. STONE,
[SEAL.]                    Mayor.

G. W. PURSELL, City Clerk.

**BUSINESS LOCALS.**

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers™

Exhibit 30
Page 112

# Exhibit 31

Exhibit 31
Page 113

The Democrat.

Highest of all in Leavening Power.—Latest U.S. Gov't Report



**Royal Baking Powder**

ABSOLUTELY PURE

**Star Bakery**

GEORGE SIMSON & CO., PORTLAND, MAINE.

**DRUGS**

Hodges & McFarland,

**PATENTS**

C.A. SNOW & CO.,

**Dr PRICE'S Cream Baking Powder.**

Exhibit 31
Page 114

# Exhibit 32

Exhibit 32
Page 115

Santa Fe Weekly Sun (Santa Fe, New Mexico) · Sat, Aug 15, 1891 · Page 4

https://www.newspapers.com/image/985670827

Printed on Oct 19, 2023

# ORDINANCES.

## CHAPTER VIII.

### DEADLY WEAPONS.

Be it ordained by the City Council of the City of Santa Fe:

Sec. 1. That it shall be unlawful for any person to carry a deadly weapon, either concealed or unconcealed, within the limits of the city of Santa Fe, unles the same be carried in lawful defense of himself, his family or his property, the same being at the time threatened with danger, or unless by order of legal authority, or unless such person be a regular authorized officer of the law in the discharge of his official duties.

Sec. 2. Deadly weapons, within the meaning of the preceding section, shall be construed to mean any and all kinds and classes of guns, pistols and revolvers, slung shots, loaded or sword canes or sand-bags and all kinds and classes of weapons and instruments, by whatever name they may be called, by which a dangerous wound can be inflicted.

Sec. 3. Any person convicted of a violation of sections 1 or 2 of this chapter, shall be punished by a fine of not less than five dollars nor more than fifty dollars, or by imprisonment in the county jail or city prison for a period not less than ten days nor more than sixty days, or by both such fine and imprisonment, in the discretion of the court.

N. T. THORNTON,
Mayor.

Attest: J. D. HUGHES,
Clerk.

Passed August 11, 1891.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Exhibit 32
Page 116

# Exhibit 33

Exhibit 33
Page 117

**ORDINANCE.--Continued.**

Street Commissioner.

Sec. 12. The road supervisor, whose appointment is provided for in Section 26, of chapter 59, of the act of the legislature approved of 1891, shall be street commissioner of the town of Cerrillos, his duties shall be as prescribed by law for road supervisors and street commissioners and as shall be directed from time to time by the board of trustees.

Sec. 13. The several town officers and appointees shall do and perform all such other duties and render such other services, not specifically defined by ordinance, as may be required of them by the board of trustees.

Approved,   W. E. Dame,
Seal.        Chairman Board of
    Trustees, Town of Cerrillos.
Attest: C. A. Whited, Clerk.

CHAPTER III.

POLICE JUDGE AND MARSHAL.—

Be it ordained by the Board of Trustees of the Town of Cerrillos.

Sec. 1. The police judge shall have sole and exclusive jurisdiction of all violations of any Town ordinance or regulation. He shall keep a docket in which he shall enter a true record of all actions brought before him.

Sec. 2. The police judge shall before proceeding to try any person for the violation of any ordinance or regulation of the Town, cause complaint to be made and a warrant to be issued to arrest such person, and a return to be made upon said warrant.

Sec. 3. All cases tried before the police judge shall be docketed in the name of the Town of Cerrillos against the defendant and the judge shall enter upon his docket in a plain and intelligible manner a minute of each step taken in each case and an itemized statement of all costs and fines imposed and collected by him.

Sec. 4. Judgement of guilty or not of the offense charged shall be entered in each and every case, and by said judgement defendant shall be discharged, fined, imprisoned, or fined and imprisoned as the case may be; and when defendant is found guilty the costs of each case shall be assessed against him, and no costs shall be taxed otherwise, and all judgements imposing a fine, except where a fine and imprisonment are both imposed, shall be in the alternative of imprisonment for a specified number of days or until such fine and costs are paid.

Sec. 5. Whenever judgement of guilty is entered in any case, the police judge shall issue a commitment against the person of the defendent commanding the town marshal in default of the immediate payment of such fine and costs as may have been assessed, to commit the defendant to the town jail subject to labor, and in case where the judgment is that the defendant be imprisoned, that he commit the defendant to the town jail, subject to labor, in accordance with the terms of said judgment and the ordinances of said town.

Sec. 6. Whenever in accordance with the laws of the territory of New Mexico a defendant in any case may be entitled to an appeal, the same shall be allowed in accordance therewith by filing a bond with two sufficient sureties, in double the amount of the highest pecuniary penalty that could or might be assessed in the case. Provided, that said appeal shall not operate as a supersedeas in such case until such bond shall have been given and approved, and no costs shall be demanded as a condition of such appeal, nor the approval of the said appeal bond.

Sec. 7. In each case tried before the police judge of the said town of Cerrillos said police judge may tax as costs for himself and marshal the same fees as shall be authorized by law to be taxed for similar services in favor of justices of the peace and constables.

Sec. 8. All costs and fines shall be collected by the marshal of the town who shall pay the fines collected by him to the city treasurer at least once a week, and shall pay any costs coming into his hands belonging to the police judge to the police judge and return the execution or commitment for the collection of the said fine and cost satisfied, and in all cases it shall be the duty of said police judge to issue each execution or commitment and endorse on each execution or commitment an itemized statement of costs, and it shall be the duty of marshal to make a weekly report to said board of trustees of all arrests made and cases tried for the violation of city ordinances, of the disposition of the same and the fines collected and constituted.

Sec. 9. The marshal shall receive such salary as the board of trustees shall by ordinance fix, the amount of which salary shall be paid to him in warrants drawn upon the police fund, hereinafter provided for, in such manner as to be equivilant to cash for the face value of said warrants.

Sec. 10. All moneys arising from said fines and from licenses paid into the treasury of said town shall constitute and be a police fund in said treasury, out of which all salaries shall be first paid, and in the event of a surplus of said police fund above what may be necessary to pay said salaries, said board of trustees may by resolution direct said surplus to be passed to general fund or other wise appropriated.

Approved:   W. E. Dame.
Seal.        Chairman Board of
    Trustees, Town of Cerrillos.
Attest: C. A. Whited, Clerk.

CHAPTER IV.

Be it ordained by the Board of Trustees of the Town of Cerrillos.

SECTION 1. That no dog, bitch, or whelp, shall be allowed to run at large within the limits of this town, until the owner or keeper of such dog, bitch, or whelp, shall have paid the town clerk the sum of one dollar for each dog, or whelp, and the sum of three dollars for each bitch owned or kept by such person, and shall also place around the neck of such dog, bitch, or whelp, a collar made of durable material.

SEC. 2. It is hereby made the duty of all persons owning or keeping any dog, bitch, or whelp, to apply to the town clerk, and make payment to him each year, as provided in section one of this ordinance. And shall be the duty of such owner or keeper, with the license number thereon, which tag shall by the owner or keeper be attached to and worn on the collar here in provided for ; and the clerk shall keep a full record of such license.

