1   ROB BONTA
    Attorney General of California
2   MARK R. BECKINGTON
    R. MATTHEW WISE
3   Supervising Deputy Attorneys General
    TODD GRABARSKY
4   JANE REILLEY
    LISA PLANK
5   ROBERT L. MEYERHOFF
    Deputy Attorneys General
6   State Bar No. 298196
     300 South Spring Street, Suite 1702
7    Los Angeles, CA  90013-1230
     Telephone:  (213) 269-6177
8    Fax:  (916) 731-2144
     E-mail:  Robert.Meyerhoff@doj.ca.gov
9   *Attorneys for Rob Bonta, in his Official Capacity as*
    *Attorney General of the State of California*

10          IN THE UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13

| | |
|---|---|
| 14   **RENO MAY, an individual, et al.,** | Case Nos. 8:23-cv-01696 CJC (ADSx)<br>8:23-cv-01798 CJC (ADSx) |
| 15                              Plaintiffs, | |
| 16          **v.** | **DECLARATION OF PROF. ADAM WINKLER IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION** |
| 17   **ROBERT BONTA, in his official capacity as Attorney General of the State of California, and Does 1-10,** | |
| 18 | Date:            December 20, 2023 |
| 19                              Defendants. | Time:            1:30 p.m.<br>Courtroom:   9B<br>Judge:          Hon. Cormac J. Carney |
| 20 | |
| 21   **MARCO ANTONIO CARRALERO, an individual, et al.,** | |
| 22 | |
| 23                              Plaintiffs, | |
| 24          **v.** | |
| 25   **ROBERT BONTA, in his official capacity as Attorney General of California,** | |
| 26 | |
| 27                              Defendant. | |
| 28 | |

# DECLARATION OF PROF. ADAM WINKLER

I, Adam Winkler, declare under penalty of perjury that the following is true and correct:

1.    I have been asked to provide an expert opinion on the constitutionality of provisions of California's SB 2 restricting the carrying of firearms in establishments that sell intoxicating liquor for consumption on premises, Cal. Penal Code § 26230(a)(9); licensed public gatherings, Cal. Penal Code § 26230(a)(10); places where gambling or gaming occurs, Cal. Penal Code § 26230(a)(15); and stadiums and sports areas, Cal. Penal Code § 26230(a)(16).

2.    This declaration is based on my own personal knowledge and experience, and if I am called to testify as a witness, I could and would testify competently to the truth of the matters discussed in this declaration.

## BACKGROUND AND QUALIFICATIONS

3.    I am the Connell Professor of Law at the University of California Los Angeles School of Law ("UCLA").  A true and correct copy of my curriculum vitae is attached as **Exhibit 1** to this declaration.

4.    In 1990, I received my Bachelor of Science in Foreign Service degree from the Georgetown University School of Foreign Service.  In 1993, I received my Juris Doctor degree from the New York University School of Law.  In 1998, I received my Master of Arts degree in Political Science, specializing in American political development, from the University of California Los Angeles.

5.    I have been continuously employed as a professor at UCLA since July of 2002 and was awarded tenure and promoted to the rank of full professor in July of 2007.

6.    I have expertise in legal history and constitutional law, and have researched and written extensively about the right to keep and bear arms, the Second Amendment, and the constitutionality of gun regulations for over 17 years.

7.     My scholarship on the legal history and constitutionality of gun regulation has been cited in over 50 federal and state court opinions, including *Kanter v. Barr*, 919 F.3d 437, 457 (7th Cir. 2019) (Barrett, J., dissenting); *Heller v. District of Columbia*, 670 F.3d 1244, 1256 (D.C. Cir. 2011); *United States v. Booker*, 644 F.3d 12, 23 n.13 (1st Cir., 2011); *National Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185, 200 (5th Cir. 2012); *Ezell v. City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011); *United States v. Bena*, 664 F.3d 1180, 1183 (8th Cir. 2011); *United States v. Jimenez-Shilon*, 34 F.4th 1042 , 1048 (11th Cir. 2022); and *State v. Merritt*, 467 S.W.3d 808, 813 (Mo. 2015) (en banc).

## RETENTION AND COMPENSATION

8.     I am being compensated for services performed in the above-entitled case at an hourly rate of $700, with an hourly rate of $1,000 for appearances in court or at depositions. My compensation is not contingent on the results of my analysis or the substance of any testimony.

## BASIS FOR OPINION AND MATERIALS CONSIDERED

9.     The opinion I provide in this report is based on my review of the various documents filed in this lawsuit, and my education, expertise, and research in the field of constitutional and legal history.  The opinions contained herein are made pursuant to a reasonable degree of professional certainty.

## SUMMARY OF OPINIONS

10.     The expert opinions expressed in this declaration can be summarized as follows:

   a.     There is a long history and tradition of broad prohibitions on the carrying of weapons in places where the public congregates for social and commercial activity;

Declaration of Prof. Adam Winkler
(Case Nos. 8:23-cv-01696 and 8-23-cv-01798)

b.      There is a long history and tradition of restrictions on weapons in places of amusement and recreation;

c.      There is a long history and tradition of gun regulation to reduce the danger of mixing alcohol and firearms;

d.      Sensitive places restrictions barring weapons in places of public gathering have long been considered consistent with the constitutional right to bear arms.

## OPINIONS

**I.   THERE IS A LONG HISTORY AND TRADITION OF BROAD PROHIBITIONS ON THE CARRYING OF WEAPONS IN PLACES WHERE THE PUBLIC CONGREGATES FOR SOCIAL AND COMMERCIAL ACTIVITY.**

11.     There is also a long, well-established tradition in Anglo-American law of prohibiting weapons from places where the public gathers for social and business activity. Dating back at least to 1328 and the Statute of Northampton, the right to bear arms has been subject to regulation in "fairs" and "markets," 2 Edw. 3 c. 3 (1328) (Eng.) (**Exhibit 2**). What made fairs and markets sensitive was that they were gathering places where people, often unknown to one another, came together for purposes of business and social interaction. Such assemblages of potential strangers create risks of misunderstanding and violence that are rarely present in the home, where the right to arms is at its most robust. As a result, the government's authority to prohibit firearms and other weapons from places of public gathering has long been recognized.

12.     The principle that weapons can be prohibited from places of public gathering found expression in early America in a manual for justices of the peace, which stated that peace officers had the authority to arrest those who "go or ride armed with unusual and offensive weapons . . . among any great Concourse of the

Declaration of Prof. Adam Winkler
(Case Nos. 8:23-cv-01696 and 8-23-cv-01798)

People." James Davis, *The Office and Authority of a Justice of the Peace* 13 (Newbern, James Davis 1774) (**Exhibit 3**).

13.     In the nineteenth century, as the nation's size and population grew, states increasingly enacted laws prohibiting firearms from places where the public gathered for social and commercial activity. This was due to numerous factors: urbanization, as more and more Americans began to reside in the close quarters of cities; the rise of a vibrant consumer market, including for firearms after the patenting of Samuel Colt's design for the revolver in 1857; and concerns about violence in the growing number of public places where people assembled. After the Civil War, the United States saw an explosion of public places in which people came together for social activity, entertainment, and commerce: ballrooms for socializing and dancing, circuses for amusement and fun, parks for recreation and leisure, race tracks for action and gaming. *See* Steve Sequin, *Elephants & Pink Lemonade: The Evolution of the Circus in 19th Century America*, 21 THE MIRROR – UNDERGRADUATE HISTORY JOURNAL 106, 118-120 (1992); Natalie Zacek, *Spectacle and Spectatorship at the Nineteenth Century American Racetrack*, 14 EUR. J. AMER. STUDIES 4 (2019).

14.     By adopting new laws restricting guns in these and other places, lawmakers were not innovating. They were maintaining a tradition of regulating weapons in new places of public gathering that had gained popularity.

15.     Sensitive places laws were part of a larger wave of nineteenth century gun regulation that swept the nation in response to gun violence. *See* Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 L. & Contemp. Probs. 55 (2017). A common feature of this nineteenth century regulation was the prohibition on firearms and other weapons in places where the public assembled for social and commercial interaction. The laws of numerous states prohibited guns in "any public gathering," "social gathering," "ballroom," and any "other public assembly of the people."

Declaration of Prof. Adam Winkler
(Case Nos. 8:23-cv-01696 and 8-23-cv-01798)

16.     In 1869, for example, Tennessee lawmakers prohibited the carrying of deadly weapons "concealed or otherwise" at elections or at "any fair, race course, or other public assembly of the people." 1869 Tenn. Pub. Acts 23 (**Exhibit 4**).

17.     Tennessee was hardly unique in its prohibition on weapons in places where the public congregated.  In 1870, Georgia lawmakers prohibited the carrying of deadly weapons "to any court of justice, or any election ground or precinct, or any place of public worship, or any other public gathering in this State, except militia muster-grounds." 1870 Ga. Laws 421 (**Exhibit 5**). Prohibited weapons included "any dirk bowie-knife, pistol or revolver, or any kind of deadly weapon." *Id.*

18.     Texas passed a law in 1870 that barred the carrying of firearms and other weapons in a wide range of sensitive places where the public gathered. The law prohibited bringing "[a] bowie knife, dirk or butcher knife, or firearms, whether known as a six-shooter, gun, or pistol of any kind" into a lengthy list of public gathering places: "any church or religious assembly, any school room or other place where persons are assembled for educational, literary or scientific purposes, or into a ballroom, social party or other social gathering composed of ladies and gentlemen, or to any election precinct on the day or days of any election, where any portion of the people of this State are collected to vote at any election, or to any other place where people may be assembled to muster or to perform any other public duty, or any other public assembly. . . ." 1870 Tex. Gen. Laws 63 (**Exhibit 6**). In adopting these provisions, Texas was not an outlier but one of a number of states that responded to gun violence by regulating guns in sensitive places where the public gathered.

19.     In 1879, Missouri lawmakers also enacted a sensitive places law. Missouri's law was nearly identical to Texas's regulation, prohibiting any person from carrying concealed "any deadly or dangerous weapon" into "any church or place where people have assembled for religious worship, or into any school room

Declaration of Prof. Adam Winkler
(Case Nos. 8:23-cv-01696 and 8-23-cv-01798)

1   or place where people are assembled for educational, literary or social purposes, or
2   to any election precinct on any election day, or into any court room during the
3   sitting of court, or into any other public assemblage of persons met for any lawful
4   purpose, other than for militia drill or meetings called under the militia law of this
5   state . . . ." 1879 Mo. Laws 224 (**Exhibit 7**).

6       20.    Oklahoma also adopted a broad sensitive places law that protected the
7   safety of people who congregated in certain public places. That state's 1890 law
8   prohibited the carrying of weapons "into any ball room, or to any social party or
9   social gathering," among other places. *Article 47: Concealed Weapons*, *in Statutes*
10  *of Oklahoma 1890*, at 495-96 (Will T. Little, L.G. Pitman, & R.J. Barker eds.,
11  1891) (**Exhibit 8**).

12      21.    These laws testify to the clear existence of a state's authority to
13  regulate and restrict dangerous weapons from places of public gathering and
14  assembly. Lawmakers did not simply single out one or two isolated places where
15  firearms would pose a unique danger but broadly recognized the threats posed by
16  firearms in nearly any place where people came together. The burden imposed by
17  these laws was significant: taken together, the numerous sensitive places identified
18  by the statutes made gun carrying unlawful in many areas of public life where law-
19  abiding citizens gathered.

