1  ROB BONTA
   Attorney General of California
2  R. MATTHEW WISE
   MARK R. BECKINGTON
3  Supervising Deputy Attorneys General
   TODD GRABARSKY
4  JANE REILLEY
   LISA PLANK
5  ROBERT L. MEYERHOFF
   Deputy Attorneys General
6  State Bar No. 298196
    300 South Spring Street, Suite 1702
7   Los Angeles, CA  90013-1230
    Telephone:  (213) 269-6177
8   Fax:  (916) 731-2144
    E-mail:  Robert.Meyerhoff@doj.ca.gov
9  *Attorneys for Rob Bonta in his official capacity as*
   *Attorney General of the State of California*
10
                 IN THE UNITED STATES DISTRICT COURT
11
                 FOR THE CENTRAL DISTRICT OF CALIFORNIA
12

13

| | |
|---|---|
| 14  **RENO MAY, et al.,** | Case Nos. 8:23-cv-01696 CJC (ADSx) |
| 15                          Plaintiffs, | 8:23-cv-01798 CJC (ADSx) |
| 16  v. | **DEFENDANT'S OPPOSITION TO PLAINTIFFS' REQUEST TO EXCLUDE OR DISREGARD TESTIMONY OF DEFENDANT'S DECLARANTS** |
| 17  **ROBERT BONTA, in his official capacity as Attorney General of the State of California, and Does 1-10,** | |
| 18 | |
| 19                          Defendants. | Date:         December 20, 2023 |
| 20 | Time:         1:30 p.m. |
|  | Courtroom:  9B |
|  | Judge:        Hon. Cormac J. Carney |
| 21  **MARCO ANTONIO CARRALERO, et al.,** | |
| 22                          Plaintiffs, | |
| 23  v. | |
| 24  **ROB BONTA, in his official capacity as Attorney General of California,** | |
| 25 | |
| 26                          Defendant. | |

27

28

# TABLE OF CONTENTS

**Page**

Introduction ....................................................................................................... 1

Background ......................................................................................................... 1

Legal Standard ................................................................................................... 3

Argument ............................................................................................................ 4

I.     Historical Context Is Relevant to the *Bruen* Analysis ........................ 4

II.    Each Expert's Declaration Is Relevant to the *Bruen* Analysis and Is Otherwise Admissible ........................................................................... 6

      A.    Professor Leah Glaser's Expert Testimony Concerning Parks Should Be Admitted. ................................................................. 6

      B.    Professor Jean Kisacky and Mary Fissell's Expert Testimony Concerning Hospitals Should Be Admitted. ............ 8

      C.    Professor Joshua Salzmann's Expert Testimony Concerning Transportation Should Be Admitted. ...................... 9

      D.    Professor Sharon Murphy's Expert Testimony Concerning the Development of American Financial Institutions Should Be Admitted. ............................................. 10

      E.    Professor Michael Kevane's Testimony Concerning Public Libraries Should Be Admitted. ................................... 11

      F.    Professor Zachary Schrag's Testimony Concerning Historical Method Should Be Admitted. ................................ 11

      G.    Professor Adam Winkler's Declaration Opining on the Historical Pedigree of Certain Sensitive Place Restrictions Should Be Admitted. ................................................................. 12

Conclusion ........................................................................................................ 13

# TABLE OF AUTHORITIES

**Page**

CASES

*A.A. v. Raymond*
2013 WL 3816565 (E.D. Cal. July 22, 2013) ..................................................3, 4

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*
738 F.3d 960 (9th Cir. 2013)...............................................................................3

*Burton v. Am. Cyanamid*
No. 07-CV-0303, 2018 WL 3954858 (E.D. Wis. Aug. 16, 2018) ......................6

*Cooper-Harris v. United States*
2013 WL 12125527 (C.D. Cal. Feb. 8, 2013)..................................................6, 7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
509 U.S. 579 (1993) .........................................................................................3, 4

*Defs. of Wildlife & S.C. Coastal Conservation League v. Boyles*
2023 WL 2770280 (D.S.C. Apr. 4, 2023)............................................................3