SEC. 3. The town marshal, is hereby authorized and required, to kill and destroy any dog, bitch, or whelp, found running at large within the limits of this town, unless such dog, bitch, or whelp, is duly licensed as provided for in this ordinance.

SEC. 4. This ordinance shall be in force and effect on and after October first, A. D. 1891.

[—]   Approved, W. E. Dame,
[Seal.]   Chairman Board of Trus-
[—]   tees for the Town of Cer-
rillos, New Mexico.
Attest : C. A. Whited, Clerk.

CHAPTER V.—BREACHES OF THE PEACE.

Be it ordained by the Board of Trustees of the Town of Cerrillos.

SEC. 1. That any person who may hereafter be found lurking, lying in wait or concealed in any house or other building, or in any yard or premises within the limits of the Town of Cerrillos, with intent to do any mischief, or to pilfer or to commit any crime or misdemeanor whatever, shall for every such offense, on conviction, be punished by a fine of not less than $5.00 nor more than fifty dollars, or by imprisonment in the town prison not exceeding ninety days, or by both

such fine and imprisonment, in the discretion of the court.

Sec. 2. Any person who shall aid, countenance or assist in making any riot, disturbance, or breach of the peace by any public place in the said Town or who shall be guilty of any indecent, or immoral or insulting conduct, language or behavior, in the streets, or elsewhere in said Town, or who may remain prostrate in the streets or other public places in said Town, and all persons who shall collect in bodies or crowds in said Town for unlawful purpose, or to the annoyance or disturbance of the citizens, shall for every such offense be punished by a fine of not less than $5.00 nor more than fifty dollars, or by imprisonment in the Town prison not exceeding ninety days, or by both such fine and imprisonment, in the discretion of the court.

Sec. 3. Any person who shall be found drunk within the limits of said Town, shall for every such offense be punished by a fine of not less than $5.00 nor more than twenty-five dollars, or by imprisonment, in the the Town prison, not exceeding thirty days, or by both such fine and imprisonment, in the discretion of the court.

Sec. 4. Any person who shall make any indecent exposure of his person or be guilty of any lewd or indecent behavior in any public place of said Town, shall for every such offense be punished by a fine of not less than $5.00 nor more than twenty-five dollars, or by imprisonment in the Town prison, for a period not exceeding thirty days, or by both such fine and imprisonment, in the discretion of the court.

Sec. 5. Any person who shall disturb or disquiet any congregation engaged in religious worship, or any lawful assemblage of the people within the Town, by making a noise, or by rude or boisterous behavior within such meeting, or so near the same as to disturb the order or solemnity thereof, shall for every such offense be punished by a fine not exceeding twenty-five dollars, or by imprisonment in the Town prison, not exceeding thirty days, or by both such fine and imprisonment, in the discretion of the court.

Sec. 6. Any person who shall aid or assist any person confined in the Town prison to escape from such confinement, or who shall aid or assist any person in the custody of any officer of the Town to escape from such officer, and any person who shall resist an officer of said Town in the discharge of his duties, shall be punished by a fine of not less than $10.00 nor more than one hundred dollars, or by imprisonment not exceeding ninety days, in the discretion of the court.

Sec. 7. Every person committed to the Town prison for the violation of any ordinance of the Town of Cerrillos shall be required to work for the Town under the supervision of the marshal, at such labor as his or her strength will permit, within or without such prison not more than ten hours each working day ; and for each work the person so employed shall be allowed, exclusive of his or her board, One dollar per day for each day's work, to be applied toward the payment of the fine and costs adjudged by the committing magistrate.

Sec. 8. All persons committed to jail shall be immediately searched and all articles of value, or weapons, shall be turned over to the marshal, together with the name of the person to whom they belong, so that proper disposition can be made of the same.

[—]   Approved W. E. Dame,
[Seal.]   Chairman Board of Trus-
[—]   tees for the Town of Cer-
rillos, New Mexico.
Attest : C. A. Whited, Clerk.

CHAPTER VI.—NUISANCES.

Be it ordained by the Board of Trustees of the Town of Cerrillos.

Sec. 1. That if any person shall permit or suffer any ground, building or other premises within the Town of Cerrillos, owned or occupied by him, or of which he shall be the agent, having charge of the

same, to become or to offensive, nauseous, hurtful or dangerous to the neighborhood or travelers, by reason of stagnant water, dead animal or from any other cause or causes, he shall be punished as hereinafter provided.

Sec. 2. If any person shall suffer any animal belonging to him or in his charge, which may die of disese or otherwise, to be in or upon any street, alley or other grounds or place within the Town ; public or private, for the space of twenty-four hours after the same shall have died, he shall be punished as hereinafter provided.

Sec. 3. If any person shall allow to flow from any house, shop, factory, stable, slaughter house or place any foul or nauseous liquor or substance of any kind whatsoever into or upon any adjacent ground or lot or into any street, alley or ditch in the Town so as to be offensive, nauseous, hurtful or dangerous any person who shall deposit in any such place any filth, litter or refuse or any carcass or thing so as to be offensive, nauseous, hurtful or dangerous to any portion of the inhabitants of said Town, he shall be punished as hereinafter provided.

Sec. 4. Any person offending against any of the foregoing provisions of this chapter, shall be punished for each offence by a fine of not less than five dollars, nor more than fifty dollars, or by imprisonment in the Town prison, for a term of not less than five days nor more than sixty days or by both such fine and imprisonment in the discretion of the court.

[—]   Approved W. E. Dame,
[Seal.]   Chairman Board of Trus-
[—]   tees for the Town of Cer-
rillos, New Mexico.
Attest : C. A. Whited, Clerk.

CHAPTER VII.—DEADLY WEAPONS.

Be it ordained by the Board of Trustees of the Town of Cerrillos.

Sec. 1. That it shall be unlawful for any person to carry a deadly weapon, either concealed or unconcealed within the limits of the Town of Cerrillos, unless the same

be carried in lawful defense of himself, his family or his property, the same being at the time threatened with danger, or unless by order of legal authority, or unless such person be a regular authorized officer of the law in the discharge of his official duties.

Sec. 2. Deadly weapons, within the meaning of the preceding section, shall be construed to mean any and all kinds and classes of pistols and revolvers, slung shots, loaded or sword canes or sand-bags and all kinds and classes of weapons, and instruments, by whatever name they may be called, by which a dangerous wound can be inflicted.

Sec. 3. Any person convicted of a violation of section one or two of this chapter, shall be punished by a fine of not less than five dollars nor more than fifty dollars, or by imprisonment in the Town prison for a period of not less than ten days nor more than sixty days, or by both such fine and imprisonment, in the discretion of the court.

Sec. 4. Any person who shall be found guilty of discharging any fire-arm within 300 yards of any habitation in the said Town of Cerrillos shall be fined on  conviction thereof, not less than five dollars nor more than Twenty-five dollars, unless the same shall be in defense of himself, his family, or property.