20      22.    The breadth of the era's prohibition on firearms at "social gatherings"
21  or "any public assemblage of persons" was the not the result of poor or incautious
22  drafting. The laws were carefully enough drawn to include clear exceptions to their
23  carry prohibitions: Texas's 1870 law, for example, allowed the carrying of firearms
24  by "any person or persons whose duty it is to bear arms on such occasions in
25  discharge of duties imposed by law." 1870 Tex. Gen Laws 63. Peace officers and
26  militiamen carrying out their duties were therefore excluded from the prohibition on
27  firearms. Lawmakers did not exempt anyone seeking to defend themselves; only a
28  select group of people whose job it was to preserve the public safety and wellbeing

Declaration of Prof. Adam Winkler
(Case Nos. 8:23-cv-01696 and 8-23-cv-01798)

were allowed to carry in sensitive places.  Everyone else was to come to these places of public gathering unarmed.

## II.   THERE IS A LONG HISTORY AND TRADITION OF RESTRICTIONS ON WEAPONS IN PLACES OF AMUSEMENT AND RECREATION.

23.    Today in California, among the popular places where the public gathers for entertainment and amusement are sports arenas, stadiums, casinos and gaming establishments. These places of public amusement are similar to places frequently identified by nineteenth century gun regulations as too sensitive to allow weapons. Tennessee, for example, barred the carrying of firearms and other weapons, "concealed or otherwise," from "any fair, race course, or other public assembly of the people." 1869 Tenn. Pub. Acts 23.

24.    Oklahoma's 1890 law specified that weapons were prohibited from "any . . . place where persons are assembled . . .  for amusement," and "any circus, show or public exhibition of any kind." *Article 47: Concealed Weapons*, *in Statutes of Oklahoma 1890*, at 495-96 (Will T. Little, L.G. Pitman, & R.J. Barker eds., 1891) (emphasis added). Circuses, public exhibitions, and entertainment shows were places designed to provide amusement to large groups of people, potentially strangers, and the existence of weapons tended to undermine the recreational and social purposes of such events.

25.    The need to make sure that guns were kept out of places where the public congregated for purposes of amusement led lawmakers in Texas to amend that state's 1870 sensitive places legislation the very next year. In 1871, the state legislature added to the list of sensitive places where weapons were not allowed "any circus, show, or public exhibition of any kind." 1871 Tex. Gen. Laws 25 (**Exhibit 9**).

8

Declaration of Prof. Adam Winkler
(Case Nos. 8:23-cv-01696 and 8-23-cv-01798)

### III. THERE IS A LONG HISTORY AND TRADITION OF REGULATION TO REDUCE THE DANGER OF MIXING ALCOHOL AND FIREARMS.

26. One concern driving sensitive places regulation was the danger posed by intoxicated people carrying weapons in public. An intoxicated person has diminished capacity to exercise careful and deliberate judgment, which is especially worrisome when that person is carrying a deadly weapon. Nineteenth century lawmakers commonly – and correctly – viewed the risk of intoxicated people with weapons in public as a serious danger to the community that required a governmental response.

27. The threat that mixing alcohol and weapons posed was partially remedied by historic laws that prohibited intoxicated persons from carrying firearms in public altogether. For example, Kansas in 1867 barred the carrying of firearms by "any person under the influence of intoxicating drink." 1867 Kan. Sess. Laws 25 (**Exhibit 10**). In 1883, Missouri prohibited people from public carry "when intoxicated or under the influence of intoxicating drinks." 1883 Mo. Laws 76 (**Exhibit 11**). Wisconsin, in 1883, made it "unlawful for any person in a state of intoxication to go armed with a pistol or revolver." Sanborn, Arthur, et al., *Annotated Statutes of Wisconsin* 2226 (1889) (**Exhibit 12**). Mississippi prohibited the sale of "any weapon" to "any . . . person intoxicated." 1878 Miss. Laws 175 (**Exhibit 13**).

28. Other laws went further, prohibiting the carrying of weapons in places where alcohol was likely to be served. One reason "ballrooms," "social parties," and "social gatherings" were deemed sensitive was because of the likely presence of alcohol. In some instances, lawmakers went out of their way to make this assumption of access to alcohol in social gatherings explicit. While still a territory, New Mexico in 1853 prohibited "any person to enter said Ball or room adjoining said ball where Liquors are sold, or to remain in said balls or Fandangos with

Declaration of Prof. Adam Winkler
(Case Nos. 8:23-cv-01696 and 8-23-cv-01798)

firearms or other deadly weapons, whether they be shown or concealed upon their persons." 1852 N.M. Laws 68 (**Exhibit 14**).

29.    Further illustration of this concern and the lawmaking authority to address it through carry restrictions is offered by a New Orleans ordinance of 1879. Fearing the threats posed by gun carriers with impaired judgment due to alcohol consumption, the city made it unlawful "for any person to carry a dangerous weapon, concealed or otherwise, into any . . . tavern." 1879 New Orleans, La., Gen. Ordinances, tit. I, ch. 1, art. 1, *reprinted in Jewell's Digest of the City Ordinances Together with the Constitutional Provisions, Act of the General Assembly and Decisions of the Courts Relative to Government of the City of New Orleans* 1-2 (Edwin L. Jewell, ed., New Orleans, L. Graham & Son 1882) (**Exhibit 15**).

30.    San Antonio, a commercial center, adopted a similar sensitive places restriction that barred any person from carrying "a bowie-knife, dirk, or butcher-knife or any fire arms or arms, whether known as six-shooter, gun or pistol of any kind," or any "brass-knuckles, slung shot, club, loaded or sword cane, or any other weapon of offence or defence" into "any bar-room, drinking saloon or any other place where people resort for business or amusement." *An Ordinance*, San Antonio Express, Dec. 23, 1870 (**Exhibit 16**).

31.    None of the laws prohibiting the carry of weapons into public gatherings or taverns provided exemptions for people who were not themselves consuming alcohol on the premises. Historically, state and municipal governments had the recognized authority to restrict carry in the place, regardless of any particular individual's decision to consume or abstain from alcohol. The premises themselves were off limits to the firearms of everyone except those with a specific legal duty to have them. The mere threat of intoxication from being at parties, social gatherings, or taverns was historically sufficient to justify the prohibition on firearms.

Declaration of Prof. Adam Winkler
(Case Nos. 8:23-cv-01696 and 8-23-cv-01798)

**IV.  SENSITIVE PLACES RESTRICTIONS BARRING WEAPONS IN PLACES OF PUBLIC GATHERING HAVE LONG BEEN CONSIDERED CONSISTENT WITH THE CONSTITUTIONAL RIGHT TO BEAR ARMS.**

32.    States that adopted sensitive places legislation typically also had protections in their state constitutions for the right to bear arms. For whatever controversies surrounded the meaning of the Second Amendment, the state constitutional guarantees clearly protected an individual right. Lawmakers who enacted sensitive places legislation were not defying the right to bear arms but adhering to a core tenet of it: they applied the historical tradition of regulatory authority to define sensitive places to apply to a new set of increasingly popular places of public gathering.  While firearms were valuable for self-defense, they were not appropriate to bring into many public establishments where people congregated.

33.    As far as I am aware, no court in the nineteenth century held sensitive places legislation to be unconstitutional under the Second Amendment or similar state constitutional guarantees. Nor is there any nineteenth century legal commentary of which I am aware that calls these sensitive places restrictions into constitutional question.

34.    Although laws restricting weapons in sensitive places were so widely accepted that there are few reported court cases involving legal challenges to such laws, Texas's sensitive places law was the subject of a lawsuit that made it to the state supreme court. *English v. State*, 35 Tex. 473 (1872), involved, among other things, a prosecution of William Daniels, who had attended a church service with a butcher knife.  Daniels was convicted and his lawyer argued that the sensitive places law violated the Second Amendment and the Texas Constitution's guarantee of the right to bear arms, which provided that "Every person shall have the right to keep and bear arms, in the lawful defence of himself or the State, under such regulations as the Legislature may prescribe." Tex. Const. of 1869, art. I, § 13. The Texas Supreme Court upheld the law and Daniels's conviction, writing that "it

1  appears to us little short of ridiculous, that any one should claim the right to carry

2  upon his person any of the mischievous devices inhibited by the statute, into a

3  peaceable public assembly, as, for instance into a church, a lecture room, a ball

4  room, or any other place where ladies and gentlemen are congregated together."

5  *English*, 35 Tex. at 478-79.

6      35.   The Texas Supreme Court in *English* also noted that Texas's sensitive

7  places law was not unique to that state: "This law is not peculiar to our own state,

8  nor is the necessity which justified the enactment (whatever may be said of us to the

9  contrary) peculiar to Texas. It is safe to say that almost, if not every one of the

10  states of this Union have a similar law upon their statute books, and, indeed, so far

11  as we have been able to examine them, they are more rigorous than the act under

12  consideration." *English*, 35 Tex. at 479.

13                              **CONCLUSION**

14      36.   The Second Amendment permits states to prohibit firearms from

15  sensitive places, including new places that were not themselves historically

16  restricted, so long as the burden on the right is comparable in effect and

17  justification.

18      37.   Among the places historically deemed sensitive, and in which firearms

19  were prohibited, were places where the public gathered for social activity,

20  commerce, and amusement, including establishments where alcohol was served.

21  Although the particular places where such activity took place in the nineteenth

22  century were not precisely the same places as where such activity takes place today,

23  they were deemed sensitive for similar reasons of public safety.

24      38.   Sensitive places restrictions have historically been understood as

25  consistent with constitutional protections for the individual right to bear arms.

26  / /

27  / /

28  / /

1    I declare under penalty of perjury under the laws of the United States of

2  America that the foregoing is true and correct.

3    Executed on October 30, 2023, at Los Angeles, CA 90029.

4

5

6    _____

7    Adam Winkler

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13

# Exhibit 1

Exhibit 1
Page 14

## ADAM WINKLER

Connell Professor of Law, UCLA School of Law
405 Hilgard Avenue, Los Angeles, CA 90095
(310) 463-2447/winkler@law.ucla.edu

### EDUCATION

* UNIVERSITY OF CALIFORNIA LOS ANGELES - M.A., 1998
    Political Science: American Political Development.
* NEW YORK UNIVERSITY SCHOOL OF LAW - J.D., 1993.  *Magna Cum Laude. Order of the Coif.*
    New York University Law Review, Book Review & Essay Editor.
    Law Teaching Award (for distinguished alumni in legal academia).
* GEORGETOWN UNIVERSITY SCHOOL OF FOREIGN SERVICE - B.S.F.S., 1990.  *Magna Cum Laude.*

### EMPLOYMENT

* UNIVERSITY OF CALIFORNIA LOS ANGELES SCHOOL OF LAW
    *Connell Professor of Law 2020*-current.
    *Professor of Law.* 2007-2020.
    *Acting Professor of Law.* 2002 -2007.
* UNIVERSITY OF SOUTHERN CALIFORNIA LAW SCHOOL
    *Lecturer in Law.* 2001-2002.
* LOYOLA LAW SCHOOL LOS ANGELES
    *Adjunct Professor.* Fall 1998.
* THE HONORABLE DAVID R. THOMPSON, UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
    *Law Clerk.*  1995 - 96.  San Diego, CA.
* KATTEN MUCHIN ZAVIS & WEITZMAN
    *Attorney at Law.*  1993 - 94.  Los Angeles, CA.

### SCHOLARSHIP

**Books**
* WE THE CORPORATIONS: HOW AMERICAN BUSINESSES WON THEIR CIVIL RIGHTS (Liveright 2018).
    National Book Award Finalist, National Book Critics Circle Award Finalist, ABA Legal Gavel Award Finalist, and California Book Award Finalist.
* GUNFIGHT: THE BATTLE OVER THE RIGHT TO BEAR ARMS IN AMERICA (W.W. Norton 2011).
* ENCYCLOPEDIA OF THE AMERICAN CONSTITUTION, 2d edition (Macmillan 2000) (6 volumes).
    *Associate Editor.*  Named a "Best Reference Source of 2000" by Library Journal.