*District of Columbia v. Heller*
554 U.S. 570 (2008) .........................................................................................5, 8

*Elosu v. Middlefork Ranch Inc.*
26 F.4th 1017 (9th Cir. 2022) ............................................................3, 8, 9, 11

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*
142 S. Ct. 2111 (2022) ..............................................................................*passim*

*Oregon Firearms Fed'n, Inc. v. Brown*
644 F. Supp. 3d 782 (D. Or. 2022) .....................................................................5

*Primiano v. Cook*
598 F.3d 558 (9th Cir. 2010)...............................................................................3

*SPS Techs., LLC v. Briles Aerospace, Inc.*
2021 WL 4913509 (C.D. Cal. Sept. 8, 2021)....................................................13

*United States v. Kantengwa*
781 F.3d 545 (1st Cir. 2015) ............................................................................12

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Williams v. Toyota Motor Corp.*
   2009 WL 305139 (E.D. Tex. Feb. 6, 2009) .........................................................7

**CONSTITUTIONAL PROVISIONS**

Second Amendment ...........................................................................................*passim*

**COURT RULES**

Federal Rule of Evidence 702 .....................................................................................3

1

### INTRODUCTION

The Supreme Court explained in *Bruen* that "[t]he job of judges is not to resolve historical questions in the abstract; it is to resolve legal questions presented in particular cases or controversies." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2130 n.6 (2022). To do that work "in our adversarial system of adjudication, we follow the principle of party presentation. Courts are thus entitled to decide a case based on the historical record compiled by the parties." *Id.* (internal citation and quotation omitted).

Here, in response to the *May* and *Carralero* Plaintiffs' motions for preliminary injunction, Defendant served declarations from thirteen expert witnesses to assist the Court in understanding the relevant historical record. The *May* Plaintiffs seek to exclude consideration of declarations from eight of those experts: Leah Glaser, Jeanne Kisacky, Mary Fissell, Joshua Salzmann, Sharon Murphy, Michael Kevane, Zachary Schrag, and Adam Winkler. *See May* Dkt. Nos. 21-3, 21-4, 21-5, 21-6, 21-8, 21-10, 21-11, and 21-12. Plaintiffs do not contest the qualifications of these experts, but instead raise various challenges to the admissibility of their testimony, none of which are availing. Contrary to Plaintiffs' arguments, these experts provide testimony that is relevant under the text-and-history standard for Second Amendment claims adopted in *Bruen*, and their testimony is reliable and otherwise admissible. Because the *May* Plaintiffs' arguments are largely premised on an overly narrow reading of *Bruen* and inaccurate characterizations of the experts' declarations, the Court should deny the *May* Plaintiffs' motion in its entirety.

### BACKGROUND

In September of this year, California enacted Senate Bill 2 (SB 2) to implement a shall-issue permitting regime for the concealed carry of firearms in the

Defendant's Opposition to Request to Exclude
(Case Nos. 8:23-cv-01696 and 8:23-cv-01798)

1  State.  As part of that statutory regime, one section of SB 2 places limits on where

2  licensees may carry arms in certain sensitive places.[1]

3      The *May* Plaintiffs challenge some of SB 2's sensitive places provisions as

4  unconstitutional under the Second Amendment (*id*. at ¶¶ 115-121) and the

5  Fourteenth Amendment's Due Process Clause (*id*. ¶¶ 122-129), and they challenge

6  on First Amendment grounds SB 2's provision allowing property owners to post a

7  sign authorizing individuals to carry concealed weapons on their property (*id*.

8  ¶¶ 130-136).  The *Carralero* Plaintiffs filed a separate but similar lawsuit.