[—]   Approved W. E. Dame,
[Seal.]   Chairman Board of Trus-
[—]   tees for the Town of Cer-
rillos, New Mexico.
Attest : C. A. Whited, Clerk.

**A. L. Kendall,**

**Notary Public.**

— AND —

*Justice of the Peace.*

All notary work given promp attention and careful execution.

---

**THE CERRILLOS SUPPLY CO**

— Dealers in —

Hardware,
Stoves,
Tinware
Furniture,
Queensware,
Glassware.

Lamps,
Woodenware,
Paints,
Oils,
Glass,
Miners' Supplies

☞ Giant and Black Powder always in stock.

☞ Studebaker Wagons, both light and heavy, Buggies Road Carts, etc.

**Iron and Steel.**

☞ Orders for Machinery and Machine repairs, will receive prompt attention.
☞ Before making your purches give us a call.

---

**Miller & Legace,**

— Dealers in —

**Pure Drugs and Medicines,**

Stationery, Toilet Goods, Perfumeries,
Paints, Oils,   Varnishes   Wall
Paper, Glass, Cigars and
Tobacco.

PRESCRIPTIONS CAREFULLY COMPOUNDED
L. G. Jones' New Building.      Cerrillos, N. M.

Exhibit 33



# Exhibit 34

Exhibit 34
Page 119

Omaha Daily World-Herald (Omaha, Nebraska) · Sun, Aug 4, 1889 · Page 12

https://www.newspapers.com/image/859729118

Printed on Jun 25, 2023





Copyright © 2023 Newspapers.com. All Rights Reserved.

Exhibit 34

Page 120

Omaha Daily World–Herald (Omaha, Nebraska) · Sun, Aug 4, 1889 · Page 12

https://www.newspapers.com/image/859729118

Printed on Jun 25, 2023

be imprisoned not exceeding thirty days.

SEC. 10. It shall be unlawful for any person to wear under his clothes, or concealed about his person, any pistol or revolver, colt, billy, slungshot, brass knuckles or knuckles of lead, dirk, dagger, or any knife resembling a bowie knife, or any other dangerous or deadly weapon within the corporate limits of the city of Omaha. And any person guilty of a violation of this section shall, on conviction, be fined not exceeding one hundred dollars for each and every offense: nothing in this section, however, shall be so construed as to prevent the United States marshals and their deputies, sheriffs and their deputies, regular or special police officers of the city, from carrying or wearing such weapons as may be deemed necessary in the proper discharge of their duties. Provided, however, if it shall be proved from the testimony on the trial of any such case, that the accused was, at the time of carrying any weapon as aforesaid, engaged in the pursuit of any lawful business, calling or employment and the circumstances in which he was placed at the time aforesaid were such as to justify a prudent man in carrying the weapon or weapons aforesaid, for the defense of his person, property or family, the accused shall be acquitted.

Whenever any police officer shall make an arrest of a person having concealed on or about his person any weapon or weapons, as specified in this section, it shall be such officer's duty to take from such person arrested the weapon or weapons found upon him at the time of his arrest, and to retain the same, to abide such order concerning the same as may be made by the police judge.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Exhibit 34

Page 121

# Exhibit 35

Exhibit 35
Page 122

The Black Hills Weekly Journal (Rapid City, South Dakota) · Fri, Dec 8, 1882 · Page 1

https://www.newspapers.com/image/351946935

Printed on Jun 25, 2023

## Ordinance No. 11.

Be it ordained by the president and board of trustees of the town of Rapid City:

SECTION 1. That it shall be, and it is hereby declared to be unlawful for any person to carry, openly or concealed, any musket, rifle, shot gun, pistol, sabre, sword, bowie knife, dirk, sword cane, billy, slung shot, brass or other metalic knuckles, or any other dangerous or deadly weapon within the corporate limits of the town of Rapid City, Dakota territory.

Provided, that nothing herein contained shall prevent the carrying of such weapon by a civil or military officer, or by a soldier in discharge of his duty, nor by any other person for meer purposes of transportation from one place to another.

Sec. 2. Upon complaint before the justice of the peace of the town, that an offence in violation of this ordinance has been committed, he shall inquire into the circumstances of the case, to determine whether the charge is well founded, and exercise his own discretion as to the dismissal. If the complaint shall be made good and the party arrested shall be adjudged guilty by the said justice of the peace, he shall fine the offender not less than ten nor more than fifty dollars, with the costs of prosecution.

Sec. 3. All funds assessed and collected under this ordinance shall be paid to the treasurer and be credited to the general revenue fund.

Sec. 4. This ordinance shall take effect and be in force from and after its passage and approval and publication as provided by law.

Approved December 4th, 1882.
Attest:   JOHN R. BRENNAN, President.
A. C. TUCKER, Clerk.

—New novelties for the ladies at the Montana Store of Felix Poznansky.

Copyright © 2023 Newspapers.com. All Rights Reserved.

POWERED BY Newspapers™

Exhibit 35
Page 123

# Exhibit 36

Exhibit 36
Page 124

Newspapers
by ancestry
https://www.newspapers.com/image/162705336

Arizona Daily Star (Tucson, Arizona) · Sat, May 19, 1883 · Page 3
Downloaded on Jul 12, 2023



Copyright © 2023 Newspapers.com. All Rights Reserved.



Exhibit 36
Page125

Case 8:23-cv-01798-CJC-ADS Document 20-2 Filed 11/03/23 Page 126 of 157 Page ID
#:362

Newspapers
by ancestry
https://www.newspapers.com/image/162705336

Arizona Daily Star (Tucson, Arizona) · Sat, May 19, 1883 · Page 3

Downloaded on Jul 12, 2023

exceeding six months or be punished by both such fine and imprisonment.

Sec. 15. If any person shall within the corporate limits of the city of Tucson carry concealed upon his person any gun, pistol, bowie-knife, dagger or other deadly weapon, he shall be deemed guilty of having committed a misdemeanor and upon conviction thereof shall be fined in any sum not exceeding three hundred dollars or be imprisoned in the County or City jail for any period of time not exceeding six months or be punished by both such fine and imprisonment; provided that this section shall not be construed to apply to sheriffs, constables or police officers, when exercising their legitimate duties.

Sec. 16. If any saloon, gambling house, house of prostitution, dance house keeper or proprietor of any place wherein intoxicating or

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers
POWERED BY

Exhibit 36
Page 126

# Exhibit 37

Exhibit 37
Page 127

The Galveston Daily News (Galveston, Texas) · Thu, Aug 28, 1873 · Page 4

https://www.newspapers.com/image/24064306

Printed on Jun 25, 2023

# AN ORDINANCE (No. 18)

Regulating the keeping and bearing of deadly weapons.