**Articles/Book Chapters**
* *Racist Gun Laws and the Second Amendment*, 135 Harvard Law Review Forum 537 (2022).
* *Corporate Personhood and Constitutional Rights for Corporations*, 54 New England Law Review 23 (2019).
* *Bank of the United States v. Deveaux and the Birth of Constitutional Rights for Corporations*, 43 Journal of Supreme Court History 210 (2019).
* *Is the Second Amendment Becoming Irrelevant?*, 93 Indiana Law Journal 253 (2018).
* *Citizens United and the Corporation in Politics*, in CORPORATIONS AND AMERICAN DEMOCRACY (N. Lamoreaux & W. Novak, eds., 2017).
* *Law Enforcement's Flagrant Conduct*, 48 Tulsa Law Review 275 (2013).
* *The Scope of Regulatory Authority Under the Second Amendment*, in Reducing Gun Violence in America (D. Webster & J. Vernick, eds. 2013) (co-authored with Lawrence Rosenthal).
* *The Standardless Second Amendment*, 5 Advance 107 (2011) (co-authored with Tina Mehr).
* *Free Speech Federalism*, 108 Michigan Law Review 153 (2009).
* *Heller's Catch-22*, 56 UCLA Law Review 1551 (2009).
* *Running on the Constitution*, 8 Election Law Journal 151 (2009).
* *Civil Rights: The Heller Case*, 4 NYU Journal of Law & Liberty 293 (2009).
* *Book Review:* Saul Cornell, A WELL-REGULATED MILITIA, 26 Law & History Review 441 (2008).

Exhibit 1
Page 15

**Articles (continued)**

* *The Federal Government as a Constitutional "Niche" in Affirmative Action Cases*,
    54 UCLA Law Review 1931 (2007).
* *Corporate Personhood and the Rights of Corporate Speech*,
    30 Seattle University Law Review 863 (2007).
* *Scrutinizing the Second Amendment*, 105 Michigan Law Review 683 (2007).
* *Fundamentally Wrong About Fundamental Rights*, 23 Constitutional Commentary 227 (2006).
* *Fatal in Theory and Strict in Fact: An Empirical Analysis of Strict Scrutiny in the Federal Courts*,
    59 Vanderbilt Law Review 793 (2006).
* *The Reasonable Right to Bear Arms*, 17 Stanford Law & Policy Review 597 (2006).
* *"Other People's Money": Corporations, Agency Costs, and Campaign Finance Law*,
    92 Georgetown Law Journal 871 (2004).
* *Corporate Law or the Law of Business? Stakeholders and Corporate Governance at the End of
    History*, 67 Law & Contemporary Problems 109 (2004) (reprinted in B. CHEFFINS, THE HISTORY
    OF MODERN U.S. CORPORATE GOVERNANCE (2011)).
* *McConnell v. FEC, Corporate Political Speech, and the Legacy of the Segregated Fund Cases*,
    3 Election Law Journal 361 (2004).
* *A Revolution Too Soon: Woman Suffragists & the "Living Constitution*,"
    76 New York University Law Review 1456 (2001).
* *Voters' Rights and Parties' Wrongs: Early Political Party Regulation in the State Courts, 1886-
    1915*, 100 Columbia Law Review 873 (2000).
* *The Corporation in Election Law*, 32 Loyola Law Review 1243 (1999).
* *Just Sanctions*, 21 Human Rights Quarterly 133 (1999).
* *Beyond Bellotti*, 32 Loyola Law Review 133 (1998).
* *Book Review*: Austin Sarat, ed., RACE, LAW, AND CULTURE: REFLECTIONS ON BROWN V.
    BOARD OF EDUCATION, 21 Ethnic and Racial Studies 1191 (1998).
* *The Independence of Judges*, 46 Mercer Law Review 795 (1995) (co-authored with James B. Zagel).
* *Sounds of Silence: The Supreme Court and Affirmative Action*, 28 Loyola Law Review 923 (1995).
* *Postmodernism and Dworkin: The View from Half-Court*,
    17 Nova Law Review 799 (1993) (co-authored with Joshua Davis).
* *Expressive Voting*, 68 New York University Law Review 330 (1993).

SELECTED OPINION & FEATURES
* *Corporate Political Conscience*, New Republic, April 30, 2018.
* *'Corporations Are People' Is Built on a 19th-Century Lie*, Atlantic, March 5, 2018.
* *What Rights Should Corporations Have?*, Wall Street Journal, March 1, 2018.
* *Of Course We Need to Talk About Gun Violence*, Los Angeles Times, Oct. 6, 2017.
* *Disarming the NRA*, New York Review of Books, Oct. 5, 2017.
* *Time for a 'No Buy' List on Guns*, New York Times, June 13, 2016.
* *The Secret History of Guns*, Atlantic, September 1, 2011.
* *The Guns of Academe*, New York Times, April 14, 2011.

SELECTED MEDIA APPEARANCES
* *Face the Nation; NBC Nightly News; ABC News; CNN; The NewsHour; Fresh Air with Terry Gross;
    All Things Considered; Morning Edition; Brian Lehrer Show; Marketplace.*

PUBLIC SERVICE
* BRENNAN CENTER FOR JUSTICE. *Board of Directors.* 2001-current.
* PLANNED PARENTHOOD ADVOCACY PROJECT LOS ANGELES. *Board of Directors*. 2001- current.
* AMERICAN CONSTITUTION SOCIETY. *Board of Directors.* 2015-2020.
* ANTI-DEFAMATION LEAGUE. *Legal Advisor, Summer Intern Program*. 2002-2016.

HONORS
* Phi Beta Kappa Scholar, 2021-2022.

Exhibit 1
Page 16

# Exhibit 2

Exhibit 2
Page 17

Case 8:23-cv-01798-CJC-ADS   Document 20-12   Filed 11/03/23   Page 18 of 67   Page ID #905

258                    2ᵉ Edw. II. *Stat. Northampt.* c. 2—5.                    A.D. 1328.

Generated on 2023-02-09 20:35 GMT / https://hdl.handle.net/2027/pst.000017915496
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

Grandfather to our Lord the King that now is, wherein is contained, that Justices assigned to take Assises, if they be Laymen, shall make Deliverance; and if the one be a Clerk, and the other a Layman, that the Lay Judge, with another of the Country associate to him, shall deliver the Gaols: Wherefore it is enacted, That such [Justices '] shall not be made against the Form of the said Statute; and that the Assises, Attaints, and Certifications be taken before the Justices commonly assigned, which should be good Men and lawful, having Knowledge of the Law, and none other, after the Form of another Statute made in the Time of the said [King Edward the First ; *] and that the Oyers and Terminers shall not be granted but before Justices of the one Bench or the other, or the Justices Errants, and that for great [hurt,] or horrible Trespasses, and of the King's special Grace, after the Form of the Statute thereof ordained in Time of the said Grandfather, and none otherwise.

**III. Riding or going armed in Affray of the Peace.**

ITEM, it is enacted, That no Man great nor small, of what Condition soever he be, except the King's Servants in his presence, and his Ministers in executing of the King's Precepts, or of their Office, and such as be in their Company assisting them, and also [upon a Cry made for Arms to keep the Peace, and the same in such places where such Acts happen,'] be so hardy to come before the King's Justices, or other of the King's Ministers doing their office, with force and arms, nor bring no force in affray of the peace, nor to go nor ride armed by night nor by day, in Fairs, Markets, nor in the presence of the Justices or other Ministers, nor in no part elsewhere, upon pain to forfeit their Armour to the King, and their Bodies to Prison at the King's pleasure. And that the King's Justices in their presence, Sheriffs, and other Ministers (*) in their Bailiwicks, Lords of Franchises, and their Bailiffs in the same, and Mayors and Bailiffs of Cities and Boroughs, within the same Cities and Boroughs, and Borough-Holders, Constables, and Wardens of the Peace within their Wards, shall have Power to execute this Act. And that the Justices assigned, at their coming down into the Country, shall have Power to enquire how such Officers and Lords have exercised their Offices in this Case, and to punish them whom they find that have not done that which pertained to their Office.

**IV. The Statute of Lincoln, 9 Edw. II. concerning Sheriffs, &c. confirmed.**

ITEM, Because the Peace cannot be well kept without good Ministers, as Sheriffs, Bailiffs, and Hundreders, which ought to do Execution as well of the King's Priorities as of other Things touching our Lord the King and his People; It is ordained and established, That the Statute made in the time of King Edward, Father to the King that now is, at Lincoln, containing that Sheriffs, Hundreders, and Bailiffs shall be of such People as have Lands in the same Shires or Bailiwicks, shall be observed in all Points after the Form thereof ; and that Sheriffs and Bailiffs of Fee shall cause their Counties and Bailiwicks to be kept by such as have Lands therein.

**V. The Statute Westminster the Second, 13 Edw. I. chapter 39, concerning the Delivery of Writs to the Sheriff, confirmed.**

ITEM, Where it was ordained by the Statute of Westminster the Second, that they which will deliver their Writs to the Sheriff, shall deliver them in the full County, or in the Rere County, and that the Sheriff or under Sheriff shall thereupon make a Bill ; It is accorded and established, that at what Time or Place in the County a Man doth deliver any Writ to the Sheriff or to the Under-Sheriff, that they shall receive the same Writs, and make a Bill, after the form contained in the same Statute, without taking any Thing therefore ; and if they refuse to make a Bill, others that be present shall set to their Seals; and if the Sheriff or Under-Sheriff do not return the said Writs, they shall be punished after the form contained in the same Statute ; and also that the Justices of Assises shall have power to enquire thereof at every Man's Complaint, and to award Damages, as having respect to the Delay, and to the loss and peril that might happen

---

' Commissions
* upon a *Proclamation of Deeds of Arms in time of Peace, and that in Places where such Deeds are to be done.*—See Lib. Rub. Scac. Westm. fo. 122 b. a Writ reciting a Grant of K. Richard I. "qd Torneamita sint in Angl in v. placias : Inr Sarr & Wilton : Inr Warewich & Kenelingworth : Inr Stamford & Warneford : Inr Brstede & Mireht : Inr Blie & Tykehll. Ita qd pax fre nre no infringet', nc potestas Justiciaria minorabit' Nec de foresis nris dapnu inferet'."
* of the King

---

nre Seignr le Roi qore est, en quele est contenue q les Justices as assises pndre assignez sils soient lais, facent les delivances; et si lun soit clerc, & lautre lais, q le dit lais, associe a lui un autre du pais, facent la delivance des gaols; p qoi acorde est & establi, q tiels Justiceries ne soient mes gntees countre la forme du dit estatut, & q les assises, atteintes, & certificacions soient psees devant les Justices comunement assignez, q soient bones gentz & loialx & conissantz de la lei, & nemie autres; solonc la forme dun autre statut fait en temps meisme le ael ; et q les oiers & tmniers ne soient grantees forsq, ---- devant les Justices de lun Baunk & de lautre, ou les Justices errantz ; & ce p' led & orrible trespas, & de lespeciale grce le Roi, solonc forme de statut de ce ordene en temps meisme le ael; & nemie autrement.

Ensement acorde est & establi, q nul, gnt ne petit de quele condicion qil soit, sauve les sjantz le Roi en la psence le Roi, & les Ministres le Roi, enfesantz execucion des mandementz le Roi, ou de lour office, & ceux qi sont en lour compaignies, eidantz as ditz ministres, & auxint au cri de fait darmes de pees, & ce en lieux ou tielx faitz se ferront, soit si hardi de venir devant les Justices le Roi, ou autres Ministres le Roi enfesant lour office, a force & armes; ne force mesner en affrai de la pees, ne de chivaucher ne daler arme, ne de nuit ne de jour, en faires, marchees, nen psence des Justices, ne dautres Ministres, ne nule part aillours, sur peine de pdre lour armures au Roi & de lour corps a la prisone a la volunte le Roi. Et q Justices le Roi en lour psences, viscountes & autres Ministres le Roi en lour baillies, seign's des fraunchises & lour baillifs en yceles, & Meire & Bailliffs des Citees & Burghs deinz meismes les Citees & Burghs, Burghaldres, conestables, & gardeins de la pees deinz lour gardes, eient poair affaire execucion de cest acord. Et q les Justices assignez, a lour venu en pais, eient poair denquere coment tielx Ministres & seign's ont use lour office en ce, & de punir ceux qils trovont, qi nount mie fait ce q a lour office appent.