9  *Carralero* Dkt. No. 1.  In each case, Plaintiffs filed a motion for a preliminary

10  injunction.  *Carralero* Dkt. No. 6, 6-1; *May* Dkt. No. 13, 13-1.  Both sets of

11  Plaintiffs seek to enjoin SB 2's restrictions on carrying firearms in health care

12  facilities, on public transit, at establishments that sell liquor for consumption on

13  site, at public gatherings and special events, in parks and athletic facilities, on

14  property controlled by the State Department of Parks and Recreation or Department

15  of Fish and Wildlife, at libraries and museums, and on private property without the

16  owner's consent.  *May* Dkt. No. 13-1; *Carralero* Dkt. No. 6-1.  The *May* Plaintiffs

17  also seek to enjoin restrictions on carrying firearms in local government buildings,

18  at playgrounds and youth centers, in religious buildings without the operator's

19  consent, and at financial institutions.  *May* Dkt. No. 13.  The *Carralero* Plaintiffs

20  also seek to enjoin restrictions on carrying firearms at casinos, stadiums, and

21  amusement parks.  *Carralero* Dkt. No. 6-1.

22      On November 3, 2023, Defendant filed briefs opposing both motions. *May*

23  Dkt. No. 21; *Carralero* Dkt. No. 20.  Defendant submitted declarations from

24  thirteen historians, all of whom are leading experts in their respective fields.  *May*

25  Dkt. No. 21-1–21-13; *Carralero* Dkt. No. 20-1–20-13. On November 20, 2023,

26  Plaintiffs filed their reply briefs in support of their motions, *May* Dkt. No. 29;

27  [1] For the complete text of the law, *see* S.B. 2, 2023-24 Reg. Sess. (Cal. 2023),
28  *available at* https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=202320240SB2.

*Carralero* Dkt. No. 29, and the *May* Plaintiffs filed the instant motion, *May* Dkt. No. 29-14, without meeting and conferring with Defendant, filing a notice of motion, or lodging a proposed order with the Court (all of which the Local Rules require).  *See* C.D. L.R. 6-1 (Notice and Service of Motion), 7-3 (Conference of Counsel Prior to Filing of Motion), and 7-20 (Orders on Motions and Applications).

## LEGAL STANDARD

Federal Rule of Evidence 702 permits expert testimony from a witness who is "qualified as an expert by knowledge, skill, experience, training, or education." The inquiry into the admissibility is a "flexible one."  *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–94 (1993)).  Under *Daubert*, the role of the district court is that of "a gatekeeper, not a fact finder."  *Id.* at 565 (quotation marks omitted).

Under *Daubert*, expert opinion testimony is reliable "if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline."  *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) (quotation marks omitted).  And as a general matter, arguments questioning an expert's impartiality or credibility go to "the weight of the [expert's] testimony," "not its admissibility."  *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013).

While "[i]t is the job of this Court to serve as a gatekeeper for expert testimony, . . . the standards by which the Court examines evidence are relaxed at the preliminary injunction stage."  *Defs. of Wildlife & S.C. Coastal Conservation League v. Boyles*, 2023 WL 2770280, at *1 (D.S.C. Apr. 4, 2023).  This is because the "*Daubert* analysis is especially flexible when the finder of fact is a judge rather than a jury, when the gatekeeper and the gated community are one and the same." *A.A. v. Raymond*, 2013 WL 3816565, at *4 (E.D. Cal. July 22, 2013). Thus, the Court "may admit expert testimony for purposes of a preliminary injunction

Defendant's Opposition to Request to Exclude
(Case Nos. 8:23-cv-01696 and 8:23-cv-01798)

1    evidentiary hearing and conduct its *Daubert* analysis in tandem with its assessment

2    of the evidence's weight." *Id.*

3                                    **ARGUMENT**

4    **I.    HISTORICAL CONTEXT IS RELEVANT TO THE *BRUEN* ANALYSIS**

5         The *May* Plaintiffs' motion to exclude the declarations of eight of the Attorney

6    General's expert witnesses should be denied because the challenged testimony is

7    relevant under the new *Bruen* standard (and, as explained below, is reliable and

8    otherwise admissible under the Federal Rules of Evidence).  Plaintiffs argue that the

9    testimony of these expert witnesses should be disregarded because of "the lack of

10   relevance of their opinions." *May* Mot. at 3.  According to Plaintiffs, this is so

11   because "very little of [it] discusses or addresses the core issue . . . —if SB 2's

12   'sensitive places' restrictions are consistent with this nation's historical tradition of

13   firearms regulation." *Id.*  But each of the challenged expert declarations does

14   exactly that.