*Be it ordained by the City Council of the city of Galveston:*

SECTION 1. That any person carrying on or about his person, saddle or vehicle, within the corporate limits of the city of Galveston, any pistol, dirk, dagger, sling-shot, sword-cane, spear, brass-knuckles, bowie-knife, or any other kind of knife manufactured or sold for the purposes of offense or defense, or carried for purposes of offense or defense, unless he has reasonable grounds for fearing an unlawful attack on his person, and that such attack shall be immediate and pressing, or unless having or carrying the same on or about his person for the lawful defense of the state of Texas or the city of Galveston, as a militiaman in actual service, or as a peace officer or policeman, shall be fined in a sum of not less than twenty-five dollars nor more than one hundred dollars, and in default of payment thereof shall be confined in the jail for a period not less than ten days nor more than three months, and whilst so confined shall be required to work on the streets of said city, or any public work under the control of the City Council for the period of such confinement ; *provided*, that this section shall not be so construed as to prohibit any person from keeping or bearing arms on his or her premises, or at his or her place of business, nor to prohibit sheriffs, their deputies, or other revenue officers, or other civil officers, from keeping or bearing arms whilst engaged in the discharge of their official duties, nor to prohibit persons traveling through the city of Galveston from keeping or carrying arms with their baggage.

SEC. 2. That any person charged under the first section of this act, who may offer to prove, by way of defense, that he was in danger of an attack on his person, or unlawful interference with his property, shall be required to show that such danger was immediate and pressing, and was of such a nature as to alarm a person of ordinary courage, and that such weapon so carried was borne openly and not concealed beneath the clothing; and if it shall appear that this danger had its origin in a difficulty first commenced by the accused, it shall not be considered as a legal defense.

SEC. 3. That this ordinance shall take effect and be of force on and after its due publication as prescribed by the city charter.

Approved August 19th, 1873.

C. W. HURLEY, Mayor.

Attest:

C. C. ALLEN, Clerk.          aug20D10t

# AN ORDINANCE (No. 19)

Copyright © 2023 Newspapers.com. All Rights Reserved.

Exhibit 37
Page 128

# Exhibit 38

Exhibit 38
Page 129

Newspapers
by ancestry
https://www.newspapers.com/image/604763466

The Daily Times (Chattanooga, Tennessee) · Thu, Apr 24, 1873 · Page 1

Printed on Oct 19, 2023



# An Ordinance to Prevent the Carrying of Arms.

**SECTION 1.** *Be it Ordained by the Board of Mayor and Aldermen of the City of Chattanooga,* That if any person shall, within the corporate limits of the City of Chattanooga, either publicly or privately carry any dirk, sword-cane, Spanish stiletto, belt or pocket pistol, Bowie knife or any large knife of like form or size to a Bowie knife, brass knuckles or slung shot, he shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than fifty dollars and confined in the city jail not less than thirty days.

**SEC. 2.** *Be it further Ordained,* That it be and is hereby made the duty of the Marshal and police force to arrest any and all parties found carrying any weapon in violation of the above section, and any policeman who shall fail or refuse to strictly enforce this ordinance by refusing or neglecting to arrest any party known by him to be in violation of this ordinance, shall be at once dismissed from the police force.

**SEC. 3.** *Be it further Ordained,* That all ordinances or parts of ordinances in conflict with any of the provisions of this ordinance be and the same are hereby repealed, and that this ordinance take effect from and after its passage.

Approved April 9th, 1873.

E. M. WIGHT, Mayor.

W. T. CATE, Recorder.

Copyright © 2023 Newspapers.com. All Rights Reserved.



Exhibit 38
Page 130

# Exhibit 39

Exhibit 39
Page 139

Newspapers™
by ancestry

https://www.newspapers.com/image/730567433

Nebraska City News (Nebraska City, Nebraska) · Wed, Jul 7, 1869 · Page 3

Printed on Jun 25, 2023

## AN ORDINANCE

### Prohibiting the carrying of Fire Arms and Concealed Weapons.

SECTION 1.   *Be it ordained by the Common Council of Nebraska City,* That it shall be, and it is hereby declared to be unlawful for any person to carry openly or concealed, any musket, rifle, shot gun, pistol, sabre, sword, bowie knife, dirk, sword cane billy, slung shot, brass or other metalic knuckles or any other dangerous or deadly weapons, within the corporate limits of Nebraska City, Neb.; *Provided,* that nothing herein contained shall prevent the carrying of such weapon by a civil or military officer, or by a soldier in the discharge of his duty, nor by any other person for mere purposes of transportation from one place to another.

SEC. 2.   Upon complaint before the Mayor that an offence in violation of this ordinance has been committed, he shall inquire into the circumstances of the case to determine whether the charge is well founded, and exercise his own discretion as to the dismissal thereof.   If the complaint shall be made good and the party arrested shall be adjudged guilty by the Mayor, he shall fine the offender not less than twenty dollars and not more than one hundred with the costs of prosecution.

SEC. 3.   All funds assessed shall collected under this ordinance shall be paid to the Treasurer, to be credited to the Police fund.

SEC. 4.   This ordinance shall take effect and be in force from and after its passage, approval and publication.

Attest:

W. E. DILLON,
Mayor.

J. DAN. LAUER,
City Recorder.

— At a regular canclave of Mount

Copyright © 2023 Newspapers.com. All Rights Reserved.

POWERED BY
Newspapers™
.com

Exhibit 39
Page 140

# Exhibit 40

Exhibit 40
Page 133

The State Journal (Jefferson City, Missouri) · Fri, Apr 12, 1878 · Page 2

Newspapers by ancestry
https://www.newspapers.com/image/68084065
Printed on Jun 25, 2023

Copyright © 2023 Newspapers.com. All Rights Reserved.



Exhibit 40
Page 134

The State Journal (Jefferson City, Missouri)  ·  Fri, Apr 12, 1878  ·  Page 2

https://www.newspapers.com/image/68084065

Printed on Jun 25, 2023



Copyright © 2023 Newspapers.com. All Rights Reserved.



Exhibit 40

Page 135

# Exhibit 41

Exhibit 41
Page 136

Newspapers
by Ancestry

The Independent Gazetteer (Philadelphia, Pennsylvania) · Sat, Apr 20, 1793 · Page 1

https://www.newspapers.com/image/39937952

Printed on Oct 29, 2023



Copyright © 2023 Newspapers.com. All Rights Reserved.



Exhibit 41
Page 137

The Independent Gazetteer (Philadelphia, Pennsylvania) · Sat, Apr 20, 1793 · Page 2
https://www.newspapers.com/image/39937953
Printed on Oct 29, 2023



Copyright © 2023 Newspapers.com. All Rights Reserved.



Exhibit 41
Page 138

The Independent Gazetteer (Philadelphia, Pennsylvania) · Sat, Apr 20, 1793 · Page 4
https://www.newspapers.com/image/39937955
Printed on Oct 29, 2023



Copyright © 2023 Newspapers.com. All Rights Reserved.

Exhibit 41
Page 139

Case 8:23-cv-01798-CJC-ADS   Document 20-2   Filed 11/03/23   Page 140 of 157   Page ID
#:376

https://www.newspapers.com/image/39937955

Printed on Oct 29, 2023

above three hours under arms at any one time, without allowing them a proper time to refresh themselves.