Et p'ce q la pees ne poet mie estre bien garde sauntz bons ministres, come Viscountes, Baillifs, & Hundreders qi deivent faire execucion, auxibien des p'vetez le Roi come dautres choses tochantes le Roi & son poeple, acorde est & establi q lestatut fait en temps le Roi Edward, piere le Roi qore est, a Nicole, contenant q Viscontes, Hundreders & Baillifs soient des gentz eantz tres en meismes les Countez, ou baillies, soit garde en touz pointz solonc la forme dycel, & auxint q les Viscountes & Baillifs de fee, facent garder meismes lour Countez & Baillies p gentz eantz tres en yceles.

Ensement la ou ordine est, p statut de Westmonst' le secund, q ceux qi livrer volent lour briefs as viscountes, les livent en plein Counte, ou en rerecounte, & q visconte ou southvisconte facent sur ce bille; acorde est & establi q a quele heure ou a queu lieu deinz le Counte home livre a viscountes, ou a southvisconte, briefs, qils les resceivent & facent bille en la forme contenue en le dit estatut, & ce sanz rien pndre ; et sils refusent de faire bille, mettent autres lour seelx qi sront psentz; et si le Visconte ou le Southvisconte ne retorne mie les briefs, soient puniz solonc la forme contenue en le dit estatut; & jadumeins eient les Justices as assises pndre assignez poair denquer de ce a chescuny pleinte & de agarder damages, eant regard au delai, & a les ptes & pils qi p'ront avenir.

Exhibit 2
Page 18

# Exhibit 3

Exhibit 3
Page 19



THE
Office and Authority
OF A
JUSTICE of PEACE.

AND ALSO,

The Duty of Sheriffs, Coroners, Constables, Churchwardens, Overseers of Roads, and other Officers.

TOGETHER WITH

Precedents of Warrants, Judgments, Executions, and other legal Process, issuable by Magistrates within their several Jurisdictions, in Cases Civil and Criminal, with the Method of Judicial Proceedings before Justices of the Peace out of Sessions. Also some Directions for their Conduct within their County Courts.

To which is added,

An APPENDIX.

Containing many useful Precedents, and Directions for the Execution of them.

Collected from the Common and Statute Laws of England, and the Acts of Assembly of this Province, and adapted to our Constitution and Practice.

By J. DAVIS, Esq; one of his Majesty's Justices of the Peace for the County of Craven.

NEWBERN:

Printed by JAMES DAVIS. M,DCC,LXXIV.

Exhibit 3
Page 20



## Appeals.

By the ancient *Saxon* Laws, made in the Reign of King *Alfred*, and his Grandson *Athelstan*, the Punishment for killing was not by Blood, but by Fine; and the Offender was to make Composition in Money to the Relations of the Person killed, according to his Quality. Which Mr. *Selden* has thus computed:

| | £. |
|---|---|
| A Countryman killed, at | 40 |
| A Clergyman, | 300 |
| A General, or Captain, | 600 |
| A Bishop, or Alderman, | 1200 |
| An Archbishop, or Nobleman, | 2250 |
| The King, | 4500 |

For a Woman with Child, the Value of her Head, and for the Child in her Womb, Half as much as for a living Child, according to the Quality of the Father.

A *Workman*, if he had Land, and a Family, and paid Tribute, was valued at 6l. but no Land, 3l.

These Fines were only in Case of Manslaughter, where the Person was killed by Misfortune; but where the Person was never excused by these Payments: The Murder was punished by Death, and so was Manslaughter likewise, where the Party was not able to pay the Price or Valuation of him who was killed.

And so the Law continued a long Time after, till by the Statute of *Marlbridge*, 53 *Hen.* 3. 25. Man by Misfortune, was adjudged Murder; but redeemable upon Payment of the Fine.

And from hence, it is probable, that Appeals of Death are derived to the Heir, or Wife, at this Day.

*Appeal the Suit of the King.*

An Appeal is the Suit of the Party, as well as the King: hence the King cannot pardon an Offender guilty upon an Appeal, as he may upon an Indictment. For in that Case he can only pardon for himself, not for the Party. 2 *H.* 155.

*Appeals by the Laws of the Province.*

Appeals are allowed from the Inferior to the Superior Courts; from the Judgments of Justices on Breach of Warrants, and from Trials on several Penal Statutes; which will be found under their several Heads.

APPRENTICES. See ORPHANS.

ARBITRATION. See AWARDS.

## ARMOUR.

JUSTICES of the Peace, upon their own View, or upon Complaint, may apprehend any Person who shall go or ride armed with unusual and offensive Weapons, in an Affray, or among any great Concourse of People, or who shall appear, so armed, before the King's Justices sitting in Court, and may bind such Offender to the Peace, or good Behaviour; and if he refuses to be so bound, may commit him. *Dalt.* 37.

*Who may be disarmed.*

And any Justice of the Peace may command Weapons to be taken from a Prisoner brought before him.

Any Man may use Force and Arms in Defence of his Person, House, Goods, Family, &c. against Robbers, or those that shall assemble to do him any Violence; he may, in endeavouring to suppress Riots: But here a forfeit Way is, to be armed in Assistance of the King's Officers. *Nelf.* 55.

*Where Arms may be seized by the Laws of this Province.*

By an Act of Assembly of this Province, " to prevent killing Deer at unseasonable Times" no Persons (except Masters of Slaves) are allowed to hunt with a Gun, on Penalty of forfeiting the same, and Ten Pounds, Proc. Money; unless such Person is possessed of a Freehold of One Hundred Acres of Land, or tends Ten Thousand Corn Hills, at five Feet Distance.

*Page 4.*

No Slave to hunt with a Gun, or any Weapon, on King's Lands but his Master's, unless a white Man be in Company; on Penalty of being whipped, and a Fine of Twenty Shillings, to be paid by the Owner of the Slave, to the Person on whose Lands he is found. No Slave to carry a Gun, or hunt in the Woods, without a Certificate signed by the Chairman of the Court for that Purpose, the Master or Mistress of such Slave having first given Security to the Court for good Behaviour of such Slave, on which Bond any Person injured may maintain an Action for any Damages he may sustain: Recovery in any County Court. But one Slave on a Plantation where Crop is tended, allowed to carry a Gun, and then only till Crop is housed. The Master, Mistress, or Overseer of any Slave, with whom shall be found any Gun, Sword, or other Weapon, contrary to Law, subject to a Penalty of Twenty Shillings, unless they make it appear such Slave carried the Gun, or other Weapon, contrary to his Knowledge.

*Page 154.*

Licence

ARMO

Exhibit 3
Page 21

# Exhibit 4

Exhibit 4
Page 22

 

DATE DOWNLOADED: Fri Feb  3 17:24:07 2023
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1869-1870 23 .

ALWD 7th ed.
, , 1869-1870 23 .

Chicago 17th ed.
"," Tennessee - 36th General Assembly, Public & Private Acts, 1st Session : 23-24

AGLC 4th ed.
" Tennessee - 36th General Assembly, Public & Private Acts, 1st Session 23.

OSCOLA 4th ed.
" 1869-1870 23

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

Exhibit 4
Page 23

23

## CHAPTER XXI.

AN ACT to Amend An Act, passed on the 13th of March, 1868, entitled "An Act to amend the revenue laws of the State."

SECTION 1.  *Be it enacted by the General Assembly of the State of Tennessee,* That An Act to amend the revenue laws of the State, passed on the 13th day of March, 1868, be so amended as to impose a tax of fifty cents on each room except two in a hotel or tavern, and a tax of fifty cents on each stall in a livery stable, or stable kept by hotel or tavern keepers, instead of one dollar, as now imposed by law. *Hotels and Livery Stable*

SEC. 2.  *Be it further enacted,* That this Act take effect from and after its passage.

W. O'N. PERKINS,
*Speaker of the House of Representives.*
D. B. THOMAS,
*Speaker of the Senate.*

Passed November 27, 1869.

———

## CHAPTER XXII.

AN ACT to Amend the Criminal Laws of the State.

SECTION 1.  *Be it enacted by the General Assembly of the State of Tennessee,* That all voters in this State shall be required to vote in the civil district or ward in which they may reside.   Any person violating this Act shall be guilty of a misdemeanor, and upon conviction thereof shall not be fined less than twenty nor more than fifty dollars ; *Provided,* that sheriffs and other officers holding elections shall be permitted to vote at any ward or precinct in which they may hold an election. *To vote in Civil District or Ward.*

SEC. 2.  *Be it further enacted,* That it shall not be lawful for any qualified voter or other person attending any election in this State, or for any person attending any fair, race course, or other public assembly of the people, to carry about his person, concealed or otherwise, any pistol, dirk, bowie-knife, Arkansas tooth-pick, or weapon in form, shape *Deadly Weapons.*

Exhibit 4
Page 24

24

or size, resembling a bowie-knife, or Arkansas tooth-pick, or other deadly or dangerous weapon.

Penalty. SEC. 3. *Be it further enacted*, That all persons convicted under the second section of this Act shall be punished by fine of not less than fifty dollars, and by imprisonment, or both, at the discretion of the Court.

Liquor Shops. SEC. 4. *Be it further enacted*, That no liquor shop in this State, shall be kept open on election days, nor shall any person, on said days, give or sell intoxicating liquors to any person for any purpose at or near an election ground.

Grand Juries. SEC. 5. *Be it further enacted*, That the grand juries of this State shall have inquisitorial powers concerning the commission of the offenses created by these Acts, and may send for witnesses, as in cases of gaming, illegal voting, tippling and offenses now prescribed by law.

Judges. SEC. 6. *Be it further enacted*, That it shall be the duty of the Circuit and Criminal Judges of this State to give the above in special charge to the several grand juries of the courts.

Proviso. SEC. 7. *Be it further enacted*, That there shall be no property exempt from execution for fines and costs for this offense; *Provided*, That, if from any cause, there should be a failure to hold an election in any civil district or ward, then nothing in this Act shall be so construed as to prevent any voter from voting in any other civil district or ward in his county or town, for State or county officers, at the time prescribed by law.

SEC. 8. *Be it further enacted*, That this Act shall take effect from and after its passage.

W. O'N. PERKINS.
*Speaker of the House of Representatives.*
D. B. THOMAS,
*Speaker of the Senate.*

Passed December 1, 1869.

Exhibit 4
Page 25

# Exhibit 5

Exhibit 5
Page 26

To preserve the peace and harmony of the people of this State, etc.

# TITLE XVI.

## PENAL CODE—AMENDMENTS TO.

SECTIONS.
1. Carrying deadly weapons to certain places prohibited.
2. Violation—misdemeanor—penalty.
3. Chain-gang punishment prohibited.
4. Punishment in lieu of chain-gang.

SECTIONS.
5. Section 415 of the Code changed—nolle prosequi.
6. All indictments, etc., submitted to a jury.