15        In *Bruen*, the Supreme Court held that New York's "proper cause"

16   requirement for concealed-carry licenses violated the Second Amendment.  142 S.

17   Ct. at 2134–56.  The Court also announced a new standard for adjudicating Second

18   Amendment claims, one "centered on constitutional text *and history*." *Id.* at 2128–

19   29 (emphasis added).  Under this text-and-history approach, courts must first

20   determine whether "the Second Amendment's plain text covers an individual's

21   conduct," *id.* at 2129–30—i.e., that the challenged regulation prevents law-abiding

22   citizens from "keep[ing]" or "bear[ing]" protected "Arms," U.S. Const. amend. II.

23   If it does, "the Constitution presumptively protects that conduct," and "[t]he

24   government must then justify its regulation by demonstrating that it is consistent

25   with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at

26   2130.  To satisfy this burden, the government must identify a "well-established and

27   representative historical *analogue*"—not a "historical *twin*" or "dead ringer"—to

28   the challenged law, that is "relevantly similar" according to "two metrics":  "how

and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133.  Thus, the historical comparator must have "impose[d] a comparable burden on the right of armed self-defense" that is also "comparably justified." *Id*.

Additionally, the Court in *Bruen* found that a "more nuanced" analytical approach should be applied where the challenged modern firearms regulation is designed to address "unprecedented societal concerns" or "dramatic technological changes," because "[t]he regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791 or the Reconstruction generation in 1868."  142 S. Ct. at 2132–33; *see also id.* at 2133 ("[C]ourts can use analogies to those historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in new and analogous sensitive places are constitutionally permissible.").

As explained herein, the challenged expert testimony is relevant to the *Bruen* analysis because *Bruen* "instructed lower courts to consider the 'how and why' of a particular regulation in historical context." *Oregon Firearms Fed'n, Inc. v. Brown*, 644 F. Supp. 3d 782, 806 (D. Or. 2022), *appeal dismissed*, 2022 WL 18956023 (9th Cir. Dec. 12, 2022).  The Court observed that "[h]istorical evidence" could "illuminate the scope of the right," and recounted that the *Heller* Court examined "a variety of legal *and other sources* to determine the public understanding of [the Second Amendment] after its . . . ratification." *Bruen*, 142 S. Ct. at 2136 (emphasis added); *see also id*. at 2132 (noting that "a short review of the *public discourse* surrounding Reconstruction is useful" in reaching a conclusion on the scope of the Second Amendment) (emphasis added).

Here, the experts whose declarations the *May* Plaintiffs challenge not only identify historically analogous laws, but also provide historical context explaining why a more nuanced approach is called for with regard to particular sensitive place restrictions, and why the burdens and justifications of historical laws and their

1  modern analogues are comparable.  These declarations are thus relevant to the

2  *Bruen* analysis.

3  　　　The *May* Plaintiffs' criticisms of the challenged expert declarations lack merit.

4  The *May* Plaintiffs contend that the challenged declarations do not "assist the fact

5  finder with understanding complicated technical issues that are beyond the ordinary

6  fact finder's ability to understand," *May* Mot. at 1, yet courts have routinely

7  "recognize[d] the helpfulness of expert historians testifying" in ways that

8  "situate[e] [a] document in its historical context," "provid[e] a meta-understanding

9  of the historical record itself," and "synthes[ize] [] various source materials that

10  enable[] the [finder of fact] to perceive patterns and trends."  *See Burton v. Am.*

11  *Cyanamid*, No. 07-CV-0303, 2018 WL 3954858, at *4 (E.D. Wis. Aug. 16, 2018)

12  (collecting cases).