Article XVI. No company or regiment shall meet at a tavern on any of the days of exercise, nor shall march to any tavern before they are discharged, and any person who shall bring any kind of spirituous liquors to such place of training, shall forfeit such liquors so brought, for the use of the poor belonging to the ward, district, or township, where such offender lives.

Article XVII. All fines that shall be incurred by any breach of these rules, shall be paid into the hands of the Inspectors of the brigades to which the offenders belong, or to such person or persons as he shall appoint

Copyright © 2023 Newspapers.com. All Rights Reserved.

Exhibit 41
Page 140

# Exhibit 42

Exhibit 42
Page 141

https://www.newspapers.com/image/895126985

Printed on Jun 25, 2023

[CONCLUDED NEXT WEEK.]

## LAWS OF THE
## STATE OF MISSISSIPPI
[PUBLISHED BY AUTHORITY.]

AN ACT to prevent the carrying of concealed weapons, and for other purposes.

SECTION 1. Be it enacted by the Legislature of the State of Mississippi, That any person, not being threatened with, or having good and sufficient reason to apprehend an attack, or traveling (not being a tramp), or setting out on a journey, or peace officer, or deputies in discharge of their duties, who carries concealed in whole or in part, any bowie knife, pistol, brass knuckles, sling shot or other deadly weapon of like kind or description, shall be deemed guilty of a misdemeanor, and on conviction, shall be punished for the first offence by a fine of not less than five dollars nor more than one hundred dollars, and in the event the fine and cost are not paid shall be required to work at hard labor under the direction of the board of supervisors or of the court, not exceeding two months, and for the second or any subsequent offense, shall, on conviction, be fined not less than fifty nor more than two hundred dollars, and if the fine and costs are not paid, be condemned to hard labor not exceeding six months under the direction of the board of supervisors, or of the court. That in any proceeding under this section, it shall not be necessary for the State to allege or prove any of the exceptions herein contained, but the burden of proving such exception shall be on the accused.

SEC. 2. Be it further enacted, That it shall not be lawful for any person to sell to any minor or person intoxicated, knowing him to be a minor or in a state of intoxication, any weapon of the kind or description in the first section of this act described, or any pistol cartridge, and on conviction shall be punished by a fine not exceeding two hundred dollars, and if the fine and costs are not paid, be condemned to hard labor under the direction of the board of supervisors or of the court, not exceeding six months.

SEC. 3. Be it further enacted, That any father, who shall knowingly suffer or permit any minor son under the age of sixteen years, to carry concealed, in whole or in part, any weapon of the kind or description in the first section of this act described, shall be deemed guilty of a misdemeanor, and on conviction, shall be fined not less than twenty dollars, nor more than two hundred dollars, and if the fine and costs are not paid, shall be condemned to hard labor under the direction of the board of supervisors, or of the court.

SEC. 4. Be it further enacted, That any student of any university, college or school, who shall carry concealed, in whole or in part, any weapon of the kind or description in the first section of this act described, or any teacher, instructor, or professor who shall, knowingly, suffer or permit any such weapon to be carried by any student or pupil, shall be deemed guilty of a misdemeanor, and on conviction, be fined not exceeding three hundred dollars, and if the fine and costs are not paid, condemned to hard labor under the direction of the board of supervisors or of the court.

SEC. 5. Be it further enacted, That each justice of the peace before whom a conviction is had, shall, in addition to the costs now allowed by law, be entitled to a tax fee of two dollars and a half.

SEC. 6. Be it further enacted, That immediately after the passage of this act, the Secretary of State shall transmit a copy to each circuit judge in the State, who shall cause the same to be read in open court on the day for the calling of the State docket of the court.

SEC. 7. Be it further enacted, That this act take effect from and after its passage.

APPROVED, February 28, 1878.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Exhibit 42
Page 142

# Exhibit 43

Exhibit 43
Page 143

The Lyons Republican (Lyons, Kansas) · Thu, Sep 10, 1891 · Page 4

https://www.newspapers.com/image/427118938

Printed on Jun 25, 2023



# ORDINANCE NO. 179.

[First published in the Lyons REPUBLICAN, September 10th, 1891.]

An Ordinance relating to carrying concealed weapons, and repealing Ordinance No. 70.

Be it ordained by the Mayor and Councilmen of the City of Lyons, Kansas.

Sec. 1. Any person who is not engaged in any legitimate business, any person under the influence of intoxicating drink, who shall be found within the limits of the City of Lyons, carrying on his person a pistol, bowie knife, dirk or other deadly weapon, shall be subject to arrest upon charge of misdemeanor, and upon conviction shall be fined in a sum not exceeding fifty dollars, or by imprisonment in the city jail not exceeding one month, or by both such fine and imprisonment.

Sec. 2. Ordinance number seventy of the ordinances of the City of Lyons is hereby repealed.

Sec. 3. This Ordinance shall take effect after its publication in the Lyons Republican.

Passed and approved, Sept. 7th, 1891.

[seal]                    E. A. RICHARDS, Mayor.

Attest:—A. E. Magoffin, City Clerk.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Exhibit 43
Page 144

# Exhibit 44

Exhibit 44
Page 145

Newspapers
by ancestry
https://www.newspapers.com/image/604120328

K County Democrat (Blackwell, Oklahoma) · Thu, Aug 23, 1894 · Page 8

Printed on Jun 25, 2023

## TOWN ORDINANCE NO. 21.

An Ordinance regulating and prohibiting the carrying of deadly weapons:

Be it ordained by the Board of Trustees of the town of Blackwell:

SECTION 1:—It shall be unlawful for any person within the corporate limits of the town of Blackwell to carry concealed on or about his person, saddle, or saddle bags, any pistol, revolver, boule knife, dirk, dagger, slung shot, billy, metal knucks, sand bag, or any other kind of knife or instrument manufactured or sold for the purpose of defense except as in this ordinance provided.

SECTION 2:—It shall be unlawful for any person in the corporate limits of the town of Blackwell to carry upon or about his person any pistol, revolver, boule knife, dirk knife, loaded cane, billy, metal knuckles, or any other offensive or defensive weapon except as in this ordinance provided.

SECTION: 3—Public officers, while in the discharge of their duties, or while going from their homes to their place of duty, or returning therefrom, shall be permitted to carry arms, but at no other time and under no other circumstances. Provided, however, that if any public officer be found carrying such arms while under the influence of intoxicating drinks, he shall be deemed guilty of a violation of this ordinance as though he were a private person.

SECTION 4:—Persons shall be permitted to carry shotguns or rifles for the purpose of hunting, having them repaired, or for killing annimals, or for the purpose of using the same in public muster or military drills, or while traveling or moving from one place to another, and not otherwise.

SECTION 5:—It shall be unlawful for any person to point any pistol, revolver, shot gun or rifle, whether loaded or not, at any other person or persons either in anger or otherwise.

SECTION 6:—Any person violating the provisions of any of the forgoing sections shall upon conviction, be adjudged guilty of a misdemeanor and be punished by a fine of not less than five dollars and costs, nor more than ten dollars and costs, and shall be committed until said fine and costs are paid.

SECTION 7:—This ordinance shall be in full force and effect ten days after its publication in the K County DEMOCRAT.