### (No. 285.)

*An Act to preserve the peace and harmony of the people of this State, and for other purposes.*

SECTION 1. *Be it enacted, etc.,* That, from and immediately after the passage of this act, no person in said State of Georgia be permitted or allowed to carry about his or her person any dirk, bowie-knife, pistol or revolver, or any kind of deadly weapon, to any court of justice, or any election ground or precinct, or any place of public worship, or any other public gathering in this State, except militia muster-grounds. *(Carrying deadly weapons to certain places prohibited. Exception.)*

SEC. 2. *Be it further enacted,* That if any person or persons shall violate any portion of the above recited section of this act, he, she or they shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine of not less than twenty nor more than fifty dollars for each and every such offense, or imprisonment in the common jail of the county not less than ten nor more than twenty days, or both, at the discretion of the court. *(Violation a misdemeanor—penalty.)*

SEC. 3. All laws and parts of laws militating against this act are hereby repealed.

Approved October 18, 1870.

### (No. 286.)

*An Act to alter and amend section 4245 of Irwin's Revised Code, by striking out of said section the words " to work in a chain-gang on the public works," and for other purposes.*

SECTION 1. *Be it enacted, etc.,* That the words "to work in a chain-gang on the public works," which occur in fourth and fifth lines of section 4245 of Irwin's Code, be, and the same are hereby, *(Chain-gang punishment prohibited.)*

Exhibit 5
Page 27

# Exhibit 6

Exhibit 6
Page 28

## CHAPTER XLVI.

### AN ACT REGULATING THE RIGHT TO KEEP AND BEAR ARMS.

SECTION 1. *Be it enacted by the Legislature of the State of Texas*, That if any person shall go into any church or religious assembly, any school room or other place where persons are assembled for educational, literary or scientific purposes, or into a ball room, social party or other social gathering composed of ladies and gentlemen, or to any election precinct on the day or days of any election, where any portion of the people of this State are collected to vote at any election, or to any other place where people may be assembled to muster or to perform any other public duty, or any other public assembly, and shall have about his person a bowie-knife, dirk or butcher-knife, or fire-arms, whether known as a six shooter, gun or pistol of any kind, such person so offending shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined in a sum not less than fifty or more than five hundred dollars, at the discretion of the court or jury trying the same; provided, that nothing contained in this section shall apply to locations subject to Indian depredations; and provided further, that this act shall not apply to any person or persons whose duty it is to bear arms on such occasions in discharge of duties imposed by law.

SEC. 2. That this act take effect and be in force in sixty days from the passage thereof.

Approved August 12, 1870.

---

## CHAPTER XLVII.

### AN ACT AUTHORIZING THE GOVERNOR TO ORDER AN ELECTION TO BE HELD IN HILL COUNTY FOR THE PERMANENT LOCATION OF THEIR COUNTY SEAT.

SECTION 1. *Be it enacted by the Legislature of the State of Texas*, That the Governor of the State of Texas be, and is hereby authorized to order an election to be held in the county of Hill, on the second Monday in September, A. D. 1870, (or as soon thereafter as possible), for the permanent location of the county seat of the

Exhibit 6
Page 29

# Exhibit 7

Exhibit 7
Page 30

SEC. 1271.  *Abandonment of children.*—If any father or mother of any child under the age of six years, or any other person to whom such child shall have been confided, shall expose such child in a street, field or other place, with intent wholly to abandon it, he or she shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding five years, or in the county jail not less than six months.   (G. S. 781, § 39.)

SEC. 1272.  *Mistreatment of apprentices.*—If any master or mistress of an apprentice or other person having the legal care and control of any infant, shall, without lawful excuse, refuse or neglect to provide for such apprentice or infant, necessary food, clothing or lodging, or shall unlawfully and purposely assault such apprentice or infant, whereby his life shall be endangered, or his health shall have been or shall be likely to be permanently injured, the person so offending shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding three years, or by imprisonment in the county jail not exceeding one year, or by a fine of not more than one thousand dollars, or by both such fine and imprisonment. (New section.)

SEC. 1273.  *Abandonment of wife or child.*—If any man shall, without good cause, abandon or desert his wife, or abandon his child or children under the age of twelve years born in lawful wedlock, and shall fail, neglect or refuse to maintain and provide for such wife, child or children, he shall, upon conviction, be punished by imprisonment in the county jail not more than one year, or by a fine of not less than fifty, nor more than one thousand dollars, or by both such fine and imprisonment.   No other evidence shall be required to prove that such husband was married to such wife, or is the father of such child or children, than would be necessary to prove such fact or facts in a civil action. (Laws 1867, p. 112, amended—*m.*)

SEC. 1274.  *Carrying deadly weapons, etc.*—If any person shall carry concealed, upon or about his person, any deadly or dangerous weapon, or shall go into any church or place where people have assembled for religious worship, or into any school room or place where people are assembled for educational, literary or social purposes, or to any election precinct, on any election day, or into any court room during the sitting of court, or into any other public assemblage of persons met for any lawful purpose, other than for militia drill or meetings called under the militia law of this state, having upon or about his person any kind of firearms, bowie-knife, dirk, dagger, slung-shot, or other deadly weapon, or shall, in the presence of one or more persons, exhibit any such weapon in a rude, angry or threatening manner, or shall have or carry any such weapon upon or about his person when intoxicated or under the influence of intoxicating drinks, or shall, directly or indirectly, sell or deliver, loan or barter to any minor, any such weapon, without the consent of the parent or guardian of such minor, he shall, upon conviction, be punished by a fine of not less than five nor more than one hundred dollars, or by imprisonment in the county jail not exceeding three months, or by both such fine and imprisonment.   (Laws 1874, p. 43; laws 1875, p. 50, and laws 1877, p. 240, amended.)

SEC. 1275.  *Above section not to apply to certain officers.*—The next preceding section shall not apply to police officers, nor to any officer or person whose duty it is to execute process or warrants, or to suppress breaches of the peace, or make arrests, nor to persons moving or traveling peaceably through this state, and it shall a good defense to the charge of carrying such weapon, if the defendant shall show that he has been threatened with great bodily harm, or had good reason to carry the same in the necessary defense of his person, home or property.   (New section.)

SEC. 1276.  *Fire arms not to be discharged near court house.*—Hereafter it shall be unlawful for any person in this state, except he be a sheriff or other officer in the discharge of official duty, to discharge or fire off any

---

(m)   Wife held to be a competent witness to prove fact of abandonment.   43 Mo. 429.   The fact that the defendant has brought suit for divorce is no defense.   52 Mo. 172.

Exhibit 7
Page 31

# Exhibit 8

Exhibit 8
Page 32

# THE

# STATUTES OF OKLAHOMA

1890.

Compiled under the supervision and direction of Robert Martin,
Secretary of the Territory,