13  　　　The *May* Plaintiffs also argue that the challenged experts sometimes engage in

14  "speculat[ion], without citation to any evidence or laying a prior foundation." *May*

15  Mot. at 4.  That is inaccurate—each of the challenged declarations explains the

16  foundation of the expert's opinion and is replete with citations to source material.

17  But even if the *May* Plaintiffs were correct, each of Defendant's experts has

18  considerable background (and are leading figures) in their respective fields, and

19  "the Ninth Circuit has upheld the admissibility of experts relying primarily on

20  knowledge and experience."  *Cooper-Harris v. United States*, 2013 WL 12125527,

21  at *5 (C.D. Cal. Feb. 8, 2013).

22  **II.　EACH EXPERT'S DECLARATION IS RELEVANT TO THE *BRUEN* ANALYSIS**
    **AND IS OTHERWISE ADMISSIBLE**

23

24  　　　**A.　Professor Leah Glaser's Expert Testimony Concerning Parks**
    **Should Be Admitted.**

25  　　　Professor Glaser's declaration is relevant to the *Bruen* analysis because it

26  provides a reliable historical account of how parks today are not analogous to parks

27  that would have existed during the relevant historical period under *Bruen*, and thus

28

1   supports the conclusion that a more nuanced approach is called for with regard to

2   SB 2's restriction on carrying firearms in parks.

3       As a tenured Professor of History at Central Connecticut State University who

4   has long focused on historic preservation and conservation and who currently

5   serves as a Project Historian for the National Park Service (NPS), Professor Glaser

6   is indisputably an expert in the subjects on which she opined. *See May* Dkt. No.

7   21-4 [Glaser Decl.], ¶¶ 3-7 & Ex. 1 (outlining Professor Glaser's qualifications);

8   Professor Glaser's opinion is based on her decades studying American History,

9   twenty years of teaching college courses on American History, the American West,

10  Public History, and Environmental History, as well as the impressive range of

11  books, articles, statutes, reports, and digests she cites to as support on the topic. *See*

12  *id*.; *see also id*. at fns. 1–60.

13      The *May* Plaintiffs criticize Professor Glaser's declaration for being "rangy,"

14  and assert that she "bombard[ed]" the Court with information in her declaration.

15  *May* Mot. at 5.  But the Federal Rules of Evidence and Civil Procedure caution

16  litigants not "to provide a bare bones report at the outset only to later bombard their

17  adversary with the full extent of their experts' opinions." *Williams v. Toyota Motor*

18  *Corp.*, 2009 WL 305139, at *2 (E.D. Tex. Feb. 6, 2009).

19      The *May* Plaintiffs also argue that Professor Glaser's declaration does not

20  "give[] the Court even the remotest idea what facts and rationale underlaid her

21  inexplicable conclusion about the existence of firearms regulations." *May* Mot. at

22  5.  Yet they concede that her conclusions rely on explaining, with context, the

23  "history of spectator sports, playgrounds, and even exhibits such as world's fairs."

24  *Id.*  And, as a matter of law, an expert can properly rely "primarily on knowledge

25  and experience rather than a particular methodology or technical framework."

26  *Cooper-Harris*, 2013 WL 12125527, at *5.

27

28

Defendant's Opposition to Request to Exclude
(Case Nos. 8:23-cv-01696 and 8:23-cv-01798)