Passed August 7th 1894.

John R. MAY, President.

Attest: BURL W. HOLT, Town Clerk.

Per T. M. JONES, Deputy Town Clerk.

[First published in the K County DEMOCRAT, August 9th 1894.]

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers
POWERED BY .com

Exhibit 44
Page 146

# Exhibit 45

Exhibit 45
Page 147



Owens lecture here before she leaves the Co.

AN ORDINANCE.—To prohibit intoxication, breach of the peace, carrying of deadly weapons, the use of obscene language, the discharge of fire arms, and to close places of amusement on Sunday, in the city of Wallace Kansas, and to repeal certain ordinances in said city.

Be it ordained by the Mayor and Councilmen of the City of Wallace, in the State of Kansas.

Sec. 1. If any person shall be drunk in any highway, street or in any public place or building, or if any person shall be drunk in his own house or private building or place disturbing his family or others, he shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not exceeding $25 or by imprisonment in the city jail for a period not exceeding 30 days.

Sec. 2. Any person who shall wilfully disturb the peace or quiet of any person, family or neighborhood, shall upon conviction thereof be fined in a sum not exceeding $100, or by imprisonment in the city jail not exceeding 3 months.

Sec. 3. Any person who shall, while intoxicated be found carrying on his person, a pistol, bowie-knife, dirk or other deadly weapon, shall upon conviction be fined in a sum not exceeding $100, or by imprisonment in the city jail not exceeding 3 months.

Sec. 4. Any person who shall carry concealed or otherwise upon his person, any pistol, bowie knife, dirk or deadly weapon, shall upon conviction be fined in any sum not exceeding $100, or by imprisonment in the city jail not exceeding 3 months. Provided however, that this shall not apply to any peace officer, of the State, County or Cities of the State, and provided further that if it shall appear to the court trying offences under this section, that the accused was engaged in any legitimate business or calling, that would necessitate the carrying of any such weapon, such person shall be acquitted.

Sec. 5. Any person who shall discharge any fire arms, rockets, powder firework torpedoes or other dangerous or combustable material, upon any streets, lots, grounds, alleys or in the vicinity of any building, shall upon conviction be fined in any sum not exceeding $100, or by imprisonment in the city jail not exceeding 3 months. Provided however, that it shall appear to the court, trying offences under this section, that the offence charged was committed by the accused in defence of his person or property or in celebrating any national holiday, public event, and that the same was done in such a manner as not to endanger the lives or property of another, such person shall be acquitted.

Sec. 6. Any person who shall speak, utter or use any indecent language in any public place in the presence and hearing of any female shall upon conviction be fined in any sum not exceeding $100, or by imprisonment in the city jail not exceeding 3 months.

Sec. 7. Any person who shall on the first day of the week, commonly called Sunday, keep open any billiard room, ball or pin ally, skating rink, house, ground or other place of amusement, shall upon conviction be fined in any sum not exceeding $100, or by imprisonment, in the city jail not exceeding 3 months.

Sec. 8. Whoever shall aid assist, or counsel another to commit any of the offenses prohibited by this ordinance shall be deemed guilty of the same offense as the principal and punished accordingly notwithstanding, the principal may not have been charged with the offense.

Sec. 9. All fines and costs imposed by the Police Judge under this ordinance shall be by commitment of the accused to the city jail until the same is paid and the offenses herein denominated and prohibited shall extend to all such acts committed within the corporate limits of the city of Wallace.

Sec. 10. That an ordinance entitled, an ordinance relating to the carrying of deadly weapons, passed Nov. 26th, 1887, and published Dec. 3rd, 1887, and an ordinance, without title passed Nov. 17th, 1887, published Nov. 19, 1887, are hereby repealed, and this ordinance shall take effect and be in force from and after its publication in the Wallace County Register.

Passed and approved Dec. 22nd, 1887.
Attest: GEO. W. EWEN, A. B. CHRYSLER,
Clerk Protem.     Pres. of Council.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Exhibit 45
Page 148

# Exhibit 46

Exhibit 46
Page 149

Newspapers
by ancestry

https://www.newspapers.com/image/587532621

Dade County Advocate (Greenfield, Missouri) · Thu, Jan 21, 1886 · Page 4

Printed on Jun 25, 2023



### Ordinance No. 35.

*Additional Penal Ordinance—Deadly or Dangerous Weapons—Malicious Mischief—Shop-lifting.*

Be it ordained by the Board of Aldmen of the City of Greenfield as follows:

SECTION I. If any person shall carry concealed upon or about his person, any deadly or dangerous weapon, or shall go into any church or place where people have assembled for religious worship, or into any school room or place where people are assembled for educational, literary or social purposes, or to any election precinct on any election day (whether National, State School or Municipal), or into any Court room during the setting of Court, or into any other public assemblage of persons met for any lawful purpose other than for Militia drill or meetings called under the militia laws of the state, having upon or about his person any kind of fire-arms, bowie-knife, dirk, dagger, slung-shot, or other deadly weapon, or shall in the presence of one or more persons exhibit any such weapon in a rude, angry and threatening manner, or shall have or carry any such weapon upon or about his person when intoxicated, or under the influence of intoxicating drinks, or shall directly or indirectly sell or deliver, loan or barter to any minor, any such weapon, without the consent of the parent or guardian of such minor (within the limits of the City of Greenfield) he shall upon conviction thereof be fined not less than Fifty Dollars, nor more than Two Hundred Dollars, or be imprisoned in the County Jail not longer than six months, or may be punished by both such fine and imprisonment.

SECTION II. Every person who shall wilfully and maliciously injure or remove any saddle, bridle, halter, hitch-rein, buggy or wagon harness, the personal property of another, or who shall wilfully and maliciously remove any tap or nut from the axle of any buggy, wagon or other vehicle, or otherwise injure the same, the personal property of another, or who shall wilfully or maliciously remove, deface or otherwise injure anything which is the personal property of another, and without the owners consent shall conceal, hide or do any act with the personal property of another, wilfully and maliciously which is calculated to annoy, damage or injure another or his property, shall upon conviction thereof be fined therefor in any sum not exceeding Fifty Dollars, or may be imprisoned in the County Jail not longer than six months, or may be punished by both such fine and imprisonment.

SECTION III. Every person who shall wilfully conceal about his person any article of personal property belonging to another, with intent to convert the same to his own use, or shall wilfully carry away from any dwelling house, shop or store, or from any public house any personal property not his own, or shall be guilty of any petit thievery ordinarily termed "Shop-lifting" shall upon conviction thereof be fined in any sum not exceeding One Hundred Dollars, or shall be committed to the County Jail for any term not exceeding six months or may be punished by both such fine and imprisonment.

SECTION IV. This ordinance shall be in full force and effect from and after its passage.

Passed and approved January 4th 1886

WILL R. BOWLES, Mayor
W. R. McREYNOLDS,
President Board Aldermen.

ATTEST: SEYMOUR HOYT, City Clerk.

Copyright © 2023 Newspapers.com. All Rights Reserved.