—BY—

WILL T. LITTLE,  L. G. PITMAN and R. J. BARKER,

—FROM—

The Laws Passed by the First Legislative Assembly of the Territory.

~~~~~~~~~~~~~~~~

GUTHRIE, OKLAHOMA:
THE STATE CAPITAL PRINTING CO.,
PUBLISHERS.
1891.

Exhibit 8
Page 33

CRIMES AND PUNISHMENT.                    495

(2430) § **6.** Every person who, with intent to extort any money or other property from another, sends to any person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat, such as is specified in the second section of this article, is punishable in the same manner as if such money or property were actually obtained by means of such threat.

Sending threatening letter.

(2431) § **7.** Every person who unsuccessfully attempts by means of any verbal threat such as is specified in the second section of this article, to extort money or other property from another is guilty of a misdemeanor.

Attempting to extort money.

ARTICLE 47.—CONCEALED WEAPONS.

| SECTION. | SECTION. |
|---|---|
| 1. Prohibited weapons enumerated. | 6. Degree of punishment. |
| 2. Same. | 7. Public buildings and gatherings. |
| 3. Minors. | 8. Intent of persons carrying weapons. |
| 4. Public officials, when privileged. | 9. Pointing weapon at another. |
| 5. Arms, when lawful to carry. | 10. Violation of certain sections. |

(2432) § **1.** It shall be unlawful for any person in the Territory of Oklahoma to carry concealed on or about his person, saddle, or saddle bags, any pistol, revolver, bowie knife, dirk, dagger, slung-shot, sword cane, spear, metal knuckles, or any other kind of knife or instrument manufactured or sold for the purpose of defense except as in this article provided.

Prohibited weapons enumerated.

(2433) § **2.** It shall be unlawful for any person in the Territory of Oklahoma, to carry upon or about his person any pistol, revolver, bowie knife, dirk knife, loaded cane, billy, metal knuckles, or any other offensive or defensive weapon, except as in this article provided.

Same.

(2434) § **3.** It shall be unlawful for any person within this Territory, to sell or give to any minor any of the arms or weapons designated in sections one and two of this article.

Minors.

(2435) § **4.** Public officers while in the discharge of their duties or while going from their homes to their place of duty, or returning therefrom, shall be permitted to carry arms, but at no other time and under no other circumstances: *Provided, however,* That if any public officer be found carrying such arms while under the influence of intoxicating drinks, he shall be deemed guilty of a violation of this article as though he were a private person.

Public officials, when privileged.

(2436) § **5.** Persons shall be permitted to carry shot-guns or rifles for the purpose of hunting, having them repaired, or for killing animals, or for the purpose of using the same in public muster or military drills, or while travelling or removing from one place to another, and not otherwise.

Arms, when lawful to carry.

(2437) § **6.** Any person violating the provisions of any one of the foregoing sections, shall on the first conviction be adjudged guilty of a misdemeanor and be punished by a fine of not less than twenty-five dollars nor more than fifty dollars, or by imprisonment in the county jail not to exceed thirty days or both at the discretion of the court. On the second and every subsequent con-

Degree of punishment.

Exhibit 8
Page 34

496                                 CRIMES AND PUNISHMENT.

<div style="float:left">Chap. 25.</div>

viction, the party offending shall on conviction be fined not less than fifty dollars nor more than two hundred and fifty dollars or be imprisoned in the county jail not less than thirty days nor more than three months or both, at the discretion of the court.

<div style="float:left">Public build-<br>ings and gather-<br>ings.</div>

(2438) § **7.**   It shall be unlawful for any person, except a peace officer, to carry into any church or religious assembly, any school room or other place where persons are assembled for public worship, for amusement, or for educational or scientific purposes, or into any circus, show or public exhibition of any kind, or into any ball room, or to any social party or social gathering, or to any election, or to any place where intoxicating liquors are sold, or to any political convention, or to any other public assembly, any of the weapons designated in sections one and two of this article.

<div style="float:left">Intent of per-<br>sons carrying<br>weapons.</div>

(2439) § **8.**   It shall be unlawful for any person in this Territory to carry or wear any deadly weapons or dangerous instrument whatsoever, openly or secretly, with the intent or for the avowed purpose of injuring his fellow man.

<div style="float:left">Pointing<br>weapons at an-<br>other.</div>

(2440) § **9.**   It shall be unlawful for any person to point any pistol or any other deadly weapon whether loaded or not, at any other person or persons either in anger or otherwise.

<div style="float:left">Violation of<br>section seven.</div>

(2441) § **10.**   Any person violating the provisions of section seven, eight or nine of this article; shall on conviction, be punished by a fine of not less than fifty dollars, nor more than five hundred and shall be imprisoned in the county jail for not less than three not more than twelve months.

ARTICLE 48.—FALSE PERSONATION AND CHEATS.

| SECTION. | | SECTION. | |
|---|---|---|---|
| 1. | False impersonation, punishment for. | 7. | False representation of charitable purposes. |
| 2. | False impersonation and receiving money. | 8. | Falsely representing banking corporations. |
| 3. | Personating officers and others. | 9. | Using false check. |
| 4. | Unlawful wearing of grand army badge. | 10. | Holding mock auction. |
| 5. | Fines, how paid. | | |
| 6. | Obtaining property under false pretenses. | | |

<div style="float:left">Punishment<br>for false imper-<br>sonation.</div>

(2442) § **1.**   Every person who falsely personates another, and in such assumed character, either:

First.   Marries or pretends to marry, or to sustain the marriage relation toward another, with or without the connivance of such other person; or,

Second.   Becomes bail or surety for any party, in any proceeding whatever, before any court or officer authorized to take such bail or surety; or,

Third.   Subscribes, verifies, publishes, acknowledges or proves, in the name of another person, any written instrument, with intent that the same may be delivered or used as true; or,

Fourth.   Does any other act whereby, if it were done by the person falsely personated, he might in any event become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture or penalty, or whereby any benefit might accrue to the party personating, or to any other person.

Exhibit 8
Page 35

# Exhibit 9

Exhibit 9
Page 36

GENERAL LAWS.                    25

## CHAPTER XXXIV.

### AN ACT TO REGULATE THE KEEPING AND BEARING OF DEADLY WEAPONS.

SECTION 1. *Be it enacted by the Legislature of the State of Texas,* That any person carrying on or about his person, saddle, or in his saddle bags, any pistol, dirk, dagger, slung-shot, sword-cane, spear, brass-knuckles, bowie-knife, or any other kind of knife manufactured or sold for the purposes of offense or defense, unless he has reasonable grounds for fearing an unlawful attack on his person, and that such ground of attack shall be immediate and pressing; or unless having or carrying the same on or about his person for the lawful defense of the State, as a militiaman in actual service, or as a peace officer or policeman, shall be guilty of a misdemeanor, and, on conviction thereof shall, for the first offense, be punished by fine of not less than twenty-five nor more than one hundred dollars, and shall forfeit to the county the weapon or weapons so found on or about his person; and for every subsequent offense may, in addition to such fine and forfeiture, be imprisoned in the county jail for a term not exceeding sixty days; and in every case of fine under this section the fines imposed and collected shall go into the treasury of the county in which they may have been imposed; *provided,* that this section shall not be so construed as to prohibit any person from keeping or bearing arms on his or her own premises, or at his or her own place of business, nor to prohibit sheriffs or other revenue officers, and other civil officers, from keeping or bearing arms while engaged in the discharge of their official duties, nor to prohibit persons traveling in the State from keeping or carrying arms with their baggage; *provided further,* that members of the Legislature shall not be included under the term "civil officers" as used in this act.

SEC. 2. Any person charged under the first section of this act, who may offer to prove, by way of defense, that he was in danger of an attack on his person, or unlawful interference with his property, shall be required to show that such danger was immediate and pressing, and was of such a nature as to alarm a person of ordinary courage; and that the weapon so carried was borne openly and not concealed beneath the clothing; and if it shall appear that this danger had its origin in a difficulty first commenced by the accused, it shall not be considered as a legal defense.

SEC. 3. If any person shall go into any church or religious assembly, any school room, or other place where persons are assem-

Exhibit 9
Page 37

26                         GENERAL LAWS.

bled for amusement or for educational or scientific purposes, or into any circus, show, or public exhibition of any kind, or into a ball room, social party, or social gathering, or to any election precinct on the day or days of any election, where any portion of the people of this State are collected to vote at any election, or to any other place where people may be assembled to muster, or to perform any other public duty, (except as may be required or permitted by law,) or to any other public assembly, and shall have or carry about his person a pistol or other firearm, dirk, dagger, slung shot, sword cane, spear, brass-knuckles, bowie-knife, or any other kind of knife manufactured and sold for the purposes of offense and defense, unless an officer of the peace, he shall be guilty of a misdemeanor, and, on conviction thereof, shall, for the first offense, be punished by fine of not less than fifty, nor more than five hundred dollars, and shall forfeit to the county the weapon or weapons so found on his person; and for every subsequent offense may, in addition to such fine and forfeiture, be imprisoned in the county jail for a term not more than ninety days.

SEC. 4.   This act shall not apply to, nor be enforced in any county of the State, which may be designated, in a proclamation of the Governor, as a frontier county, and liable to incursions of hostile Indians.

SEC. 5.   All fines collected under the provisions of this act shall be paid into the treasury of the county, and appropriated exclusively to the keeping in repair and maintenance of public roads, and all weapons forfeited to the county under the provisions of this act shall be sold as may be prescribed by the county court, and the proceeds appropriated to the same purpose.

SEC. 6.   It shall be the duty of all sheriffs, constables, marshals, and their deputies, and all policemen, and other peace officers, to arrest any person violating the first or third sections of this act, and to take such person immediately before a justice of the peace of the county where the offense is committed, or before a mayor or recorder of the town or city in which the offense is committed, who shall investigate and try the case without delay.   On all such trials the accused shall have the right of a trial by jury, and of appeal to the district court; but, in case of appeal, the accused shall be required to give bond with two or more good and sufficient sureties in a sum of not less than one hundred nor more than two hundred dollars, if convicted under the first section and in a sum of not less than two hundred nor more than one thousand dollars, if convicted under the third section of this act; said bond to be payable to the State of Texas, and approved by the magistrate, and conditioned that the defendant will abide the judgment of the district court that may

Exhibit 9
Page 38

GENERAL LAWS.                    27

be rendered in the case; and in case of forfeiture the proceedings thereon shall be as is or may be prescribed by law in similar cases; and all moneys collected on any bond or judgment upon the same, shall be paid over and appropriated as provided in the fifth section of this act.

SEC. 7.   Any officer named in the sixth section of this act who shall refuse or fail to arrest any person whom he is required to arrest by said section on his own information, or where knowledge is conveyed to him of any violation of the first or third sections of this act, shall be dismissed from his office on conviction in the district court, on indictment or information, or by such other proceedings or tribunal as may be provided by law, and in addition, shall be fined in any sum not exceeding five hundred dollars, at the discretion of the court or jury.

SEC. 8.   That the district courts shall have concurrent jurisdiction under this act, and it is hereby made the duty of the several judges of the district courts of this State to give this act especially in charge to the grand juries of their respective counties.

SEC. 9.   It is hereby made the duty of the Governor to publish this act throughout the State; and this act shall take effect and be in force from and after the expiration of sixty days after its passage.

Approved April 12, 1871.

———

CHAPTER XXXV.

AN ACT TO AUTHORIZE THE COUNTY COURT OF ROBERTSON COUNTY TO LEVY AND COLLECT A SPECIAL TAX FOR THE TERM OF TWO YEARS TO BUILD A COURT HOUSE AND JAIL IN THE CITY OF CALVERT, THE COUNTY SEAT OF SAID COUNTY.

SECTION 1.   *Be it enacted by the Legislature of the State of Texas*, That the County Court of Robertson county be and the same is hereby authorized to levy and collect, annually, for the term of two years, a special *ad valorem* tax upon all property, real, personal and mixed, in said county, not to exceed one half of one per centum in addition to all general and special taxes now authorized to be levied and collected by law, which tax shall be levied and collected the same as other taxes, and shall be appropriated and paid out solely for the purpose of building a substantial court house and jail at Calvert, the county seat of Robertson county, Texas.

SEC. 2.   That this act shall take effect and be in force from and after its passage.

Approved April 12, 1871.

Exhibit 9
Page 39

# Exhibit 10

Exhibit 10
Page 40

# LAWS OF KANSAS.

———::———

## CHAPTER I.

### ACCOUNTS IN RELATION TO PENITENTIARY.

**SENATE RESOLUTION** providing for Inquiry into Accounts of Penitentiary.

*Resolved by the Legislature of the State of Kansas:*