**B.    Professor Jean Kisacky and Mary Fissell's Expert Testimony Concerning Hospitals Should Be Admitted.**

Professors Kisacky and Fissell's expert testimony is relevant to the *Bruen* analysis because they detail how health care facilities and hospitals have undergone dramatic technological changes since the time of the Founding and Reconstruction, warranting a more nuanced approach under *Bruen*.  Both professors are experts in the history of medical facilities in the United States.  *See May* Dkt. No. 21-6 [Kisacky Declaration], ¶ 3 & Ex. 1 (outlining Dr. Kisacky qualifications); *May* Dkt. No. 21-3 [Fissell Declaration], ¶ 3 & Ex. 1 (outlining Dr. Fissell's qualifications). Their declarations describe how hospitals in the Founding era were different from hospitals today—which, in turn, explains why there was a lack of statutory regulation of such institutions during that period.  *See, e.g.,* Fissell Decl., ¶ 8 (noting that the absence of regulations governing patients' behavior in certain "voluntary hospitals" in the Founding era was because "it was assumed that those who had managed to navigate the networks of charity and patronage to gain admission were going to be well-behaved"); Kisacky Decl., ¶ 18 (opining that, in the hospitals for the indigent that existed around the Founding, "[p]atients surrendered bodily autonomy with their admission").  Dr. Kisacky's declaration further explains that modern hospitals, unlike those at the Founding, are educational institutions (Kisacky Decl., ¶ 26), which is relevant given *Heller*'s conclusion that "schools" are sensitive places where the carry of firearms can be restricted.  *See District of Columbia v. Heller*, 554 U.S. 570, 626 (2008).

The *May* Plaintiffs criticize both experts' declarations as lacking "citation to support" their conclusions.  *May* Mot. at 5.  They are mistaken.  *See* Kisacky Decl., n. 1-65; Fissel Decl., n. 1-29.  In any event, as explained above, "[a]n expert's specialized knowledge and experience can serve as the required 'facts or data' on which they render an opinion."  *Elosu*, 26 F.4th at 1024.

### C.   Professor Joshua Salzmann's Expert Testimony Concerning Transportation Should Be Admitted.

Professor Salzmann's testimony on transportation in the Founding and Reconstruction eras is relevant because his declaration helps establish that the more nuanced approach required by *Bruen* in instances of dramatic technological changes is applicable to SB 2's restrictions of the carrying of firearms in public transportation.

Professor Salzmann is a well-qualified expert in his field.  He is a professor of history and associate chair of the Department of History and Political Science at Northeastern Illinois University, where his teaching and scholarship focus on the history of cities and urban economies.  *See May* Dkt. No. 21-10, ¶ 3 & Ex. 1; *see also id.* at ¶¶ 4-5 (detailing his extensive scholarship on these issues).  By providing valuable background and context on how dramatically different transportation was in the 18th and 19th centuries as compared to modern America (*see, e.g.*, *id.* at ¶¶ 26-31 (describing the many significant ways that wagon and stage coach travel during the Founding era was dissimilar to modern public transit systems)), Professor Salzmann's specialized knowledge assists the trier of fact in understanding why the more "nuanced" approach that *Bruen* countenances is warranted in this case.

The *May* Plaintiffs blithely state that Professor Salzmann's testimony is "of no value to this Court."  *May* Mot. at 6.  Yet the basic function of expert testimony is "to help the trier of fact understand highly specialized issues that are not within common experience."  *Elosu*, 26 F.4th at 1026.  As Plaintiffs concede, Professor Salzmann provides a thorough historical overview of topics relevant to the function and prevalence (or lack thereof) of American public transportation throughout the Nation's history.  *See, e.g., May* Plaintiffs' Evidentiary Objections to Salzmann Declaration [*May* Dkt No. 29-5], 1 (noting that Professor Salzmann's declaration gives testimony regarding the "Founding era layout of cities and quality of

Defendant's Opposition to Request to Exclude
(Case Nos. 8:23-cv-01696 and 8:23-cv-01798)

1  roadways," "the history of wagon travel," and the history of ferries, ships, and

2  lighthouses").  This evidence on "highly specialized issues" will assist the Court in

3  resolving Plaintiffs' challenge to SB 2's restrictions on concealed carry on public

4  transportation.

5       **D.   Professor Sharon Murphy's Expert Testimony Concerning the
         Development of American Financial Institutions Should Be
6        Admitted.**

7       Professor Murphy is an expert in the field of the history of financial

8  institutions.  She provides important context as to why financial institutions of the

9  Founding and Reconstruction eras were less common—and dramatically

10  different—than those of today.  Her testimony thus explains why a more nuanced

11  approach is applicable to evaluating the constitutionality of SB 2's restrictions on

12  concealed carry in financial institutions.