Newspapers.com
POWERED BY

Exhibit 46
Page 150

# Exhibit 47

Exhibit 47
Page 151

The Brooklyn Union (Brooklyn, New York) · Thu, Aug 21, 1873 · Page 1

https://www.newspapers.com/image/541935131

Printed on Jun 25, 2023



Copyright © 2023 Newspapers.com. All Rights Reserved.



Exhibit 47

Page 152

Case 8:23-cv-01798-CJC-ADS   Document 20-2   Filed 11/03/23   Page 153 of 157   Page ID
#:389

https://www.newspapers.com/image/541935131

Printed on Jun 25, 2023



## BOARD OF HEALTH.

### SANITARY CODE.

#### ADOPTED JULY 15, 1873.

At a meeting of the Board of Health, for the city of Brooklyn, held at 66 Court street, on the 15th day of July, A. D., 1873.

Present—James Jourdan, the President of the Board of Health, Joseph C. Hutchinson, M. D., and J. R. Conkling, M. D., members of the said Board.

The said Board of Health by virtue of, and in pursuance of the authority conferred by section 9 of chapter 107 of the Laws of 1873, entitled " An act to establish a Board of Health in and for the city of Brooklyn, passed March 20, 1873," which said section declares that said Board shall possess within the city of Brooklyn, all the authority, and be charged with all the duties (unless otherwise provided for in this act) conferred or imposed upon the Metropolitan Board of Health, under an act entitled " An act to create a Metropolitan Sanitary District and Board of Health therein for the preservation of life and health, and to prevent the spread of disease," passed February twenty-sixth, eighteen hundred and sixty-six, chapter seventy-four, and also all the powers conferred by the amendments to said act, passed April nineteenth, eighteen hundred and sixty-six, and May twenty-fifth, eighteen hundred and sixty-seven, and also all the powers conferred by any act amendatory thereof, and also all the powers applicable to Brooklyn, conferred by an act for the regulation of tenement and lodging houses in the cities of New York and Brooklyn, passed May fourteenth, eighteen hundred and sixty-seven, and also all the powers conferred by an act to authorize the abatement and prevention of certain nuisances, deemed dangerous to the public health in the city of Brooklyn, passed April twenty-third, eighteen hundred and sixty-seven, and also all the authority, duty and powers, whether given by any law or by ordinance made thereunder heretofore (for the purpose of preserving or protecting life or health, or preventing disease) conferred upon or now belonging to or being exercised by the Board of Health of the city of Brooklyn, are hereby exclusively conferred upon, and shall hereafter be exclusively exercised by the aforesaid Board of Health of the city of Brooklyn, the members and officers thereof," do hereby direct, order, ordain and enact as follows :

##### DEFINITIONS OF TERMS.

SECTION 1. That the terms " Board," " this Board," and " said Board," shall be held to mean the " Board of Health of the City of Brooklyn ;" that the word " Department" wherever used herein, shall be held to mean the " Board of Health of the City of Brooklyn ;" that the words " person," " owner," " tenant," " lessee," " occupant," " contractor," " party," " manager," " Board," and " officer," shall respectively be held to apply to and include, both jointly and severally, each and all owners, part-owners, tenants, lessees, occupants, managers, contractors, parties in interest, persons, officers, boards and corporations who may sustain the relations, or may be in like position or any one or more thereof referred to in any ordinance or regulation ; that every order, ordinance or regulation declared applicable to the built-up portion of Brooklyn, sh ll, so far as the subject-matter thereof is applicable (save as to interments), and so far as this Board has authority to make the same, be held to include and apply to the built-up portions of said city ; that every word or phrase anywhere herein defined shall be held to include the same sense wherever used ; that the words " city," or" this city," or " said city," whenever used herein, shall be held to mean the city of Brooklyn ; that the word " regulations" shall be held to include " special regulation," (which latter will be from time t time issued, and will contain more detailed provisions that can be herein con-

Copyright © 2023 Newspapers.com. All Rights Reserved.

Exhibit 47
Page 153

The Brooklyn Union (Brooklyn, New York) · Thu, Aug 21, 1873 · Page 1

Newspapers
by ancestry
https://www.newspapers.com/image/541935131

Printed on Jun 25, 2023

to a permit of the regulations of this Board, or fire any gun or other firearm or rock-blast in any public street, alley, or place within the built-up portions of said city, where any human life may be imperilled.

SEC. 174. That no person shall sell, loan, or give to, or allow to be taken by any other person, any fire-arm, or other deadly or dangerous weapon, when there shall be any reason for such first named person to think or believe that any danger to life may illegally result from the giving, loaning, selling, or from the use of such arm or weapon.

SEC. 175. That no large, or church bell shall be rung or tolled at any funeral in said city without a permit therefor from this Board, nor shall such bell be rung or tolled at any other time therein to the prejudice or peril of the life or health of any human being.

Copyright © 2023 Newspapers.com. All Rights Reserved.

POWERED BY
Newspapers.com™

Exhibit 47
Page 154

# Exhibit 48

Exhibit 48
Page 155

# CONCEALED WEAPONS.

## Judge Brannon's Decision on This Subject.

### HIS CONCLUSIONS VERY SWEEPING.

#### The Law Recognizes No Difference in Persons and All Should be Prohibited from This Practice.

Buckhannon, W. Va., October 12.—At the late term of the Circuit Court of Upshur county, a young man by the name of Long was tried on an indictment for carrying a pistol contrary to the act of 1882. The evidence for the prosecution was that Long was seen going along the public highway with a revolver in his hand.

The defense proved that Long was a peaceable citizen of good moral character, and that he carried the weapon because that in passing along that road a short time previously, he had been pursued by a panther, and was alarmed for his safety.

**The Judge Ruled Out**

that part of the evidence relating to the danger of a panther, as an animal was not contemplated by the act of the Legislature which refers to the danger of bodily harm from some person as justifying the carrying of such weapons embraced in the law.

A verdict of guilty was rendered by the jury, and in the motion to arrest judgment and set aside the verdict, an able and elaborate argument was made by the prisoner's counsel. The ground set forth was the unconstitutionality of the law—first conflicting with the Second and Fourteenth amendments to the federal constitution, and also conflicting with our State constitution, which

**Prohibits Class**

legislation, it being contended that the feature which allows persons of good character and peaceable habits, under certain contingencies, to be exempt from the penalties of the law, is legislation in favor of a class.

The decision rendered by Judge Henry Brannon, who presided sustained the law. As the law is one which has universally met with public favor, and one that has evoked eloquent eulogies from the bench in various parts of the State, your correspondent called upon Judge Brannon with a request that a copy of his decision be furnished for publication. He with his Honor politely granted. It is clear, concise, and will doubtless be

**Received as Conclusive.**

I herein append it.

The habit of carrying deadly weapons had become so prevalent and hurtful, that the legislature, regarding the old statute insufficient, passed an act in 1882, forbidding a person to carry about his person any revolver or other pistol, dirk, bowie-knife, razor, slung shot, billy, metallic or other false knuckles, or any other dangerous or deadly weapon of like kind or character.