That the Auditor of State be and he is hereby directed to institue a rigid inquiry as to labor performed by state convicts confined in the jails of Leavenworth and Douglas counties, as to labor performed for the counties, before he draws any order upon the Treasurer of State, for money appropriated at this session of the Legislature, in favor of either Douglas or Leavenworth counties, or the Sheriffs of the same, or either of the Penitentiary Commissioners, he shall be satisfied from investigation that the State has been and is credited for all labor performed by convicts for any party or parties as above.

*Auditor to institute inquiry.*

3

Digitized from Best Copy Available

Exhibit 10
Page 41

Case 8:23-cv-01798-CJC-ADS   Document 20-12   Filed 11/03/23   Page 42 of 67   Page ID #:929

## CHAPTER XII.

### ARMS.—PREVENT CARRYING OF.

AN ACT to prevent the carrying of Deadly Weapons.

*Be it enacted by the Legislature of the State of Kansas:*

SECTION 1.   Any person who is not engaged in any legitimate business, any person under the influence of intoxicating drink, and any person who has ever borne arms against the Government of the United States, who shall be found within the limits of this State, carrying on his person a pistol, bowie-knife, dirk or other deadly weapon, shall be subject to arrest upon charge of misdemeanor; and upon conviction shall be fined in a sum not exceeding one hundred dollars, or by imprisonment in the county jail not exceeding three months, or both, at the discretion of the court.

<div style="float:right">Conviction for carrying deadly weapons.</div>

SEC. 2.   Justices of the Peace shall have original jurisdiction of all cases arising under this Act, and on complaint being made, shall proceed to hear and determine the same in a summary manner, and shall have full authority to enforce both fine and imprisonment as provided in this Act, *Provided*, that nothing in this Act shall conflict with the ordinance of any incorporated city of the State.

<div style="float:right">Complaint made before Justice of the Peace.</div>

SEC. 3.   In all cases arising under this Act, the accused shall be entitled to a jury of six men, possessing the qualifications of electors, who, if they find the defendant guilty, shall assess the fine to be paid by him, and fix the term of his imprisonment; and if convicted, may appeal to the District Court of the proper county as in other cases provided by law.

<div style="float:right">Fine to be assessed.</div>

SEC. 4.   This Act to take effect and be in force from and after its publication.

Approved, February 23d, 1867.

S. J. CRAWFORD,
*Governor.*

Digitized from Best Copy Available

Exhibit 10
Page 42

# Exhibit 11

Exhibit 11
Page 43

# LAWS OF MISSOURI,

PASSED AT THE SESSION OF THE

## THIRTY-SECOND GENERAL ASSEMBLY,

BEGUN AND HELD AT THE CITY OF JEFFERSON,

## WEDNESDAY, JANUARY 3, 1883.

(REGULAR SESSION.)

*BY AUTHORITY.*



JEFFERSON CITY:
STATE JOURNAL COMPANY, STATE PRINTERS.
1883.

Exhibit 11
Page 44

76                    CRIMES AND CRIMINAL PROCEDURE.

*Be it enacted by the General Assembly of the State of Missouri, as follows:*

SECTION 1.   Any person or persons doing a commission business in this state who shall receive cattle, hogs, sheep, grain, cotton or other commodities consigned or shipped to him or them for sale on commission, and who shall wilfully make a false return to his or their consignor or shipper, in an account of sale or sales of any such cattle, hogs, sheep, grain, cotton or other commodities made and rendered by such person or persons for and to such consignor or shipper, either as to weights or prices, shall be guilty of a misdemeanor and shall, on conviction, be punished by imprisonment in the county jail not exceeding one year, or by a fine not exceeding five hundred dollars nor less than two hundred dollars, or by fine not less than one hundred dollars and imprisonment in the county jail not less than three months.

Approved April 2, 1883.

——————

CRIMES AND CRIMINAL PROCEDURE: CONCEALED WEAPONS.

AN ACT to amend section 1274, article 2, chapter 24 of the Revised Statutes of Missouri, entitled "Of Crimes and Criminal Procedure."

SECTION 1.   Carrying concealed weapon, etc., penalty for increased.

*Be it enacted by the General Assembly of the State of Missouri, as follows:*

SECTION 1.   That section 1274 of the Revised Statutes of Missouri be and the same is hereby amended by inserting the word "twenty" before the word "five" in the sixteenth line of said section, and by striking out the word "one" in the same line and inserting in lieu thereof the word "two," and by striking out the word "three" in the seventeenth line of said section and inserting in lieu thereof the word "six," so that said section, as amended, shall read as follows:   Section 1274.   If any person shall carry concealed, upon or about his person, any deadly or dangerous weapon, or shall go into any church or place where people have assembled for religious worship, or into any school room or place where people are assembled for educational, literary or social purposes, or to any election precinct on any election day, or into any court room during the sitting of court, or into any other public assemblage of persons met for any lawful purpose other than for militia drill or meetings called under the militia law of this state, having upon or about his person any kind of fire arms, bowie knife, dirk, dagger, slung-shot or other deadly weapon, or shall in the presence of one or more persons exhibit any such weapon in a rude, angry or threatening manner, or shall have or carry any such weapon upon or about his person when intoxicated or under the influence of intoxicating drinks, or shall directly or indirectly sell or deliver, loan or barter to any minor any such weapon, without the consent of the parent or guardian of such minor, he shall, upon conviction, be punished by a fine of not less than twenty-five nor more than two hundred dollars, or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment.

Approved March 5, 1883.

Exhibit 11
Page 45

# Exhibit 12

Exhibit 12
Page 46

# ANNOTATED STATUTES

OF

# WISCONSIN,

CONTAINING THE

# GENERAL LAWS IN FORCE OCTOBER 1, 1889,

ALSO

THE REVISERS' NOTES TO THE REVISED STATUTES OF 1858 AND 1878,
NOTES OF CASES CONSTRUING AND APPLYING THE CONSTITU-
TION AND STATUTES, AND THE RULES OF THE COUNTY
AND CIRCUIT COURTS AND OF THE SUPREME COURT.

BY

## ARTHUR L. SANBORN AND JOHN R. BERRYMAN.

BY AUTHORITY OF CHAPTER 222, LAWS OF 1889.

## VOL. II.

CHICAGO, ILL.:
CALLAGHAN AND COMPANY.
LAW BOOK PUBLISHERS.
1889.

Exhibit 12
Page 47

# PART IV.

## CRIMES AND THE PUNISHMENT THEREOF; PROCEEDINGS IN CRIMINAL CASES; AND PRISONS, THEIR MANAGEMENT AND DISCIPLINE.

## TITLE XXXII.

### CRIMES AND THE PUNISHMENT THEREOF.

CHAP. 181.  Of offenses against the lives and persons of individuals.
182.  Of offenses against property.
183.  Of offenses against public justice.
184.  Of offenses against the public peace.
185.  Of offenses against public policy.
186.  Of offenses against chastity, morality and decency.
187.  Of offenses against the public health.
188.  General provisions concerning crimes and punishments.

## CHAPTER CLXXXI.

### OF OFFENSES AGAINST THE LIVES AND PERSONS OF INDIVIDUALS.

**Homicide.** SECTION 4337. The killing of a human being, without the authority of law, by poison, shooting, stabbing, or any other means, or in any other manner, is either murder, manslaughter, or excusable or justifiable homicide, according to the facts and circumstances of each case.

[Sec. 1, ch. 133, R. S. 1849.]  Sec. 1, ch. 164, R. S. 1858.

Revisers' note to this title — Sections and provisions omitted and the reasons therefor. Sec. 26, ch. 164, R. S. 1858. This section is clearly in conflict with the constitution, art. 3. No one can be disfranchised for crime except on conviction. This section disfranchises for an act committed in another state, which may or may not be a crime in some states; and in no case necessarily upon conviction. The constitution authorizes the legislature to extend suffrage, but not restrict it, except in cases mentioned therein.

Sec. 30, ch. 164, R. S. 1858. This section prescribes the punishment of manslaughter, generally in conflict with the punishments provided for its different degrees.

Sec. 48, ch. 64, R. S. 1858. This section creates a very uncertain and loose offense in conflict with other provisions. Malicious killing is a higher crime than this is made, and wilful carelessness is punished by other provisions.

Secs. 49 and 50, ch. 164, R. S. 1858. Same provisions made elsewhere in this revision.

Sec. 17, ch. 165, R. S. 1858. Same provision elsewhere.

Sec. 26, ch. 125, R. S. 1858, and sec. 1, ch. 14, 1868. All these sections covered by the definition of the crime of "false pretenses."

Sec. 2, ch. 36, 1869. This and all other provisions specially requiring public officers to do their duty in certain cases, unnecessary, and leave the inference that they need not do it, in other cases.

2210

Exhibit 12
Page 48

persons passing over or near the same, shall be punished by fine not exceeding fifty dollars, nor less than two dollars.

Ch. 103, 1871.  The substance retained, but leaving responsibility with persons using machine to protect it from dangerous use.

This section does not apply to an agricultural society which leaves uncovered a coupling in a shaft used for transmitting power to machinery at a fair: *Phillips v. Agricultural Society*, 60 Wis., 401.

**Carrying concealed weapons.**  Section 4397.  Any person who shall go armed with any concealed and dangerous weapon, shall be punished by imprisonment in the county jail not more than six months, or by fine not exceeding one hundred dollars: provided, this section shall not apply to any policeman or officer authorized to serve process.

Sec. 1, ch. 7, 1872.

Dangerous weapon.  See note to sec. 4354.  See, as to minors and intoxicated persons, sec. 4397b.

**Toy fire-arms, sale or use of prohibited.**  Section 4397a.  [*Ch. 116, 1882.*]  1. It shall be unlawful for any person to sell or use, or have in his possession, for the purpose of exposing for sale or use, any toy pistol, toy revolver, or other toy fire-arm.

2. Any person violating any of the provisions of this act, on conviction thereof, shall be punished by imprisonment in the county jail not exceeding six months, or by fine not exceeding one hundred dollars, or by both fine and imprisonment, in the discretion of the court.

**Minors not to go armed.**  Section 4397b.  [*Ch. 329, 1883.*]  1. It shall be unlawful for any minor, within this state, to go armed with any pistol or revolver, and it shall be the duty of all sheriffs, constables, or other public police officers, to take from any minor any pistol or revolver, found in his possession.

**Revolvers, etc., not to be sold to minors.**  2. It shall be unlawful for any dealer in pistols or revolvers, or any other person, to sell, loan or give any pistol or revolver to any minor in this state.

**Intoxicated persons not to go armed.**  3. It shall be unlawful for any person in a state of intoxication to go armed with any pistol or revolver. Any person violating the provisions of this act shall be punished by imprisonment in the county jail not exceeding six months, or by fine not exceeding one hundred dollars.

**Penalty for assault and for using abusive language.**  Section 4398.  [*As amended by ch. 189, 1882.*]  Any person who shall assault another, when not excusable or justifiable, or who shall use in reference to and in the presence of another, or in reference to and in the presence of any member of his family, abusive or obscene language, intended or naturally tending to provoke an assault or any breach of the peace, shall be punished by imprisonment in the county jail not more than three months, or by fine not exceeding one hundred dollars.  The provisions of this section shall not be applicable to any city or village which has enacted an ordinance under its charter for the punishment of the same or similar offense.

New section.  Laws of Indiana and Ohio.

A complaint under this section must set forth the language used: *Steuer v. State*, 59 Wis., 472.  And allege that it was used in the presence of the complainant or of some member of his family: *Peters v. State*, 66 id., 339. And the name, if it is known, of the person in reference to and in whose presence the language was used: *State v. Clarke*, 31 Minn., 207.

The words " wanton or obscene language," as used in a city ordinance, *held* equivalent to lewd or lascivious language: *Sutton v. McConnell*, 46 Wis., 269.

**The manufacture, sale and transportation of articles for unlawful purposes prohibited.**  Section 4398a.  [*Sec. 1, ch. 342, 1885.*]  Any per-

Exhibit 12
Page 49

# Exhibit 13

Exhibit 13
Page 50

# LAWS

## OF THE

# STATE OF MISSISSIPPI,

### PASSED AT A REGULAR SESSION

#### OF THE

# MISSISSIPPI LEGISLATURE,

##### HELD IN THE

## CITY OF JACKSON,

Commencing Jan. 8th, 1878, and Ending March 5th, 1878.

PRINTED BY AUTHORITY.

JACKSON, MISS.:
POWER & BARKSDALE, STATE PRINTERS.
1878.

Exhibit 13
Page 51

## CHAPTER XLVI.

AN ACT to prevent the carrying of concealed weapons, and for other purposes.

SECTION 1. *Be it enacted by the Legislature of the State of Mississippi,* That any person, not being threatened with, or having good and sufficient reason to apprehend an attack, or traveling (not being a tramp) or setting out on a journey, or peace officers, or deputies in discharge of their duties, who carries concealed, in whole or in part, any bowie knife, pistol, brass knuckles, slung shot or other deadly weapon of like kind or description, shall be deemed guilty of a misdemeanor, and on conviction, shall be, punished for the first offence by a fine of not less than five dollars nor more than one hundred dollars, and in the event the fine and cost are not paid shall be required to work at hard labor under the direction of the board of supervisors or of the court, not exceeding two months, and for the second or any subsequent offence, shall, on conviction, be fined not less than fifty nor more than two hundred dollars, and if the fine and costs are not paid, be condemned to hard labor not exceeding six months under the direction of the board of supervisors, or of the court. That in any proceeding under this section, it shall not be necessary for the State to allege or prove any of the exceptions herein contained, but the burden of proving such exception shall be on the accused.

*When concealed weapons may be carried.*

*Penalty for carrying weapons.*

*Burden of proof on accused.*

SEC. 2. *Be it further enacted,* That it shall not be lawful for any person to sell to any minor or person intoxicated, knowing him to be a minor or in a state of intoxication, any weapon of the kind or description in the first section of this Act described, or any pistol cartridge, and on conviction shall be punished by a fine not exceeding two hundred dollars, and if the fine and costs are not paid, be condemned to hard labor under the direction of the board of supervisors or of the court, not exceeding six months.