13      Professor Murphy is currently a Professor and the Chair of the Department of

14  History and Classics at Providence College.  *See May* Dkt. No. 21-8 [Murphy

15  Decl.], ¶ 2. She has taught at universities since 2002 and serves as the President of

16  the Business History Conference.  *Id*. at ¶ 2.  Her testimony is based on her

17  impressive research and scholarship on the history of financial institutions,

18  including three books on the subject of early financial institutions in America.  Id.

19  at ¶ 5.  In her declaration, Professor Murphy opines that "financial institutions were

20  extremely rare in 1791," and even as those institutions became more prevalent in

21  the 19th century, "the function of these institutions and consequently how the

22  public interacted with these institutions was entirely different from the function of

23  modern financial institutions."  *Id*. at ¶ 8.  Both conclusions help explain why

24  statutes prohibiting public carry within those institutions would have been

25  unnecessary, and why the lack of such legislation does not reflect a belief in the

26  Founding and Reconstruction eras that such restrictions would have been

27  unconstitutional.

28

Defendant's Opposition to Request to Exclude
(Case Nos. 8:23-cv-01696 and 8:23-cv-01798)

The *May* Plaintiffs criticize Professor Murphy's testimony as making "sweeping conclusions" based on "little more than singular accounts" and "say-so." *May* Mot. at 6.  But because her declaration is based on her extensive expertise on the topic of financial institutions (Murphy Decl., ¶¶ 2, 4, and 5), as well as citations to numerous relevant secondary sources, *see id.* at n. 1-50, it plainly satisfies the requirements for admissible expert testimony.

### E.   Professor Michael Kevane's Testimony Concerning Public Libraries Should Be Admitted.

Professor Kevane is a Professor of Economics who has published multiple papers on the growth of public libraries in the United States in the 19th century. *See May* Dkt. No. 21-5 [Kevane Decl.,], ¶ 3 & Ex. 1.  His declaration explains that public libraries as understood today did not exist during the Founding era (*id.* at ¶¶ 8-14) and describes why the number of public libraries grew significantly only at the end of the 19th century (*id.* at ¶ 14).  Like the other declarations Plaintiffs challenge, Professor Kevane's declaration is based on his expertise and research, as well as on secondary sources. *See id.* at n. 1-15.

The *May* Plaintiffs seek to exclude Professor Kevane's testimony because he "offers opinions about the general history of libraries with no discussion of firearms laws or regulations historically applicable to libraries." *May* Mot. at 7.  Yet Professor Kevane's declaration provides historical context for why such laws or regulations did not exist at the Founding (i.e., because public libraries did not exist at the time), and thus why *Bruen*'s more nuanced approach is called for in analyzing the restriction on concealed carry in public libraries in this case.

### F.   Professor Zachary Schrag's Testimony Concerning Historical Method Should Be Admitted.

Professor Schrag is a Professor of History, has published three books on American history (in addition to numerous other publications), and is the author of *The Princeton Guide to Historical Research*.  *See May* Dkt. No. 21-11 [Schrag Decl.,], ¶¶ 3-5 & Ex. 1.  In his declaration, Professor Schrag explains how a

historian would conduct research (e.g., how to craft the research question, what sources to consult, etc.) for the purpose of assisting the court in interpreting the historical evidence presented as the court applies *Bruen* to a particular historical law. *See, e.g.*, *id.* at ¶¶ 8-10, 12-19.

The *May* Plaintiffs assert that Professor Schrag's declaration should be excluded because its purpose is "to assist the State in advocating for the adoption by the Court of an analogical standard differing from what *Bruen* expressly requires," purportedly because he argues that a full historical picture requires "inquiry into and consideration of contemporaneous newspaper descriptions and other recordings of *events*." *May* Mot. at 8.  That is wrong.  Professor Schrag's declaration addresses how historians can most faithfully undertake "the historian's role of surveying a daunting amount of historical sources, evaluating their reliability, and providing a basis for a reliable narrative[ ] about the past" in the context of the *Bruen* standard.  *See United States v. Kantengwa*, 781 F.3d 545, 562 (1st Cir. 2015) (cleaned up).  Such testimony will assist the Court as it surveys the historical evidence submitted by the parties in this case.