In this case it is urged that this act is void, because in violation of the Second Amendment of the Federal Constitution, which provides that "a well regulated militia being necessary to the security of a free State, the right of the people to keep and bear arms shall not be infringed," and also because it grants the right to carry weapons for self defense only to persons who are quiet and peaceable citizens of good character and standing, and thus

**Violates the Fundamental Principle**

that all citizens stand equal before the law; and violates that provision of the Fourteenth amendment prohibiting States from passing "any law which shall abridge the privileges or immunities of citizens, or deny to any person within their jurisdiction the equal protection of the laws."

It is a very grave act for a court to overthrow and defeat an act of the Legislature, and should be done only when its unconstitutionality is manifest. Where the repugnance to the Constitution is undoubted, the judge must yield to that high duty of respecting that higest law, the will of the people expressed in the Constitution, rather than the will of the Legislature; but never where he is doubtful, and all doubts go in favor of the act. All courts hold this doctrine. Bridges v. Shallcross, 6 W. Va.

Is it the right of the citizen to wear

the immediate danger his allows a peaceable citizen of good character to carry weapons These exceptions in the act are useful and necessary; but who will say that it is useful or necessary privilege to the citizen to go abroad through the land wearing these deadly weapons?

But, it is argued here that the act discriminates between citizens, by allowing persons of good character the right of self defense, while denying it to others. It does not deny the right of self-defense, for if a person of the worst character were assailed and in such danger as warrant the exercise of the right of self defense and with his pistol were to slay his adversary, he could plead self defense on trial for murder; whil it he might be indicted for carrying a pistol beforehand. It is not a denial of the plea of self defense; it only denies to bad dangerous persons the right to arm before hand and carry weapons, because they are a danger to the place, whereas the

**Law-Abiding are Not.**

The power of regulation visited in the Legislature for police purposes and the maintenance of morals, law and order for the good of society are necessarily wide, even though it may seem to work discrimination between persons.

The right to earn a livelihood is a great right; yet no once can practice law, keep a hotel or sell liquor without proving a good moral character. Such has been the law for years, and no one has questioned its validity. A doctor must now prove a good character to practice. These powers of apparent discrimination must exist ex necessitate rei, from the necessity of this case. Liberty to the citizen is a great attribute and deserving of all protection; but it must be liberty regulated by law and consistent with the benefits of organized civil society, not mere self-willed, arbitrary license. But suppose this feature limiting the right to carry weapons for self-defense to persons of character were invalid, it should not destroy the whole act. A court which should be of opinion that this particular feature is void, would disregard it by allowing the party to prove the danger and ending over him, and that

**He Carried the Weapon**

in self-defense, and dispensing with proof of character. The act admits the main feature, the right to carry for self-defense; but adds the condition of good character but this latter provision is not so intimately connected with the self defense provision that it may not be separated from it and the self defense clause stand independent of it and be executed without it. Cooley says: "A statute may contain some unconstitutional provisions, and yet the same act may contain other useful and salutary provisions not obnoxious to any just constitutional exception. It would be unconstitutional with all just principles of constitutional law to adjudice the enactment void, because they are associated in the same act but not connected with or dependent on others which are unconstitutional. Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void, unless all the provisions are connected in subject matter dependent on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the Legislature would have passed

**The One Without the Other.**

The constitutional and unconstitutional provisions may even be in the same section, and yet be perfectly distinct and separable, so that the first may stand through the last 'fall. The point is not whether they are contained in the same section; for the distribution into sections is purely artificial, but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained."

The Fourteenth Amendment does not apply. The right to carry the weapon prohibited by this act is not a "privilege" or "immunity" within its meaning, nor does it deny the equal protection of the law. It is likely not designed to apply to the right to bear arms, for the other amendment applies to that subject, and there is no need for this as to this subject. It has other objects in view a discussion of which would make this opinion too long but if it

**Could be at All Applied**

to this subject, it would not grant the right to bear arms such as those prohibited by this act, and the remarks above would answer this point.

Exhibit 48
Page 156

abroad the small and insidious arms prohibited by this act' Or does the second amendment only guarantee the right to bear large arms, such as are useful in war and in defense of liberty against arbitrary power? Clearly the latter only. In days of tyranny long ago, when non archical power sought supreme way and to trample down freedom, history tells us that one of its favorite methods was the

### Disarming of the People

and wrenching from their hands and homes those arms useful and effective in defense of liberty and dangerous only to tyrants. In this free country this amendment was incorporated to avoid the dangers of the past. Another reason for its adoption was this: Standing armies had been engines of oppression in the past, and American sentiment was opposed to them, and as a substitute reliance was placed on the citizen militia, and to render it efficient it was desirable to train it to the use of arms common in war. The intimate connection in the amendment of this provision about learning arms with the language, "a well regulated militia being necessary to the security of a free state," shows that military efficiency and popular liberty were in the mind of its draftsmen rather than individual privilege. It intended, it defends individual privilege to save the right of the citizen to keep at his home and premises arms ordinarily used in war, and has no reference to small weapons which may be hidden in the pocket and first seen when drawn to do their deadly work. The lives of the people and the public peace are the highest objects of the protection of the law, and this act has

### These High Objects,

in view. The pistol, the bowie-knife, the stiletto, the slung-shot, the billy and the knuckles are the weapons of the ruffian and law breaker, are used in the riot or affray, are dangerous in moments of anger or intoxication, and from them a vast amount of murder, bodily injury and family distress arise, and from them many a bitter tear has flowed. Certainly it was never intended by the constitution to prohibit the Legislature from protecting the lives of the people and the public peace from their greatest foes; it was not intended to withhold the power to regulate within the bounds of prudence and usefulness the bearing of these weapons. It certainly cannot be converted into a license to the evil disposed to make their persons walking arsenals to run rampant over the peace of the State, and disarm the Legislature of power to regulate or check it. Such a construction would make the Constitution defend lawlessness, tumult and anarchy, and sacrifice law, order and public security. I cannot yield to this dangerous construction. The construction of law must be reasonable. The act is wise and salutary, is doing good in this State, and the courts

### Should Sustain It.

The great law writer Bishop, in his work on statutory crimes, sustains this view. Speaking of this clause in the Federal Constitution, he says:

"As to its interpretation, if we look at the question in the light of judicial reason, without the aid of specific authority, we shall be led to the conclusion that the provision protects only the right to 'keep' such 'arms' as are used for purposes of war in distinction from those which are employed in quarrel, brawls and fights between maddened individuals, since such only are properly known by the name of "arms," and such only are adapted to promote "the security of a free State." In the manner the right to "bear arms re fers merely to the military way of using them, not to their use in bravado or affray In Georgia and Kentucky such acts have been held void, but in Arkansas, Alabama Tennessee and Pennsylvania, they have been sustained, and Bishop says the Arkansas doctrine is approved generally by American courts. Remember that this act recognizes the right to keep and carry a pistol about one's dwelling house or premises, carrying it from the

### Place of Purchase

home, and from home to a place of repair and back again, and only prohibits their carriage on the premises of others and in

Exhibit 48
Page 157