*Minors, or persons intoxicated.*

Exhibit 13
Page 52

176                              LAWS OF THE

**Minor under 16 years.**

SEC. 3. *Be it further enacted*, That any father, who shall knowingly suffer or permit any minor son under the age of sixteen years to carry concealed, in whole or in part, any weapon of the kind or description in the first section of this Act described, shall be deemed guilty of a misdemeanor, and on conviction, shall be fined not less than twenty dollars, nor more than two hundred dollars, and if the fine and costs are not paid, shall be condemned to hard labor under the direction of the board of supervisors or of the court.

**Students.**

SEC. 4. *Be it further enacted*, That any student of any university, college or school, who shall carry concealed, in whole or in part, any weapon of the kind or description in the first section of this Act described, or any teacher, instructor, or professor who shall, knowingly, suffer or permit any such weapon to be carried by any student or pupil, shall be deemed guilty of a misdemeanor, and, on conviction, be fined not exceeding three hundred dollars, and if the fine and costs are not paid, condemned to hard labor under the direction of the board of supervisors or of the court.

**Tax fee of justice.**

SEC. 5. *Be it further enacted*, That each justice of the peace before whom a conviction is had, shall, in addition to the costs now allowed by law, be entitled to a tax fee of two dollars and a half.

**Act to be read in courts**

SEC. 6. *Be it further enacted*, That immediately after the passage of this Act, the Secretary of State shall transmit a copy to each circuit judge in the State, who shall cause the same to be read in open court on the day for the calling of the State docket of the court.

SEC. 7. *Be it further enacted*, That this Act take effect from and after its passage.

APPROVED, February 28, 1878.

Exhibit 13
Page 53

# Exhibit 14

Exhibit 14
Page 54

# LAWS

OF THE

## TERRITORY OF NEW MEXICO,

PASSED BY THE SECOND

# LEGISLATIVE ASSEMBLY

IN THE CITY OF SANTA FÉ,

AT A SESSION BEGUN ON THE SIXTH DAY OF DECEMBER, 1852.

———————————

SANTA FÉ:

J A M E S  L.  C O L L I N S  &  C O.,  P R I N T E R S.
MDCCCLIII.

Digitized from Best Copy Available

Exhibit 14
Page 55

# LEYES

DEL

## TERRITORIO DE NUEVO MEJICO,

PASADAS POR LA SEGUNDA

# ASAMBLEA LEGISLATIVA

EN LA CIUDAD DE SANTA FÉ,

EN UN PERIODO PRINCIPIADO EL DIA SESTO DE DICIEMBRE
DE 1852.

SANTA FÉ:
PUBLICADO EN LA OFICINA DE LA GACETA,
MDCCCLIII.

Digitized from Best Copy Available

Exhibit 14
Page 56

OFICINA DE LA GACETA:
J. L. COLLINS Y W. G. SEPHART, IMPRESORES.
1853.

Digitized from Best Copy Available

Exhibit 14
Page 57

# LAWS.
## SECOND LEGISLATIVE ASSEMBLY.

Digitized from Best Copy Available

Exhibit 14
Page 58

the Justices of the Peace or Court in which the suit may be brought, with imprisonment for a time demanded by the gravity of the offence.

SEC. 4. All acts and parts of acts repugnant to this act shall be and are by these presents repealed.

SEC. 5. This act shall take effect, from and after its approval,

Translation.

---

## AN ACT

*Prohibiting the carrying a certain class of Arms, within the Settlements and in Balls.*

Sec. 1. Kind of arms prohibited.
Sec. 2. Duties of sheriffs and constables.
Sec. 3. Licenses for dances, obligations required from judge of probate.
Sec. 4. Punishment for violation of this law.
Sec. 5. Disposition of fines.

*Be it enacted by the Legislative Assembly of the Territory of New Mexico :*

SEC. 1. That each and every person is prohibited from carrying short arms, such as pistols, daggers, knives, and other deadly weapons, about their persons concealed, within the settlements, and any person who violates the provisions of this act, shall be fined in a sum not exceeding ten dollars, nor less than two dollars, or shall be imprisoned for a term not exceeding fifteen days nor less than five days.

SEC. 2. That the Sheriffs of the different counties, and Constables of the different precincts, are hereby required to enforce the observance and compliance of the provisions of the preceding section, having power to take with them, two or more armed persons, when they are on patrol at night, in order to make themselves respected while on such duty, and it is hereby made the duty of the Probate Judges and Justices of the Peace to aid and assist said officers in the prompt discharge of their duties.

SEC. 3. Any person desiring to give a Ball or Fandango, they shall apply to the Probate Judge or a Justice of the Peace

Digitized from Best Copy Available

Exhibit 14
Page 59

for a License for the same—who, after having granted such license, shall inform the applicant, that he must maintain good order, and for this purpose he shall swear him to faithfully discharge his duties as police officer and perform said duties during such Ball or Fandango, possessing the powers of a Sheriff, and that he will not permit any person to enter said Ball or room adjoining said ball where Liquors are sold, or to remain in said balls or Fandangos with fire arms or other deadly weapons, whether they be shown or concealed upon their persons and if any person or persons shall enter said Balls or Fandangos or ante-chamber, with deadly weapons upon their person, upon conviction for such offence before any Probate Judge or Justice of the Peace, they shall suffer the punishment prescribed in the first section of this Law.

*Provided*, that, in case any person desires a license for a ball or fandango, who shall not be competent, the Probate Judge or Justice of the Peace as the case may be, shall require him to present a competent person, who shall discharge the duties of a Police Officer, and shall swear him as prescribed in the foregoing section.

SEC. 4.   That any person or persons giving Balls or Fandangos shall be liable to the punishments prescribed in the foregoing sections of this Law—if they permit any person or persons armed to remain in said Balls or Fandangos, they shall also be subject to the same penalties of the Police Officers who fail to discharge their duties or violate the provisions of this Law.

SEC. 5.   That all fines collected by the provisions of this Law shall be applied to the use of the respective counties.

Translation.

# AN ACT

*Providing for the payment of the Salaries of Territorial
Officers, not otherwise provided for by Law.*

Sec. 1.   Payment of officers under the Kearney code.
Sec. 2.   How audited and paid.

Digitized from Best Copy Available

Exhibit 14
Page 60

# Exhibit 15

Exhibit 15
Page 61

# JEWELL'S DIGEST

OF THE

# CITY ORDINANCES,

TOGETHER WITH THE

CONSTITUTIONAL PROVISIONS, ACTS OF THE GENERAL ASSEMBLY
AND DECISIONS OF THE COURTS RELATIVE TO
THE GOVERNMENT

OF THE

# CITY OF NEW ORLEANS



BY AUTHORITY OF THE CITY COUNCIL.

---

COMPILED AND PUBLISHED BY EDWIN L. JEWELL,
ATTORNEY AT LAW.

---

NEW ORLEANS.
1882.

Generated on 2023-07-07 17:55 GMT / https://hdl.handle.net/2027/nyp.33433148832970
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google


Digitized by Google

Original from
NEW YORK PUBLIC LIBRARY

Exhibit 15
Page 62



THE NEW YORK
PUBLIC LIBRARY
622057
ASTOR, LENOX AND
TILDEN FOUNDATIONS
R          19 4          L



Entered according to Act of Congress in the year 1881, by

EDWIN L. JEWELL,

In the Office of the Librarian of Congress at Washington.

Generated on 2023-07-07 17:55 GMT  /  https://hdl.handle.net/2027/nyp.33433014832970
Public Domain, Google-digitized  /  http://www.hathitrust.org/access_use#pd-google

Digitized by Google

Original from
NEW YORK PUBLIC LIBRARY

Exhibit 15
Page 63

# LAWS AND ORDINANCES

## OF THE

# CITY OF NEW ORLEANS.

## I TITLE.

## AMUSEMENTS.

### CHAPTER FIRST.

### GENERAL ORDINANCES.

ARTICLE 1.  That hereafter it shall not be lawful for any person to carry a dangerous weapon, concealed or otherwise, into any theatre, public hall, tavern, pic-nic ground, place for shows or exhibitions, house or other place of public entertainment or amusement.

ART. 2.  That any person violating the provisions of the first section of this ordinance, by carrying a dangerous weapon, not concealed, into any of the places designated in said section, shall be subject to the payment of a fine not exceeding twenty-five dollars, or to imprisonment in the parish prison not to exceed twenty days, to be imposed by the Recorder within whose jurisdiction the offense is committed.

ART. 3.  That any person violating the provisions of the first section of this ordinance by carrying a dangerous weapon concealed about his person, in any of the places designated in said section, shall be arrested and prosecuted for violation of the law relative to the carrying of dangerous weapons concealed about the person.

ART. 4.  That the Chief of Police and the members of the police force of the city of New Orleans be charged with the enforcement of this ordinance, and to that end they are authorized and required to examine all persons entering any of the places specified in section one of this ordinance, and to arrest and prefer the proper charge against all persons violating this ordinance.

ART. 5.  That the provisions of this ordinance shall not apply to the officers and members of military organizations, when acting as such, nor to the carrying of arms or weapons intended to be used in any show, exhibition or other entertainment.

*Marginal notes:*
Concealed weapons or otherwise in halls or theatres. May, 1879. A. S. 5045,

Penalty. Ibid.

Penalty. Ibid.

Police to enforce ordinance. Ibid.

Military organizations excepted.

Generated on 2021-07-06 17:08 GMT / https://hdl.handle.net/2027/nyp.33433014882970
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

Digitized by Google

Original from
NEW YORK PUBLIC LIBRARY

Exhibit 15
Page 64

2                                I TITLE—AMUSEMENTS.

Copy of this
ordinance to be
posted.
Dec. 1856.
O. S. 3131.

ART. 6.   That a printed copy of the ordinances concerning public balls, theatres and public exhibitions, be placed in a conspicuous position within the enclosure of said balls, theatres and public exhibitions, for the purpose of reference; and, that in case of neglect or refusal of the managers or owners of such places to comply with the provisions of this section, they shall be liable to a fine of fifty dollars for said offence, recoverable before any court of competent jurisdiction; and the police officers on duty shall compel the owners of the balls, theatres, etc., to close for that night.

## CHAPTER SECOND.
### BALLS.

Permission to
be obtained for
balls.
May, 1859.
O. S. 4532.

ART. 7.   It shall not be lawful for any person or persons to give, within the limits of the city, any public balls, of whatsoever description, under the penalty of fifty dollars fine for each and every contravention, unless permission, in writing, be previously obtained from the Mayor to give said ball or balls, and after payment of license tax.

Mayor to close
balls.
Ibid.

ART. 8.   Whenever the foregoing provision shall be violated, it shall be the duty of the mayor to cause the said ball or balls to be closed immediately by the police.

Duration of
the ball. Ibid.

ART. 9.   Every person giving a public ball, who shall prolong the duration of the same beyond the hour fixed by the Mayor's permit, shall pay a fine of twenty-five dollars for each and every such offence.

License for
public balls.
Ibid.

ART. 10   That the Mayor of the city of New Orleans be, and he is hereby requested not to issue in future any license to parties asking for them, to give public balls, when such balls are knowingly derogatory to public morals and decency, or in anywise considered a public nuisance.

## CHAPTER THIRD.
### THEATRES.

Permission
and tax.
May, 1859.
O. S. 4582.

ART. 11.   No person shall exhibit or cause to be exhibited any dramatic composition, ballet, pantomime or other performance of that kind, in any theatre in the city where all persons are admitted for their money, nor shall any person entertain the public with any display of fire-works, without having obtained from the Mayor permission for that purpose, and paid the tax thereon, under a penalty of a fine of twenty-five dollars for every such offence; and the said permission shall express the object and the length of time for which it is granted.

Generated on 2023-07-00 17:09 GMT  /  https://hdl.handle.net/2027/nyp.33433014882970
Public Domain, Google-digitized  /  http://www.hathitrust.org/access_use#pd-google

Digitized by Google

Original from
NEW YORK PUBLIC LIBRARY

Exhibit 15
Page 65

# Exhibit 16

Exhibit 16
Page 66

## Concerning the Carrying of Arms or Deadly Weapons.

Be it ordained by the City Council of the City of San Antonio,

SECTION 1. That if any person shall, within the Corporate limits of the City of San Antonio, go into any church, or religious assembly, any school-room, or other place where persons are assembled, for educational, literary or scientific purposes, or into any ball room, social or wedding party, or other assembly or gathering, for amusement or instruction, composed of ladies and females, or to any election precinct in the city, on the day or days of any election, or into any Court room or court of Justice, or to any other place where people or individuals may be assembled, to perform any public duty, or shall go into any other public assembly, or shall enter any barroom, drinking saloon or any other place where people resort for business or amusement, or shall join or accompany any public procession, having about his or her person, a bowie-knife, dirk, or butcher-knife or any firearms or arms, whether known as six-shooter, gun or pistol of any kind, or having about his or her person, what is known as brass-knuckles, slung shot, club, loaded or sword cane, or any other weapon of offence or defence. Such person shall be deemed guilty of a misdemeanor, and upon conviction thereof, before the Recorder of the city, shall be fined not less than five dollars nor more than one hundred dollars and costs, and in default of payment, shall be confined in the city prison, or placed at hard labor on the public works of the city, for not less than five days, nor more than thirty days, to be determined by the Recorder; Provided, this Ordinance shall not apply to any legally authorized conservator of the peace, when he may be in the lawful discharge of his duty.

SEC. 2. It shall be the duty of the Police of the city to strictly enforce this Ordinance, and promptly to arrest and disarm any person violating the same; Provided, that in all cases where arms are taken possession of by the police, as herein provided, they shall be returned to the owner when he leaves the city.

SEC. 3. This ordinance shall take effect and be in force from and after its publication.

Approved, San Antonio, December 14th, A. D. 1870.

WM. C. A. THIELEPAPE,
Mayor City of San Antonio.

Attest:
G. W. BARTHOLOMEW, Jr., City Clerk.
20-12-70d106.

Exhibit 16
Page 67