### G. Professor Adam Winkler's Declaration Opining on the Historical Pedigree of Certain Sensitive Place Restrictions Should Be Admitted.

Professor Winkler is a Professor of Law who has researched and written extensively about the Second Amendment for over seventeen years.  *See May* Dkt. No. 21-12 [Winkler Decl.,], ¶¶ 3-6 & Ex. 1.  In his declaration, Professor Winkler recounts the long history and tradition of restrictions on firearms in places where the public congregates for social and commercial activity, amusement, and recreation, and restrictions intended to reduce the danger of mixing alcohol and firearms. *Id.* at ¶ 10. This evidence supports the conclusion that SB 2's restrictions on the concealed carry of firearms are consistent with the Nation's tradition of firearms regulation.

Defendant's Opposition to Request to Exclude
(Case Nos. 8:23-cv-01696 and 8:23-cv-01798)

The *May* Plaintiffs argue that Professor Winkler's "testimony is unhelpful to the Court and is inadmissible because, from the start, he professes his purpose in making the declaration is to convince the court of a legal conclusion, an unhelpful and impermissible purpose for expert testimony." *May* Mot. at 8. Not so. Rather, Professor Winkler provides historical context explaining the contemporary rationales for the passage of relevant historical analogues. *See, e.g.,* Winkler Decl., ¶ 15 ("Sensitive places laws were part of a larger wave of nineteenth century gun regulation that swept the nation in response to gun violence."). Nothing in Professor Winkler's declaration constitutes an improper legal conclusion that "attempt[s] to instruct the [Court] on the law." *SPS Techs., LLC v. Briles Aerospace, Inc.*, 2021 WL 4913509, at *2 (C.D. Cal. Sept. 8, 2021) (quoting *United States v. Diaz*, 876 F.3d 1194, 1199 (9th Cir. 2017)).

## CONCLUSION

The Court should deny the *May* Plaintiffs' motion to exclude the testimony of Leah Glaser, Jeanne Kisacky, Mary Fissell, Joshua Salzmann, Sharon Murphy, Michael Kevane, Zachary Schrag, and Adam Winkler in its entirety.

Dated:  December 7, 2023                    Respectfully submitted,

                                            ROB BONTA
                                            Attorney General of California
                                            MARK R. BECKINGTON
                                            R. MATTHEW WISE
                                            Supervising Deputy Attorneys General


                                            /s/ Robert L. Meyerhoff
                                            ROBERT L. MEYERHOFF
                                            Deputy Attorney General
                                            *Attorneys for Defendant*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant, certifies that this brief contains 3,951 words, which:

<u>X</u>  complies with the word limit of L.R. 11-6.1.

Dated:  December 7, 2023                              Respectfully submitted,

ROB BONTA
Attorney General of California
MARK R. BECKINGTON
R. MATTHEW WISE
Supervising Deputy Attorneys General


<u>/s/ Robert L. Meyerhoff</u>
ROBERT L. MEYERHOFF
Deputy Attorney General
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

Case Names:     ***Reno May, et al. v. Robert Bonta, et al.;***
                ***Carralero, Marco Antonio, et al. v. Rob Bonta***

Case Nos.       **8:23-cv-01696-CJC (ADSx); 8:23-cv-01798-CJC (ADSx)**


I hereby certify that on <u>December 7, 2023</u>, I electronically filed the following document with the Clerk of the Court by using the CM/ECF system:

### **DEFENDANT'S OPPOSITION TO PLAINTIFFS' REQUEST TO EXCLUDE OR DISREGARD TESTIMONY OF DEFENDANT'S DECLARANTS**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished electronically by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct.

Executed on <u>December 7, 2023</u>, at San Francisco, California.


| | |
|---|---|
| _____ | _____ |
| Vanessa Jordan | *Vanessa Jordan* |
| Declarant | Signature |